UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ─────────────────────── x | | |
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, | : : : : | Civil Action No.<br><br>CLASS ACTION |
| Plaintiff, | : : | COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, |
| vs. | : : | CONVERSION, BREACH OF TRUST, EQUITABLE ACCOUNTING, AND FOR |
| HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee, | : : : | DECLARATORY AND INJUNCTIVE RELIEF |
| Defendant. | : : | |
| ─────────────────────── x | | DEMAND FOR JURY TRIAL |

1306639_1

Plaintiff Royal Park Investments SA/NV ("plaintiff" or "RPI") alleges the following on information and belief based upon the investigation of plaintiff's counsel (except as to the allegations pertaining to plaintiff, which are based on personal knowledge), which included an investigation and review of information concerning defendant HSBC Bank USA, National Association ("HSBC" or "defendant"), a review and analysis of information concerning the Covered Trusts (as defined below) and the documents governing HSBC's duties and rights ("Governing Agreements") at issue herein.  Plaintiff and plaintiff's counsel believe that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this action on its own behalf and on behalf of a class of residential mortgage-backed securities ("RMBS") investors in the following three substantially similar RMBS trusts for which defendant HSBC serves as Trustee (collectively, the "Covered Trusts"):

| COVERED TRUST NAME | | HEREINAFTER REFERRED TO AS |
|---|---|---|
| 1. | Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR5 | DBALT 2006-AR5 |
| 2. | Fremont Home Loan Trust 2006-C | FHLT 2006-C |
| 3. | Wells Fargo Home Equity Asset-Backed Securities 2006-2 Trust | WFHET 2006-2 |

2.      This dispute arises from another litigation in this district between RPI and HSBC, *Royal Park Inv. SA/NV v. HSBC Bank USA, National Association, as Trustee*, No. 1:14-cv-08175-LGS-SN (S.D.N.Y.) (the "Litigation"), pending before the Honorable Lorna G. Schofield.  In the Litigation, HSBC has been reimbursing its legal fees and costs incurred in its defense directly from the Covered Trusts.  As a result, HSBC's legal expenses related to defending itself in the Litigation against allegations that it breached its contractual and common law duties owed to investors are

currently being paid by funds out of the Covered Trusts' assets that belong to the investors in those trusts.

3.      Under both the Governing Agreements and the common law of trusts, HSBC is not permitted to receive advancement, reimbursement or indemnification for the legal fees and costs it incurs in relation to the Litigation.  Rather, HSBC is improperly and illegally financing its defense of the Litigation with funds from the very investors that have accused HSBC of wrongdoing.  Thus, the investors are being harmed by HSBC twice – first through HSBC's misconduct as alleged in the Litigation, and second through HSBC's improper and illegal use of those same damaged investors' funds to defend itself for its misconduct.

4.      Because HSBC is improperly and illegally using Covered Trusts funds to defend itself in the Litigation, HSBC must pay back to plaintiff and the class immediately all funds it has wrongfully taken.   In addition, plaintiff and the class request that HSBC be enjoined from improperly taking such funds.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a).  The amount at controversy is significantly higher than $75,000.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b).  In the Pooling and Servicing Agreement ("PSA") for the WFHET 2006-2 Covered Trust, HSBC expressly consented to litigating claims in this District arising from the PSA.  *See* Ex. C, WFHET 2006-2 PSA §11.04.

## PARTIES

7.      Plaintiff RPI is a limited liability company incorporated under the laws of Belgium, with its principal place of business in Brussels, Belgium.  RPI acquired RMBS in each of the

- 2 -

Covered Trusts on or about the dates indicated below, and has continuously held such RMBS since then:

| COVERED TRUSTS | TRANCHE/CLASS | INITIAL FACE AMOUNT OF CERTIFICATE | DATE ACQUIRED |
|---|---|---|---|
| DBALT 2006-AR5 | 1A3 | $30,000,000 | May 12, 2009 |
| FHLT 2006-C | M1 | $15,000,000 | May 6, 2010 |
| WFHET 2006-2 | M6 | $6,757,000 | June 23, 2010 |

8.    Defendant HSBC is a national association with its main offices in Virginia. HSBC conducts substantial business in this District. HSBC serves as trustee for hundreds, if not thousands, of RMBS trusts, including the Covered Trusts. HSBC has served as the trustee for the Covered Trusts since they were formed in 2006.

## FACTUAL ALLEGATIONS

9.    RPI is the plaintiff in the Litigation currently proceeding against HSBC. In that case, RPI alleges that HSBC failed to fulfill its duties as trustee of the Covered Trusts and thereby damaged RPI and the class of RMBS certificateholders. The operative complaint in the Litigation (the "Complaint") is found at Dkt. No. 1 of the Litigation and incorporated by reference herein.[1]

10.    In the Complaint, RPI alleges breach of contract and breach of trust causes of action against HSBC. RPI alleges that, although required by the Governing Agreements and its duty as trustee, HSBC willfully ignored and failed to effectuate the repurchase of mortgage loans in the Covered Trusts that had breached the representations and warranties from the originators, warrantors and/or sellers ("Warrantors"), despite receiving extensive notification of and possessing actual knowledge of specific breaches, and possessing knowledge from numerous sources of pervasive substandard underwriting and outright fraud in the origination of those loans. HSBC took virtually

---

[1]    All ¶__ or ¶¶__ references are to the Complaint filed in the Litigation (Dkt. No. 1).

1306639_1

no action to protect the investors because its primary concern was preserving its lucrative business interests with the deal parties responsible for making the repurchases.

11.     In addition, RPI alleges HSBC discovered and knew of numerous loan servicer events of default ("Events of Default") committed by the loan Servicers or Master Servicers (collectively "Servicers") under the Governing Agreements, but failed to give notice and cure those Events of Default.  HSBC also willfully failed to discharge its fiduciary duty to protect the interests of the certificateholders following the Events of Default, once again, electing to place its conflicted financial self-interest ahead of the interests of certificateholders.

12.     The Complaint expressly and repeatedly alleges that HSBC acted negligently and engaged in willful misconduct.  *See* ¶¶148, 150, 152, 154, 156, 174, 176.

13.     For example, the Complaint describes lawsuits regarding specific loans in the specific Covered Trusts that informed HSBC that there were numerous defective mortgage loans in the Covered Trusts that breached the Warrantors' representations and warranties.  ¶95.  Moreover, HSBC had granular visibility into the breaches of representations and warranties, such as misstated income or debt ratios, learned through the bankruptcies of the mortgage loan borrowers and through the due diligence of its own affiliates.  ¶¶98-104.

14.     HSBC discovered rampant failures by the Servicers to service the loans in conformance with the customary and usual standards of loan servicing practice, which constituted numerous Events of Default under the Governing Agreements.  In October and November 2010, for example, a New York state court had issued scores of orders delaying foreclosures by HSBC and many other RMBS trustees and loan servicers because of these very same loan servicing issues. ¶117.  In addition, the Servicers botched numerous foreclosure actions due to gross errors, blatant misrepresentations or criminal conduct.  HSBC was even acquiescing in or actively participating in

this misconduct, ¶116, yet HSBC did not take action to protect the certificateholders as it was required to do under the prudent-person standard, a duty of care akin to that of a fiduciary.

15.     In defending itself against the Litigation, HSBC has and continues to spend an enormous amount on legal expenses, which has been paid from the assets of the Covered Trusts – the investors' money.  As of the filing of this complaint, it has filed an unsuccessful motion to dismiss the Litigation Complaint, opposed two class certification motions, engaged in a "scorched earth" defense strategy, and engaged in unmeritorious discovery practice.  It has undertaken wholly irrelevant and wasteful discovery, including harassing plaintiff with 176 individual requests for admission, serving approximately 25 non-party subpoenas, and taking irrelevant or duplicative fact and expert depositions, again using the investors' money.

16.     HSBC and its counsel have consistently incurred unreasonable expenses in defending itself in the Litigation by using scorched-earth tactics.  For example, HSBC refused to designate a 30(b)(6) witness until ordered to following RPI's letter motion (Litigation Dkt. No. 116).  The 176 individual requests for admission that HSBC served were so irrelevant or duplicative that the Court limited HSBC to seeking responses to only 20 of those requests.  HSBC was also admonished for acting "without authority to engage in self-help by rescheduling the deposition of [a third party] for a date after the close of third-party discovery" instead of having "met and conferred with all interested parties."  *See* Litigation Dkt. No. 368.  Additionally, after failing to assert an advice of counsel defense or to request an extension of the Court-imposed deadline to assert that affirmative defense (Litigation Dkt. Nos. 233, 254 at 8), HSBC engaged in extensive motion practice related to its "purported 'reservation of rights'" to assert that defense, which Judge Netburn found was "unauthorized and therefore invalid."  (Litigation Dkt. No. 343 at 4; *see also* Litigation Dkt. Nos. 310, 318, 319, 320, 343, 352, 353, 362, 365, 366, 372).

- 5 -

17.     Despite the excessive legal expenses racked up in the Litigation, HSBC has not paid or advanced its own legal costs and attorney fees, nor has it sought to control its litigation expenses. As a result, the Covered Trusts, and by way of the beneficial ownership structure of the RMBS in the Covered Trusts, RPI and the class, have been improperly and illegally paying for HSBC's defense in the Litigation, even though HSBC's negligence, willful conduct and bad faith as alleged (and being proven through discovery) in failing to perform its mandated duties for investors is the cause of the Litigation.  Perversely, the investors were damaged by HSBC's wrongdoing in the Litigation and now HSBC is defending such wrongdoing with the funds of the investors it wronged.

18.     Because the certificateholders are the sole beneficiaries of the Covered Trusts, HSBC's improper use of the Covered Trusts' funds reduces the amount of money that the certificateholders are entitled to receive as part of their beneficial ownership of the certificates. Certificateholders have a beneficial interest in the interest and principal payments derived from the mortgage loans that serve as the corpus for each Covered Trust.   However, before the certificateholders receive their monthly remittances, the trustee (and certain other deal parties) to the Governing Agreements may withdraw funds from the Covered Trusts' assets to pay for their costs administering the trust or servicing the loans.

19.     While the certificateholders are not a party to the Governing Agreements, the Governing Agreements require HSBC to administer the Covered Trust for the sole benefit of the certificateholders.  *See, e.g.*, Ex. A, DBALT 2006-AR5 PSA §§2.01-2.02.  Thus, as the only intended beneficiaries of the Covered Trusts, they are directly damaged whenever assets or funds are wrongly siphoned from the Covered Trusts' assets.   Accordingly, it is the certificateholders themselves that are funding the defense of their adversary, HSBC, the party that wronged them, in the Litigation.

- 6 -

1306639_1

**The Governing Agreements**

20.     The obligations, duties and rights of HSBC as trustee for the Covered Trusts are expressly delineated in the Covered Trusts' Governing Agreements, known as "Pooling and Servicing Agreements" (or "PSAs") and documents related thereto.   All of the Governing Agreements for the other Covered Trusts are substantially similar to and are incorporated herein by reference.   The three Governing Agreements are attached hereto as Exhibits A, B, and C.

21.     Each PSA is governed by New York state law.   *See* Ex. A, DBALT 2006-AR5 PSA §12.4.; Ex. B, FHLT 2006-C PSA §10.03; Ex. C, WFHET 2006-2 PSA §11.04.

22.     The purpose of having trustees, such as HSBC, for the Covered Trusts is to ensure that there is at least one independent party to the Governing Agreements that – unlike plaintiff and the class – does not face collective action, informational, or other limitations, thereby allowing and requiring the trustee to protect the interests of plaintiff and the class, and administer the Covered Trusts for their benefit.

23.     The corpus of the Covered Trusts, or the "Trust Fund," contains all the assets of the trust, including the mortgage loans and the mortgage loan interest and principal payments prior to remittance to the certificateholders.   Parties to the Governing Agreements, such as the trustee, or the servicer can take specific permitted withdrawals from the Trust Fund prior to the funds being sent to certificateholders.   These permitted withdrawals are outlined in the Governing Agreements.   One such permitted withdrawal is the trustee fee HSBC is paid for its services as trustee.   HSBC can also incur extraordinary expenses for certain activities it undertakes for the benefit of the Covered Trusts that fall outside of the regular duties contemplated by the Governing Agreements.   Examples of expenses that HSBC bills as extraordinary expenses are the costs incurred as a result of steps taken

to protect the certificateholders' interests.  The Governing Agreements do not give HSBC unfettered discretion to use trust assets carte blanche for any purpose it sees fit.

24.     While the PSAs contain a number of provisions governing the indemnification of legal fees and costs related to the discharge of HSBC's mandated duties under the Governing Agreements, there are some significant restrictions of HSBC's ability to use Covered Trust funds. Absent from these provisions is any unequivocal language explicitly indemnifying lawsuits between indemnitor and indemnitee, parties to the Governing Agreements or beneficiaries themselves to be enforced under New York contract law, as required to be applied by the PSAs.  For purposes of the Litigation, the certificateholders suing the trustee operate functionally similar to a first-party lawsuit as it pertains to indemnification provisions.  Accordingly, in the Litigation, the purported indemnitor is suing the indemnitee and indemnification is prohibited by New York law.

25.     Most relevant to the Litigation and this action is §8.05 of the FHLT 2006-C PSA, which prohibits trustee HSBC from using funds from the Covered Trusts whenever HSBC's conduct is "incurred by reason of willful misfeasance, bad faith or negligence in the performance of duties hereunder."  Ex. B, FHLT 2006-C PSA §8.05(a); *see also* Ex. A, DBALT 2006-AR5 PSA §9.5 (prohibiting indemnification for "any loss, liability or expense incurred by reason of willful misfeasance, bad faith or gross negligence by the Trustee"); Ex. C. WFHET 2006-2 PSA §8.05 (prohibiting indemnification for "any such expense, disbursement or advance as may arise from [Trustee's] gross negligence or bad faith").

26.     Notwithstanding the fact that the Governing Agreements expressly and explicitly prohibit HSBC from using the plaintiff investors' trust assets whenever HSBC engages in "willful misfeasance, bad faith, or negligence in the performance of [HSBC's] duties" as is alleged and being confirmed through discovery in the Litigation, HSBC has incredibly and in violation of the

- 8 -

Governing Agreements used investors' trust assets to finance its defense against those investors in the Litigation.  In short, HSBC is improperly and illegally using the very investors' money it has previously abused – by intentionally and in bad faith failing to discharge its duties under the Governing Agreements as set forth in the Litigation – to now damage those investors a second time by using investors' funds to defend itself against its own willful misconduct, bad faith and negligence inflicted upon the same investors.  HSBC's actions are improper, inequitable and in violation of the Governing Agreements.

27.      In the Litigation, RPI alleged that "HSBC's failures to act, and its breaches and violations alleged herein, were ***grossly negligent and willful misconduct***."  ¶148; *see also* ¶¶150, 152, 154, 156, 174, 176.  Indeed, the Governing Agreements provide that "[n]o provision of this Agreement shall be construed to relieve the Trustee . . . from liability for its own negligent action, its own negligent failure to act or its own misconduct."  *See, e.g.*, Ex. C, WFHET 2006-2 PSA §8.01.

28.      In addition, under New York law, it is well settled that parties are responsible for their own legal fees and expenses.  Therefore, where, as in the Litigation, the dispute is between or among parties to an agreement, indemnification for legal fees and expenses is prohibited unless expressly stated in the contract.  The Governing Agreements do not authorize indemnification for legal expenses or costs in internecine disputes between the parties to the Governing Agreements, including the Litigation.

29.      Moreover, the Governing Agreements do not contain provisions providing for an advancement of HSBC's legal fees and costs.  HSBC may only receive indemnification and subsequent reimbursement of those fees and costs which are permitted, and only if it can establish that the fees and costs are expressly permitted – which here, they are not.  *See* Ex. C, WFHET 2006-2 PSA §8.05.

- 9 -

30.     Given that the Governing Agreements: (a) do not allow HSBC to seek advancement or indemnification from the Covered Trusts for legal expenses incurred due to the conduct alleged in the Litigation; (b) prohibit indemnification for expenses incurred as a result of its bad faith and negligent or willful misconduct; and (c) limit indemnification to only reasonable expenses, the Governing Agreements do not permit advancement or indemnification for any or all of the legal fees and costs incurred in relation to the Litigation.

31.     Furthermore, because the Governing Agreements do not provide for its indemnification in these circumstances, under trust law, HSBC is not permitted to seek indemnification for expenses not incurred for the benefit of the Covered Trusts.  As the benefit provided by the legal fees and costs incurred in the Litigation only benefits HSBC, none of its expenses can be billed to the Covered Trusts.

32.     Just as HSBC's indemnification for any costs associated with the Litigation is improper, so would its costs in defending this action be improper.  This action is another lawsuit for which the Governing Agreements do not unequivocally provide for indemnification of HSBC's costs or expenses, and HSBC will thus be willfully or negligently billing the Covered Trusts for the costs of defending its conduct.  Just as in the Litigation, this lawsuit arises from HSBC's willful misconduct, bad faith or negligence in the performance of duties under the Governing Agreements. Therefore, any indemnification that HSBC seeks from the Covered Trusts for defending this action is unlawful and should be paid back to the Covered Trusts.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action on behalf of a class consisting of all current and former investors who held RMBS certificates in the Covered Trusts during the time when HSBC improperly paid for its legal fees and costs in the Litigation from the Covered Trusts'

- 10 -

assets and were damaged as a result (the "class").  Excluded from the class are HSBC, the loan originators, the Warrantors, the Master Servicers and the Servicers of the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

34.     The members of the class are so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown to plaintiff at this time and can only be ascertained though appropriate discovery, plaintiff believes that there are at least hundreds of members of the proposed class.  Record owners and other members of the class may be identified from records maintained by HSBC, Depository Trust Company or others and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the class, as they all acquired RMBS certificates in the Covered Trusts and held the RMBS certificates during the time when HSBC began impermissibly billing the Covered Trusts for its Litigation fees and costs; all the claims are based upon the Governing Agreements for the three Covered Trusts at issue; HSBC's alleged misconduct was substantially the same with respect to all class members; and all class members suffered similar harm as a result.  Thus, all members of the class are similarly affected by HSBC's contractual breaches and common law violations that are alleged herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the class and has retained counsel competent and experienced in class action and RMBS litigation.

37.     HSBC has acted in a manner that applies generally to the class because each class member is impacted through any improper charge to the Covered Trusts' assets.  Accordingly, declaratory or injunctive relief will apply to the class as a whole.

- 11 -

38.     Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.  Among the questions of law and fact common to the class are:

(a)     whether HSBC is contractually permitted under the Governing Agreements to receive indemnification of any of its legal fees and costs from the Covered Trusts incurred in relation to the Litigation;

(b)     whether HSBC must seek indemnification from the Warrantors and/or Servicers for legal fees and costs incurred in relation to the Litigation;

(c)     whether HSBC is permitted to obtain indemnification of legal fees and costs incurred in relation to the Litigation because of willful misconduct, bad faith or negligence in the performance of any of its duties;

(d)     whether HSBC's legal fees and costs incurred in relation to the Litigation were unreasonable;

(e)     whether HSBC, as trustee, was permitted to bill the Covered Trusts for the Litigation expenses as a principle of trust law;

(f)     whether HSBC's conduct in obtaining its legal fees and costs out of the Covered Trusts' assets is tortious or inequitable; and

(g)     whether HSBC is entitled to the advancement of its legal fees and costs incurred in relation to the Litigation.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.  There will be no difficulty in the management of this action as a class action.

- 12 -

1306639_1

## COUNT I

### Breach of Contract

40.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

41.     As set forth in detail above, the Governing Agreements are contracts setting forth the duties HSBC owed to plaintiff, the class and the Covered Trusts, along with the conditions and limitations governing its rights to indemnification or use of Covered Trust funds.  HSBC took actions not permitted by the Governing Agreements or by New York law, including, without limitation:

(a)     using Covered Trust funds for legal fees and costs HSBC incurred in defending the Litigation because the Governing Agreements and New York law do not permit indemnification of first-party claims or those between indemnitor and indemnitee;

(b)     using the Covered Trust funds for legal fees and costs incurred in defending against allegations of negligence, bad faith and willful misconduct in the Litigation because the Governing Agreements and New York law prohibit the use of Covered Trust funds for such purposes;

(c)     using the Covered Trust funds for unreasonable legal fees and costs incurred in defending itself in the Litigation; and

(d)     obtaining advancement of its legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

42.     As alleged herein, HSBC took actions not permitted by the Governing Agreements and therefore breached the Governing Agreements.  HSBC's contractual breaches deprived plaintiff, the class and the Covered Trusts of the consideration they bargained for, *i.e.*, they did not obtain

- 13 -

RMBS certificates with a trustee that complied with its obligations under the Governing Agreements and could be relied on to properly bill its legal expenses. These breaches of the Governing Agreements by HSBC caused plaintiff, the class and the Covered Trusts to suffer damages caused by the improperly billed legal expenses.

43.     Plaintiff and the class did not receive the benefit of their bargain under the Governing Agreements when HSBC took actions that resulted in the payment of legal fees and costs from the Covered Trusts incurred in defending against allegations of bad faith and willful or negligent misconduct.

44.     Furthermore, plaintiff and the class did not receive the benefit of their bargain under the Governing Agreements when HSBC took actions that resulted in it receiving an advancement of legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

45.     Finally, plaintiff and the class did not receive the benefit of their bargain under the Governing Agreements when HSBC billed unreasonable legal fees and costs to the Covered Trusts.

46.     As a result of HSBC's multiple breaches of the Governing Agreements alleged herein, HSBC is liable to plaintiff, the class and the Covered Trusts for the damages they suffered as a direct result of HSBC's actions alleged herein in contravention of the Governing Agreements.

47.     In addition, HSBC has engaged in multiple, new and additional breaches of the Governing Agreements by continuing to take further actions as alleged herein, in both the Litigation and this action, and will cause plaintiff, the class and the Covered Trusts to suffer additional damages.

## COUNT II

### Unjust Enrichment

48.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.     HSBC has received a specific benefit from its use of the Covered Trust funds for legal fees and costs at the expense of plaintiff and the class.

50.     As trustee, HSBC had a fiduciary relationship to plaintiff, the class and the Covered Trusts, and HSBC was aware of that relationship.

51.     In light of the egregious use of Covered Trust funds to finance the defense of the Litigation, restitution is necessary because equity and good conscience cannot permit HSBC to retain the legal fees and costs.

## COUNT III

### Conversion

52.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53.     As described above, HSBC's administration of the Covered Trusts and the funds therein must only be for the benefit of the certificateholders unless provided for by the Governing Agreements.

54.     By using Covered Trust funds for unlawful and unreasonable legal fees and costs, HSBC has wrongfully converted Covered Trust funds belonging to plaintiff and the class.

55.     As a direct and proximate result of HSBC's wrongful taking and interference of Trust Funds, plaintiff and the class have sustained damages and losses equal to the specific and identifiable amount of legal fees and costs misappropriated by HSBC.

- 15 -

56.     At no point did plaintiff or class members consent to HSBC's use of Covered Trust funds for defending itself in the Litigation.

57.     HSBC's conduct was gross, willful and wanton, and at the least was undertaken with reckless disregard of plaintiff's rights, and therefore warrants the imposition of punitive damages.

## COUNT IV

### Breach of Trust

58.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59.     Under the common law, HSBC had a duty to plaintiff and the class to only seek indemnification of permitted legal fees and costs incurred for the benefit of the Covered Trusts.

60.     As a result of HSBC's actions in relation to allegations in the Litigation, HSBC is not entitled to indemnity.

61.     HSBC breached its duty of trust owed to plaintiff and the class by advancing its own interests at the expense of plaintiff and the class, because it is being sued in the Litigation in its capacity as trustee for failing to protect the interests of plaintiff and the class but billing the Covered Trusts for its defense.  Accordingly, the legal fees and expenses incurred in defending itself in the Litigation are for the exclusive benefit of HSBC and not for the benefit of the Covered Trusts.

62.     In addition, HSBC breached its duty of trust owed to plaintiff and the class by seeking unreasonable legal fees and expenses from the Covered Trusts assets.

63.     Furthermore, HSBC has continued to bill the Covered Trusts as alleged above and thus has continued to fail to fulfill its duty of trust, and has thereby engaged in numerous, continuing additional breaches of its duty of trust to the present time, in both the Litigation and this action.

64.     As a result of HSBC's breach of its duty of trust, unpermitted legal fees and costs were billed to and paid from the Covered Trusts assets, causing the plaintiff and class damages.

65.     HSBC's conduct was gross, willful and wanton, and at the least was undertaken with reckless disregard of plaintiff's rights, and therefore warrants the imposition of punitive damages.

## COUNT V

### Equitable Accounting

66.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.     As an RMBS trustee, HSBC had, and continues to have, a fiduciary relationship with and duty to certificateholders regarding the assets of the Covered Trusts in which certificateholders have a beneficial interest.

68.     The funds held in the Covered Trusts are entrusted to HSBC's administration and oversight.

69.     HSBC's fiduciary duty and control of entrusted funds impose a burden of accounting.

70.     Plaintiff and the class require an accounting of the legal fees and costs paid for using Covered Trust assets to determine the amount improperly taken.

## COUNT VI

### Declaratory Judgment Regarding HSBC's Right
### to Indemnification for Legal Fees and Costs Incurred in
### Defending the Litigation from the Covered Trusts

71.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72.     A valid and justiciable controversy exists between plaintiff and HSBC regarding HSBC's right to indemnification from the Covered Trusts for legal fees and costs HSBC incurred in defending the Litigation.  Plaintiff contends that HSBC is not entitled to indemnification from the

- 17 -

Covered Trusts for any loss, liability or expense associated with the Litigation because the Governing Agreements and New York law prohibit:

        (a)      indemnification of first-party claims or those between indemnitor and indemnitee;

        (b)      the use of Covered Trust funds for legal fees and costs incurred in defending against allegations of negligence, bad faith and willful misconduct;

        (c)      using the Covered Trust funds for the unreasonable legal fees and costs incurred in defending itself in the Litigation; and

        (d)      obtaining advancement of HSBC's legal fees and costs from the Covered Trusts incurred in relation to the Litigation.

73.      Plaintiff seeks a declaration that HSBC is not permitted indemnification from the Covered Trusts for any loss, liability or expense associated with the Litigation, and that HSBC is not entitled to draw against the Covered Trusts for the purpose of advancing its attorneys' fees and expenses associated with the Litigation.  The requested declaratory judgment will serve a useful purpose in clarifying and settling the legal issue regarding whether HSBC is entitled to indemnity from the Covered Trusts against any loss, liability or expense associated with the Litigation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.      Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing the undersigned as class counsel;

B.      Compelling HSBC to provide an accounting of the legal fees and costs it has sought and/or received from the Covered Trusts in defending itself in the Litigation and this action;

- 18 -

C.      Providing declaratory relief in favor of plaintiff and the class to establish that HSBC is prohibited from advancement and reimbursement of fees and costs incurred in relation to the Litigation and this action from the Covered Trusts;

D.      Issuing a preliminary and permanent injunction, enjoining the further advancement or indemnification of HSBC from the Covered Trusts' assets for legal fees and costs incurred in the Litigation and this action;

E.      Awarding damages and/or equitable relief in favor of plaintiff, the class and the Covered Trusts against HSBC for breaches of its contractual and common law duties alleged in the Litigation and this action, including interest thereon;

F.      Disgorging any benefits or profits received as a result of HSBC's breach of its duty of loyalty to avoid unjust enrichment;

G.      Awarding punitive damages to plaintiff, the class and the Covered Trusts against HSBC related to the claims of conversion and the breach of trust;

H.      Awarding plaintiff, the class and the Covered Trusts their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

I.      Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: October 6, 2017         ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                     SAMUEL H. RUDMAN

                                          *s/ Samuel H. Rudman*
                                        SAMUEL H. RUDMAN

- 19 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

- 20 -