**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

               Plaintiff,

    v.

HSBC BANK USA, NATIONAL
ASSOCIATION, as Trustee,

               Defendant.

Civil Action No. 1:17-cv-07684-VAC

<u>CLASS ACTION</u>

**MEMORANDUM IN SUPPORT OF
DEFENDANT HSBC BANK USA,
NATIONAL ASSOCIATION'S MOTION
TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND ......................................................................................................................2

ARGUMENT............................................................................................................................4

I.  **Royal Park's Contract and Declaratory Judgment Claims Should Be Dismissed.** ..............................................................................................................6

    A.    The Plain Language of the PSAs Entitles HSBC to Indemnification. ....................6

    B.    Royal Park Is Not a Party to the PSAs Nor An Indemnitor of the Trustee............11

    C.    Mere Allegations of Misconduct Are Insufficient to Negate the Trustee's Indemnity. ................................................................................................................13

II.  **Royal Park's Non-Contract Claims Also Should Be Dismissed.** .................................17

    A.    The Non-Contract Claims Fail for the Same Reasons as the Contract and Declaratory Judgment Claims. ..............................................................................17

    B.    The Non-Contract Claims Are Duplicative. ...........................................................17

    C.    The Non-Contract Claims Are Barred by the Economic Loss Rule. ....................19

III.  **Royal Park's Claims Are Barred by Contractual No-Action Clauses.** ......................20

IV.  **Royal Park's Complaint Should Be Dismissed for Lack of Standing.** ........................22

    A.    Royal Park Cannot Establish Injury-In-Fact. ..........................................................23

    B.    Royal Park Will Not Benefit From a Favorable Decision In This Case. ...............23

    C.    Nominal Damages Do Not Confer Standing. ..........................................................24

    D.    Royal Park's Claims Are Not Ripe. ........................................................................24

CONCLUSION ........................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42 (2d Cir. 2012) ...................................................................................................................17

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, Nos. 14-CV-09371, 09764, 10067, 10102, 15-CV-0033 (KPF) (SN), 2017 WL 953514 (S.D.N.Y. Mar. 9, 2017) .....................................................9

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80 (S.D.N.Y. 2016) (*U.S. Bank*) ..............................................................................20, 22

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486 (S.D.N.Y. 2013) ...................................................................................................................16

*Counsel Fin. Servs. v. Melkersen Law, P.C.*, 602 F. Supp. 2d 448 (W.D.N.Y. 2009) ...................................................................................................................24

*Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir. 1992) ............................................21

*Ellington Credit Fund v. Select Portfolio Servicing*, 837 F. Supp. 2d 162 (S.D.N.Y. 2011) .......................................................................................18, 19

*Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66 (2d Cir. 1988) ...............18, 19

*Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744(KPF), 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ..............................................................................23

*Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842 (S.D.N.Y. 2015) ...................................................................................................................18

*Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116 (S.D.N.Y. 2014) ...................................................................................................................11

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000) ..........................19

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) ...................................................................................................................25

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................................22, 23

*Mariah Re Ltd. v. Am. Family Mut. Ins.*, 52 F. Supp. 3d 601 (S.D.N.Y. 2014) ............24

*Meckel v. Cont'l Res. Co.*, 758 F.2d 811 (2d Cir. 1985) .................................................18

*Med. Research Assocs. v. Medcon Fin. Servs.*, 253 F. Supp. 2d 643 (S.D.N.Y. 2003) ...................................................................................................................16

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015)................................................................18

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 14-CV-4394 (AJN), 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)................................................................21

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 14-cv-8175-LGS-SN, Dkt. No. 1 (S.D.N.Y. Oct. 10, 2014) ................................................................1

*Teachers Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship*, 681 F. Supp. 2d 501 (S.D.N.Y. 2010)................................................................19

*United States v. Abdur-Rahman*, 708 F.3d 98 (2d Cir. 2013)................................................................8

*Vazquez v. Salomon Smith Barney Inc.*, No. 01 CIV 2895 JSM, 2002 WL 10493 (S.D.N.Y. Jan. 4, 2002)................................................................24

*VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n*, Civ. No. 2:13-4743 (WJM), 2016 WL 3912028 (D.N.J. July 19, 2016)................................................................13, 16

## STATE CASES

*17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*, 693 N.Y.S.2d 554 (1st Dep't 1999) ................................................................19

*ACE Secs. Corp. v. DB Structured Prods.*, 977 N.Y.S.2d 229 (1st Dep't 2013)................................................................4

*AG Capital Funding Partners v. State St. Bank & Tr. Co.*, 11 N.Y.3d 146 (2008)................................................................19

*Anato Opportunity Fund I, LP v. Wells Fargo Bank, N.A.*, 61 N.Y.S.3d 215 (1st Dep't 2017) ................................................................21

*Bellevue S. Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282 (1991) ................................................................19

*Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265 (2007)................................................................8, 9

*Breed, Abbott & Morgan v. Hulko*, 531 N.Y.S.2d 240 (1st Dep't 1988) ................................................................8, 12

*Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270 (3d Dep't 2006) ................................................................17

*Christian v. Christian*, 42 N.Y.2d 63 (1977) ................................................................22

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382 (1987)................................................................17, 18

*Colnaghi, U.S.A., Inc. v. Jewelers Prot. Servs.*, 81 N.Y.2d 821 (1993) ................................................................15

*Cuellar v. City of New York*, 32 N.Y.S.3d 292 (2d Dep't 2016) ................................................................13

*Estate of Nasser v. Port Auth. of N.Y. & N.J.*, 546 N.Y.S.2d 626 (1st Dep't 1989)................................................................13, 16

*Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989) ....................................................12

*In re N.Y.C. Asbestos Litig.*, 838 N.Y.S.2d 76 (1st Dep't 2007) ......................................................8

*Koren-DiResta Constr. Co. v. N.Y.C. Sch. Constr. Auth.*, 740 N.Y.S.2d 56 (2002) ....................24

*Laura W.W. v. Peter W.W.*, 856 N.Y.S.2d 258 (3d Dep't 2008) ....................................................22

*Metro. Life Ins. v. Noble Lowndes Int'l*, 84 N.Y.2d 430 (1994)....................................................16

*PIMCO Absolute Return Strategy 3d Offshore Fund Ltd. v. Wells Fargo Bank,
Nat'l Ass'n,* No. 654743/17 (N.Y. Sup. Ct. Nov. 13, 2017)....................................................10

*U.S. Fire Ins. v. N.Y. Marine & Gen. Ins.*, 706 N.Y.S.2d 377 (1st Dep't 2000) ............................8

*W. & S. Life Ins. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392856 (Oh.
C.P. Aug. 4, 2017) ......................................................................................................2, 3, 15

*Zion v. Kurtz*, 50 N.Y.2d 92 (1980) ................................................................................................8

## PRELIMINARY STATEMENT

This action arises out of a separate litigation in which Plaintiff Royal Park alleges that HSBC breached its purported duties as indenture trustee for three residential mortgage-backed security ("RMBS") trusts. *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 14-cv-8175-LGS-SN, Dkt. No. 1 (S.D.N.Y. Oct. 10, 2014) (hereinafter, the "Litigation"). That Litigation remains pending. Contrary to Royal Park's theory in that Litigation, an indenture trustee has narrowly-defined duties spelled out in Pooling and Servicing Agreements ("PSAs") that govern the trusts. Consistent with HSBC's limited role, the PSAs provide HSBC with broad protections mandating that the trustee shall not be required to expend or risk its own funds or otherwise incur financial liability in the performance of its duties. These protections include indemnification for any expenses related to its duties as trustee.

Royal Park now seeks to preempt HSBC's entitlement to indemnification. Since at least last year, Royal Park has known that HSBC's expenses relating to the Litigation were being indemnified by trust funds. Royal Park first attempted to use that circumstance in the Litigation as a sword to invade HSBC's privileged communications. In rejecting that attempt to invade privilege, the Court recognized HSBC's contractual right to indemnification. *See Litigation*, Dkt. No. 254 at 8 (S.D.N.Y. Jan. 26, 2017). Now, more than nine months later, Royal Park has filed another complaint as a separate action to try again to obtain an advantage in the Litigation. HSBC's right to indemnification, however, is set forth in the PSAs. For this reason, a state court recently dismissed with prejudice an analogous complaint brought by different certificateholders against another trustee.

This Court also should dismiss these claims. First, Royal Park's claims are foreclosed at this stage by the contractual language of the PSAs, which provide the trustee with a broad right to indemnification against any loss, liability, or expense arising out of or relating to its duties as

trustee.  Second, Royal Park's non-contract claims are duplicative of its contract claims and

barred by New York's economic loss rule.  Third, Royal Park's claims are foreclosed by "No-

Action" clauses in the PSAs, which prohibit investors from filing suits related to the trusts unless

they first comply with certain requirements.  Finally, Royal Park lacks standing because it cannot

show injury-in-fact and its purported right to damages here is both speculative and not ripe.

## BACKGROUND

### RMBS Trusts

RMBS are created by securitizing mortgage loans into a trust, in which securities backed

by the resulting revenue streams are sold to investors in the form of notes or certificates.  RMBS

trusts are governed by a PSA, which is a contract among the deal parties that defines their rights

and responsibilities.[1]  RMBS certificateholders such as Royal Park are *not* parties to the PSAs.

Most RMBS, like those here, sell different classes of securities known as "tranches,"

which carry different rights, including with respect to the distribution of principal and interest

generated by the underlying loans.  The priority of payment under the PSAs is governed by the

trust "waterfall."  Under the waterfall, certain expenses, including expenses of the trustee, are

paid before any payments to certificateholders.  After these expenses, senior tranches are the first

to receive payments, and more junior tranches receive the amounts that flow down the waterfall

after the senior tranches are satisfied.  Losses move in the opposite direction.  With rare

exceptions, once losses reduce junior securities to zero, they no longer are entitled to payments.

### The Role of the Trustee

HSBC is the indenture trustee for the three trusts here.  An indenture trustee "is not a

trustee in the common law sense of the word."  *W. & S. Life Ins. v. Bank of N.Y. Mellon*, No.

---

[1] For example, the parties to the PSA for DBALT 2006-AR5—one of the trusts at issue—are the
Depositor, the Master Servicer, the Securities Administrator, and the Trustee.  Compl. Ex. A.

A1302490, 2017 WL 3392856, at *5 (Oh. C.P. Aug. 4, 2017). It does not have the fiduciary duties of an ordinary trustee. *Id.* Instead, an indenture trustee has "duties set forth in the contracts and only those duties," which are "quite limited." *Id.* Unlike other parties to the PSAs, the indenture trustee *does not* make representations concerning the loans. Nor does the indenture trustee assume supervisory functions such as servicing the underlying loans. The indenture trustee's duties are ministerial and its compensation is correspondingly *de minimis*— approximately $3,500 to $4,000 per year per trust. Ex. 1 (Trustee Fee Schedules).

The PSAs reinforce the limited nature of HSBC's role. For instance, the PSAs provide that HSBC does not have implied obligations; it is only required to perform the duties expressly set forth in the PSA. Compl. Ex. A, DBALT 2006-AR5 PSA § 9.1(i); Compl. Ex. B, FHLT 2006-C PSA § 8.01(i); Compl. Ex. C, WFHET 2006-2 PSA § 8.01(i). The PSAs also provide that HSBC has no duty to exercise any discretionary function and that it shall not be liable for any action taken or omitted in good faith. Compl. Ex. A, DBALT 2006-AR5 PSA §§ 9.2(a)(iv) & (viii); Compl. Ex. B, FHLT 2006-C PSA § 8.02(a)(iv); Compl. Ex. C, WFHET 2006-2 PSA § 8.02(a)(iv). Consistent with the trustee's limited role and nominal compensation, the PSAs also include expansive protections for the trustee from any type of financial liability. Specifically, the PSAs provide that HSBC has no obligation to expend or risk its own funds in the performance of its duties. *See infra* at 7. If it receives directions from investors, HSBC has the right to a reasonable indemnity from the investors prior to having any obligation to act. *Id.*

In addition to these provisions, each of the PSAs contains a broad indemnification provision covering HSBC's potential expenses. While the indemnification provisions in the three PSAs here differ in some respects, their general scope and intent is the same. All three provide that HSBC "shall be indemnified by the Trust" and "held harmless" against any loss,

liability, or expense arising out HSBC's performance of its duties under the PSAs, unless HSBC has committed certain misconduct. Ex. 2 (Indemnification Clauses).

The plain language of these indemnification provisions reinforces the structure and intent of the PSAs as a whole. That bargain was struck years ago, before the financial crisis that has led to claims by Royal Park here. The agreements created an arrangement by which the trustee accepted very limited responsibilities in return for minimal compensation. In furtherance of that arrangement, the PSAs provide significant protections for HSBC against any financial expense or liability that it might incur in the performance of its duties. Without such protections, HSBC's annual compensation of a few thousand dollars would not be remotely sufficient. The broad indemnification in the PSAs must be understood in this context.

### Royal Park Investments

Royal Park was created in 2009 to absorb toxic assets off the books of Fortis Bank, a Belgian financial institution that collapsed in the financial crisis. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 342 (S.D.N.Y. 2016). The assets that Royal Park acquired from Fortis already were severely impaired at the time of the transfer. Amended Complaint at ¶ 60 & n.20, *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, No. 2:13-cv-3295-MRP (S.D.N.Y. Jan. 17, 2014) (ECF No. 114). Moreover, the three securities here had a value of zero prior to 2014. In 2013, Royal Park brokered a sale of the vast majority of its securities to Lone Star Funds, a private investment group. *Deutsche Bank*, 314 F.R.D. at 343. Since that sale, Royal Park's only remaining business activity is filing lawsuits. Ex. 3 (Royal Park Website).

### ARGUMENT

After the financial crisis, investors in RMBS began bringing claims against the parties that had originated mortgage loans or packaged and sold RMBS. In 2013, the state courts of

New York decided that many of these claims were time-barred, *ACE Secs. Corp. v. DB Structured Prods.*, 977 N.Y.S.2d 229, 230-31 (1st Dep't 2013), and soon after investors began suing indenture trustees. Prior to *ACE*, when the statute of limitations was uncertain and many parties assumed their cause of action was not triggered until knowledge of breach, the sophisticated investors who purchased RMBS securities understood indenture trustees performed a ministerial role. Those same investors understood if they wanted the trusts to pursue expensive and discretionary actions, the investors needed to direct and indemnify the trustee. In fact, *before ACE* was decided, investors like Royal Park were doing exactly that, though their efforts often were late and unorganized.

*After ACE*, however, plaintiffs, including vulture investors who picked up their RMBS certificates after the financial crisis at deeply discounted prices, suddenly decided that indenture trustees should have been monitoring other parties and unilaterally taking discretionary actions to protect their interests. Under this novel theory, indenture trustees purportedly had broad, amorphous and free-floating duties to oversee other trust parties, conduct wide-ranging investigations to "nose-to-the-source" of purported problems, and initiate complex and expensive contested litigations against third parties of the trustee's own choosing.

Not only are these claims against trustees novel, but Royal Park and similarly-situated plaintiffs have pursued them aggressively in overly large and complex litigations using scorched-earth litigation tactics. In doing so, plaintiffs effectively seek to turn indenture trustees into guarantors of the payment streams in the trusts by holding trustees liable for all of the ill-effects of the financial crisis from trust closing to present. In pursuing these overly aggressive claims, plaintiffs have caused and will cause the trustee to incur substantial costs.

The PSAs, however, specifically protect trustees from shouldering the burden of these costs. The trustee's indemnification flows from the trust to the trustee by operation of the trust's waterfall, which the sophisticated investors who purchased RMBS securities were well aware of before they invested. The waterfall provides for the payment of the trustee's expenses *before* distributions to certificateholders. As a result, HSBC is entitled to be indemnified for its expenses in the Litigation unless it has engaged in certain conduct—principally willful misfeasance, bad faith or gross negligence. No such finding has been established here, and certificateholders, who are not parties to the PSAs, cannot negate the trustee's contractual indemnification with mere allegations.

## I. Royal Park's Contract and Declaratory Judgment Claims Should Be Dismissed.

Royal Park's contract and declaratory judgment claims are predicated on the argument that HSBC is *not* entitled to indemnity for expenses incurred in the Litigation. Royal Park is wrong. The PSAs contain broad provisions that entitle HSBC to indemnity for *any* losses, liabilities or expenses incurred in connection with or relating to the performance of its duties.

### A. The Plain Language of the PSAs Entitles HSBC to Indemnification.

Numerous provisions in the PSAs protect the indenture trustee from financial risk or liability in connection with the performance of its duties. For example, the PSAs expressly state that HSBC need not "expend or risk its own funds," and shall not be personally "liable [for] any action taken, suffered or omitted . . . in good faith." Compl. Ex. A, DBALT 2006-AR5 PSA §§ 9.1(iii) & 9.2(a)(xiii); Compl. Ex. B, FHLT 2006-C PSA §§ 8.02(a)(iv) & (viii); Compl. Ex. C, WFHET 2006-2 PSA §§ 8.01 & 8.01(iii). Similarly, the trustee is not required to take any action at the direction of certificateholders unless those holders first offer an indemnity satisfactory to the trustee. Compl. Ex. A, DBALT 2006-AR5 PSA § 9.2(a)(iii); Compl. Ex. B,

FHLT 2006-C PSA § 8.02(a)(iii); Compl. Ex. C, WFHET 2006-2 PSA § 8.02(v).  Additionally, each PSA provides that the trustee is to be indemnified from the trust for *any* losses, liabilities or expenses incurred in connection with or arising from its duties.  *See* Ex. 2.[2]  This right to indemnification survives the termination of the trust agreement, meaning that HSBC's indemnity continues even when HSBC is no longer performing duties as trustee.  *See id.*  These financial protections make sense given the limited role of an indenture trustee, and the nominal compensation paid to it in return for its ministerial duties.  The explicit text and structure of the PSAs, and Royal Park's own characterization of its claims, mandate here that Royal Park's claims should be dismissed.

Royal Park admits in its complaint that this Action concerns attorneys' fees incurred in litigation relating to HSBC's alleged failure to perform "its duties as trustee."  Compl. ¶ 9.  Such fees are expenses that arise out of the trustee's purported obligations.  This admission should end the inquiry as to whether indemnification is applicable.  Although the relevant indemnification

---

[2] The relevant contract language for each indemnity provision is as follows:

    DBALT 2006-AR5 § 9.5:  "[T]he Trustee . . . shall be indemnified by the Trust Fund and held harmless against any loss, liability or expense (including reasonable attorney's fees and expenses) incurred by the Trustee . . . in connection with any administration to be performed by the Trustee . . . pursuant to this Agreement . . . and any claim or legal action or any pending or threatened claim or legal action arising out of or in connection with the acceptance or administration of its respective obligations and duties under this Agreement . . . .";

    FHLT 2006-C § 8.05:  "[T]he Trustee . . . shall be indemnified by the Trust Fund and held harmless against any loss, liability or expense . . . incurred by the Trustee . . . arising out of or in connection with the acceptance or administration of its obligations and duties under this Agreement . . . the Certificates or the Mortgage Loans . . . .";

    WFHET 2006-2 § 8.05:  "[T]he Trustee . . . shall be indemnified by the Trust from, and held harmless against, any and all losses, liabilities, damages, claims or expenses incurred in connection with any legal action relating to this Agreement or the Certificates . . . .".

provisions vary in minor respects, each PSA contains a broad protection that states HSBC *shall* be indemnified by the trust and held harmless against *any loss*, *liability*, or *expense* incurred in connection with or arising out of the trustee's administration of its obligations and duties. *See* Ex. 2. On their face, these provisions cover HSBC's expenses in the Litigation, as those expenses are being incurred in connection with and arise out of HSBC's duties as trustee.

The PSAs use of the word "any" to modify "loss, liability or expense" contemplates a broad indemnity. New York courts interpret the word "any" to be the same as "all." *Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 275 (2007) (finding language describing "any" claims to include any related claims, meritorious or otherwise); *see also Zion v. Kurtz*, 50 N.Y.2d 92, 104 (1980) (defining "any" as "all" or "every" and indicating "no limitation" on the scope of the language); *In re N.Y.C. Asbestos Litig.*, 838 N.Y.S.2d 76, 79-80 (1st Dep't 2007) (construing indemnification clauses purporting to apply to any and all liability as meaning what they say). Similarly, the terms "relating to" and "arising out of" are broad, comprehensive terms that signal "an expansive intent, not a limiting one." *United States v. Abdur-Rahman*, 708 F.3d 98, 101-02 (2d Cir. 2013); *see U.S. Fire Ins. v. N.Y. Marine & Gen. Ins.*, 706 N.Y.S.2d 377, 378-79 (1st Dep't 2000).

Here, each of the PSAs provide for the indemnification of "any" expenses, and each provision is to be construed under New York law. This broad language covers attorneys' fees. While one of the three PSAs at issue (DBALT 2006-AR5) expressly references "attorney's fees" in the contractual indemnification provision, under New York law this is not necessary for such expenses to be covered. *See Breed, Abbott & Morgan v. Hulko*, 531 N.Y.S.2d 240, 242 (1st Dep't 1988). Instead, use of the modifier "any" when describing the expenses being indemnified is sufficient to encompass attorneys' fees. *Id*.

The broad language of the indemnification provisions also encompasses expenses associated with litigation. Indeed, two of the three PSAs specifically provide that their indemnity covers any claim or legal action. The overall breadth of the indemnity provisions, however, makes this distinction immaterial. Liabilities, for example, typically arise in connection with claims and litigation. Inclusion of the terms "any" "losses" or "liabilities" in the indemnity, therefore, is broad enough to cover expenses associated with claims and litigation, and it would render the inclusion of "liabilities" meaningless if claims and litigation were not contemplated. *Bradley*, 8 N.Y.3d at 274 (stating that a court should not "interpret a contracted indemnification provision in a manner that would render it meaningless"). Indeed, Royal Park concedes the PSAs contain "a number of provisions governing the indemnification of legal fees and costs related to the discharge of HSBC's mandated duties." Compl. ¶ 24.

Other courts have recognized the indenture trustee's broad right to indemnification in multiple contexts. For example, in the underlying Litigation, plaintiffs[3] attempted to obtain a tactical advantage by invading HSBC's attorney-client privilege on the ground that HSBC's attorneys' fees were being paid with trust funds. In rejecting plaintiffs' position, Magistrate Judge Netburn noted "the governing agreements vested in HSBC a right of indemnification for legal fees." *Litigation*, Dkt. No. 254 at 8; *see also BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, Nos. 14-CV-09371, 09764, 10067, 10102, 15-CV-0033 (KPF) (SN), 2017 WL 953514, at *6 (S.D.N.Y. Mar. 9, 2017) ("[T]he governing agreements vested in Wells Fargo [as trustee] a right of indemnification for legal fees.").

---

[3] In the underlying Litigation, Royal Park's claims have been coordinated with similar claims brought by other plaintiffs in different trusts ("Coordinated Plaintiffs"). These coordinated actions are pending before Judge Schofield.

Most recently, the New York Supreme Court ruled against similarly-situated plaintiffs who sued a trustee under analogous circumstances as Royal Park here. *PIMCO Absolute Return Strategy 3d Offshore Fund Ltd. v. Wells Fargo Bank, Nat'l Ass'n,* No. 654743/17 (N.Y. Sup. Ct. Nov. 13, 2017) (transcript available as Ex. 4). In that case, Justice Ramos dismissed a complaint brought by plaintiffs against Wells Fargo as trustee alleging that Wells Fargo improperly was indemnifying itself using trust funds.[4] Wells Fargo moved to dismiss, raising among other things that Wells Fargo was entitled to indemnity in cases brought against it as trustee based on the broad indemnity language in the PSAs.[5] In dismissing the case with prejudice, the Court noted that the indemnification provision was "broad," that a narrow carve-out to the indemnification provision contemplated "exactly the situation where the certificate holders would be suing" the trustee, and that for the carve-out to apply plaintiffs would "have to allege *and prove* that [the trustee's] activities fall within the purview of the carveout." Ex. 4 at 18:2-5; 20:9-15 (emphasis added). Justice Ramos also noted that it was "unmistakably clear" that the indemnification provision was broad enough to cover "exactly the kind of claim that a certificate holder would bring," and that "from a practical point of view, and from a legal point of view, I don't see how—at this point . . . you can sustain this kind of claim." *Id.* at 18:22-24; 21:5-8.

The indemnity provisions in HSBC's PSAs are even broader than the provision at issue in the Wells Fargo matter. Here, the indemnity in HSBC's PSAs covers any loss, liability or

---

[4] The plaintiffs in *PIMCO Absolute Return Strategy* are among the Coordinated Plaintiffs also suing HSBC in the Litigation.

[5] The relevant language in one of the Wells Fargo PSAs was as follows: "The Trustee . . . shall be indemnified by the Trust and held harmless against any loss, liability or expenses (including reasonable attorney's fees) (a) incurred in connection with any claim or legal action relating to (i) this Agreement, (ii) the Certificates, or (iii) the performance of any of the Trustee's duties hereunder . . . ." Ex. 5 at § 9.11 (Wells PSA).

expense, not just in connection with claims and legal actions, but also in connection with or arising out of HSBC's performance of its duties as trustee more generally. The PSAs are New York contracts construed under state law. Compl. Ex. A, DBALT 2006-AR5 PSA § 12.4; Compl. Ex. B, FHLT 2006-C PSA § 10.03; Compl. Ex. C, WFHET 2006-2 PSA § 11.04. Accordingly, this Court should reach the same conclusion as Justice Ramos.

**B.      Royal Park Is Not a Party to the PSAs Nor An Indemnitor of the Trustee.**

In an effort to sidestep the PSAs broad indemnification provisions, Royal Park alleges various legal conclusions concerning the nature of its claims. Specifically, Royal Park asserts that New York law requires "unequivocal language explicitly indemnifying lawsuits between indemnitor and indemnitee," and that the Litigation is "functionally similar to a first-party lawsuit as it pertains to indemnification provisions." Compl. ¶ 24. Royal Park also characterizes the Litigation as an "internecine dispute[] between the parties to the [PSA]s" such that the parties should be responsible for their own legal expenses. *Id.* ¶ 28. Royal Park's incorrect legal conclusions do not save its complaint.

There is no dispute that, though it may be a third-party beneficiary of aspects of the PSAs, Royal Park is not a party to the PSAs. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 133 (S.D.N.Y. 2014) (noting suit by a certificateholder is brought as a third-party beneficiary). Instead, the PSAs are contracts between parties who participated in the RMBS securitization and formation of the RMBS trust. Compl. Ex. A, DBALT 2006-AR5 PSA; Compl. Ex. B, FHLT 2006-C PSA; Compl. Ex. C, WFHET 2006-2 PSA; *see also* Compl. ¶ 19 ("[C]ertificateholders are not a party to the [PSAs]."). Here, depending on the trust, those parties included the depositor, the seller, the master servicer, the servicer, the custodian, the securities administrator, and the trustee, but not the certificateholders. Accordingly, Royal Park's claims are not first-party breach of contract claims.

Additionally, even if Royal Park were a party to the PSAs (it is not), that circumstance would not negate the broad indemnity provided to the indenture trustee in the PSAs. As Justice Ramos noted, there are "indemnification situations in which parties to a contract can indemnify one another." Ex. 4 at 19:22-23. Under New York law, an indemnity clause applies to disputes between contracting parties if the intent to indemnify "can be clearly implied from the language and purpose of the entire agreement and surrounding facts and circumstances." *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92 (1989); *see also Breed*, 531 N.Y.S.2d at 242 (holding contract language reflected intent for indemnity to apply between first parties to the contract). That intent is evident here. As Justice Ramos noted, the text of the contractual indemnification provisions demonstrates that the indemnity was intended to cover claims against the trustee, including those brought by certificateholders. Ex. 4 at 20:9-16; 21:5-9 (explaining that the limited carve-out contemplates "some malfeasance" by the trustee, and this meant the indemnity covers claims by certificateholders because "[w]ho else is going to sue" the trustee?). It, therefore, is immaterial whether Royal Park's claims are characterized as first-party or third-party claims.

Just as Royal Park is not a party to the contracts, certificateholders also are not indemnitors under the PSAs. Instead, the indemnity conferred upon the trustee is provided *by the trust.* While certificateholders have the right to receive certain distributions of trust assets, they take those distributions in accordance with the priority of payment provisions established in the trust waterfall. *See Litigation*, Dkt. No. 1 at ¶ 43 (S.D.N.Y. Oct. 10, 2014). Even amongst certificateholders, the trust waterfall allocates priority of payments based on seniority. Here, as Royal Park concedes, under the terms of the PSAs, HSBC's expenses are paid from trust assets *before* any certificateholders become eligible for distributions. *See* Compl. ¶ 18. This is a

common structure and is the same as existed under the PSAs at issue in the *PIMCO Absolute Return Strategy* matter. *See* Ex. 4 at 8:23-9:6. Accordingly, it is inaccurate to characterize the certificateholders as providing the indemnity to the trustee. The indemnity is provided as a right of the trustee through distribution of funds in accordance with the waterfall.[6]

### C. Mere Allegations of Misconduct Are Insufficient to Negate the Trustee's Indemnity.

In a further effort to sidestep the broad indemnification provided to the trustee, Royal Park's complaint attempts to rely on Royal Park's self-serving and unproven allegations in the Litigation to argue that one or more of the limited exceptions to indemnification that exist in the PSAs applies here. Such arguments should not save Royal Park's complaint at this stage.

As a threshold matter, Royal Park has not proven that any of the exceptions to indemnity apply. Mere allegations of tortious behavior generally are insufficient to nullify a contractual indemnity. *Estate of Nasser v. Port Auth. of N.Y. & N.J.*, 546 N.Y.S.2d 626, 627 (1st Dep't 1989) (rejecting argument that indemnification was unavailable because a "complaint alleged negligence on behalf of the [indemnitee]"); *see VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n*, Civ. No. 2:13-4743 (WJM), 2016 WL 3912028, at *2-3 (D.N.J. July 19, 2016) (denying a certificateholder's request that an indenture trustee be enjoined from using trust funds for its defense where the certificateholder had alleged the trustee was negligent and the indemnification provision contained a carve-out for negligence). A contractual indemnification would not provide much protection if an adverse party could defeat it simply by strategically alleging in a

---

[6] Royal Park also seeks to characterize HSBC's indemnity as an "advancement of HSBC's legal fees and costs." Compl. ¶ 29. This characterization too is wrong. Under New York law the duty to indemnify is triggered when claims are presented. *Cuellar v. City of New York*, 32 N.Y.S.3d 292, 294 (2d Dep't 2016). Here, HSBC is receiving indemnification for expenses in the Litigation as they are incurred.

contested proceeding that an exception exists. In that circumstance, the limited exception to indemnity would swallow the rule. Such a position is not consistent with the language of the PSAs, which provide broad indemnification for any loss, liability or expense in connection with the trustee's duties and (in the case of DBALT 2006-AR5 and WFHET 2006-2) also for legal actions and claims.

Other PSA provisions also demonstrate the fallacy of such a position. For example, as Justice Ramos found, the indemnification provisions unmistakably contemplate litigation between the trustee and certificateholders. Ex. 4 at 18:22-24; 21:5-8. After termination of the trust, the trustee no longer would be performing duties under the PSA. In those circumstances, potential losses and liabilities of the trustee most likely, if not exclusively, would arise in the context of litigation and claims asserted against the trustee. Yet, the PSAs provide that the trustee's right to indemnification survives termination of the agreement. Ex. 2. Under these circumstances, permitting a third-party litigant to defeat the trustee's indemnity simply by making allegations is contrary to the plain language and overall intent of the PSAs, which provide broad and ongoing protections and indemnity to the trustee after the trust has terminated and with respect to claims by litigants.[7]

Instead, to negate the trustee's indemnity, Royal Park has "to come forward now, in this action, with proof that [the trustee is] guilty of actions that would fall within the carveout." Ex. 4 at 18:25-19:2. Here, of course, Royal Park has proven nothing. Royal Park concedes in its complaint, as it must, that there has been no finding or adjudication that HSBC has committed

_____

[7] Even if mere allegations of tortious behavior were sufficient (they are not), Royal Park's complaint relies on conclusory allegations that negligence "is alleged and being confirmed through discovery in the Litigation." Compl. ¶¶ 26-27. Royal Park's reliance on conclusory pleading also is fatal to its complaint.

misconduct.  Instead, Royal Park is attempting to piggyback on its unproven allegations in the underlying Litigation to support its position here that HSBC committed tortious misconduct justifying application of the carve-out.  That position is both premature and highly speculative at this stage.  Only one claim against a trustee akin to what Royal Park alleges in the underlying Litigation has gone to trial.  The trial court in that case construed the PSA provisions as a matter of law and found for the trustee on all counts.  *W. & S. Life Ins.*, 2017 WL 3392856, at *1.  Similarly, in one of the first cases filed after the financial crisis by RMBS certificateholders against indenture trustees the plaintiff voluntarily dismissed the suit with prejudice and their counsel took nothing because of "the many legal and factual obstacles to . . . prevailing on the merits."  Ex. 6 at 1 (Chicago Policeman v. Bank of New York Mellon, Dkt. No. 201).  Here, Royal Park's claims in this separate action are dependent upon its success in the Litigation, which is both speculative and premature.  Accordingly, Royal Park cannot bootstrap its unproven allegations from a separate litigation to obtain a result in this action.

Moreover, the exceptions to indemnification under the PSAs are narrow.  In the DBALT 2006-AR5 and WFHET 2006-2 trusts, the exception applies to "willful misfeasance, bad faith, or gross negligence."  Compl. Ex. A, DBALT 2006-AR5 PSA § 9.5; Compl. Ex. C, WFHET 2006-2 PSA § 8.05.  Those are the very same exceptions that were at issue in PSAs that Justice Ramos rejected as sufficient to defeat indemnity.  *See* Ex. 5.  As Justice Ramos noted, such carve-outs would require plaintiffs "to prove almost criminal activity."  Ex. 4 at 20:22-23; *see Colnaghi, U.S.A., Inc. v. Jewelers Prot. Servs.*, 81 N.Y.2d 821, 823-24 (1993) (gross negligence must evince a reckless disregard for the rights of others equivalent to intentional wrongdoing); *Metro. Life Ins. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 438 (1994) (where an indemnity exclusion lists

"willful acts" and "gross negligence," "willfulness" means "wrongful conduct in which defendant willfully intends to inflict harm").

That the indemnification exception in one of the trusts (FHLT 2006-C) covers "willful misfeasance, bad faith, or *negligence*" does not change the analysis.  Compl. Ex. B, FHLT 2006-C PSA § 8.05(a) (emphasis added).  First, for the reasons discussed above, merely alleging negligence is insufficient to defeat a contractual indemnity.  *VNB Realty*, 2016 WL 3912028, at *2-3; *Estate of Nasser*, 546 N.Y.S.2d at 627.  Second, under New York law, a contractual provision preserving negligence liability does not impose duties separate from the contract.  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 506-08 (S.D.N.Y. 2013).  Moreover, there is no cause of action in New York for negligent breach of contract.  *Med. Research Assocs. v. Medcon Fin. Servs.*, 253 F. Supp. 2d 643, 649 (S.D.N.Y. 2003).  Therefore, in the unlikely event Royal Park proves some breach of contract by HSBC, that circumstance would not support a negligence finding.  Third, there is no negligence count pending in the Litigation.  Royal Park did not allege a separate negligence count; other Coordinated Plaintiffs did, but the Court dismissed that claim more than 29 months ago in response to HSBC's motion to dismiss.  *Litigation*, Dkt. No. 48 (S.D.N.Y. June 1, 2015).  Thus, Royal Park cannot establish a negligence claim in the Litigation.

Ultimately, as Justice Ramos explained, "at the end of the road, perhaps, if there is a finding that [the trustee] has acted in a way that [plaintiffs] say they've acted, well, [plaintiffs] can certainly recover."  Ex. 4 at 18:10-13.  To benefit from the exception to indemnification, however, Royal Park must "establish that [the trustee] [does not] have the right otherwise granted to [it] under the PSA to take these payments out."  *Id.* at 18:15-17.  For these reasons,

Justice Ramos rejected plaintiffs' position that the carve-out was sufficient for their complaint to survive. This Court should reach the same conclusion.

## II.    Royal Park's Non-Contract Claims Also Should Be Dismissed.

Royal Park also brings claims for unjust enrichment, conversion, breach of trust, and an equitable accounting. These claims likewise fail.

### A.    The Non-Contract Claims Fail for the Same Reasons as the Contract and Declaratory Judgment Claims.

Like the underlying Litigation, this new action essentially is a contract case (though brought prematurely here). *See* Compl. ¶ 26 (alleging HSBC's actions are "in violation of the Governing Agreements"); *id.* ¶ 30 (stating that "*the Governing Agreements do not permit* advancement or indemnification") (emphasis added). Like Royal Park's contract claim, its non-contract claims assume that the PSAs do not provide HSBC with a right to indemnification. As explained above, Royal Park's assumption is wrong. Because the PSAs provide HSBC with indemnification, Royal Park's non-contract claims fail for the same reasons as its contract and declaratory judgment claims.

### B.    The Non-Contract Claims Are Duplicative.

Under New York law, tort and quasi-contract claims are precluded as duplicative with contract claims where they are "based upon the same facts and theories." *Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272 (3d Dep't 2006); *see Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 58 (2d Cir. 2012). That is the case here.

Breach of Trust. For the breach of trust claim to survive, Royal Park plausibly must allege that "a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (1987). It fails to do so here, relying instead on a purported amorphous common law "duty of trust" that HSBC "only seek indemnification of

permitted legal fees and costs" and refrain from "seeking unreasonable legal fees and expenses." Compl. ¶¶ 59, 61-62. But the indemnification here arises under the PSAs, and "the duties of an indenture trustee are strictly defined and limited to the terms of the indenture." *Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988); *see Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985). Courts routinely dismiss similar claims in RMBS cases where the alleged breach of duty is the defendant's failure to adhere to the terms of the PSAs. *See, e.g.*, *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2015 WL 5710645, at *6-7 (S.D.N.Y. Sept. 29, 2015) (dismissing allegations of "fiduciary duties" that were mere "recitations of [the defendant's] obligations pursuant to the PSAs"); *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 857 (S.D.N.Y. 2015) (similar); *Ellington Credit Fund v. Select Portfolio Servicing*, 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011) (similar).

Nor does arguing that such claim purportedly pertains to *extra-contractual* duties save this count. First, Royal Park does not allege a plausible violation of such extra-contractual duties and certainly not allegations distinct from its contract claims. Second, to the extent Royal Park argues that it has extra-contractual claims based on an alleged conflict of interest, such claims against indenture trustees must "spring from circumstances extraneous to, and not constituting elements of, the contract." *Clark-Fitzpatrick*, 70 N.Y.2d at 389; *see also Ellington*, 837 F. Supp. 2d at 196 (dismissing claim that defendant's "self-dealing and concealment" constituted breach of duty because it "simply restate[d], in nearly identical words, the breach of contract claim"). Here, any purported criticism Royal Park claims to have with HSBC's indemnification arises in connection with the PSA, not an extraneous circumstance.

<u>Unjust Enrichment</u>. In New York, a claim for unjust enrichment "does not lie where a valid contract covers the subject matter that gives rise to the alleged enrichment." *Teachers Ins.*

*& Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship*, 681 F. Supp. 2d 501, 511 (S.D.N.Y. 2010). It is undisputed that the PSAs in this case are valid and that they govern HSBC's right to indemnification. This claim therefore also fails.

Conversion. A conversion claim is subject to dismissal unless "a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." *Ellington*, 837 F. Supp. 2d at 204. Royal Park alleges neither: the alleged acts of conversion are the same indemnification payments that underlie the breach of contract claim. *See* Compl. ¶ ¶ 54-55.

Equitable Accounting. A claim for an accounting requires a plausible allegation of fiduciary duty or confidential relationship. *Ellington*, 837 F. Supp. 2d at 207. HSBC's position as indenture trustee does not give rise to fiduciary duties. *Elliott*, 838 F.2d at 71. Moreover, the Court of Appeals has held that an indenture trustee's limited duties to avoid conflicts and to perform ministerial tasks are not fiduciary. *See AG Capital Funding Partners v. State St. Bank & Tr. Co.*, 11 N.Y.3d 146, 158 (2008). Therefore, this claim too should be dismissed.

### C.    The Non-Contract Claims Are Barred by the Economic Loss Rule.

Even if Royal Park plausibly could plead breach of a duty distinct from the terms of the PSAs, its non-contract claims still would be precluded under New York's economic loss rule. Under that rule, a contracting party must allege "a harm distinct from" any damages for breach of contract to maintain a tort claim based on that same conduct. *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 17 (2d Cir. 2000); *see 17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*, 693 N.Y.S.2d 554, 559 (1st Dep't 1999) (citing *Bellevue S. Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 294-95 (1991)). This rule provides an independent basis for dismissal of the non-contract claims here, as courts in other RMBS cases have recognized. *See, e.g., Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 105-06 (S.D.N.Y. 2016) (*U.S. Bank*) (dismissing fiduciary duty claims under economic loss). Here, the damages

Royal Park seeks are economic losses allegedly flowing from HSBC's indemnification payments under the PSAs. These are the same losses Royal Park claims result from breach of the PSAs. These non-contract claims thus violate the economic loss rule.

## III.    Royal Park's Claims Are Barred by Contractual No-Action Clauses.

Royal Park's complaint should be dismissed for the additional reason that it fails to allege compliance with the PSAs' No-Action clauses. These clauses are straightforward and their terms apply here.[8]  They provide that "No Certificateholder shall have any right *. . . to institute any suit, action or proceeding . . .* with respect to this Agreement, unless" the certificateholder complies with several conditions precedent, including that the certificateholder possess not less than 25% of the voting rights (the "holder-support requirement"). Ex. 7 (No-Action Clauses) (emphasis added). Additional conditions require (1) written notice to the trustee of the default of which the holder complains, (2) a written demand to institute a suit (the "demand requirement"), (3) an offer to the trustee of reasonable indemnity, and (4) allowing 60 days for the trustee to act before suit is brought by the holder. *See id.* No-Action clauses work in tandem with other PSA provisions including those establishing the limited role of the trustee, the requirement for a designated percentage of holders to direct and indemnify the trustee before the trustee is required to initiate legal action, and the broad indemnity provided under the PSAs.

Given the structure of RMBS trusts, there is a good reason for these clauses—they were intended to prevent precisely the type of suit that Royal Park is attempting to bring here. RMBS trusts issue different classes of securities in which investors are distributed funds in different priorities. Because of this, certificateholder interests do not always align. A certificateholder at the top of the waterfall who is continuing to receive payments may be satisfied with the status

---

[8] There are minor variations in the No-Action clauses in the three PSAs here, but these variations are immaterial to the analysis. Exhibit 7 provides the text of each.

quo and be uninterested in taking any action that might impact the availability of funds distributed by the trust. In contrast, a certificateholder at the bottom, who is no longer receiving distributions, may prefer to divert trust resources to uncertain actions which theoretically might lead to additional distributions, even if such actions divert funds from holders at the top of the waterfall. An indenture trustee is in no position and is not required to make discretionary decisions to reconcile these interests. The No-Action clause generally—and the holder-support requirement in particular—is designed to prevent the trusts from incurring expenses that necessarily will arise when idiosyncratic, self-interested, or risk-seeking certificateholders bring claims that might serve their individual interests, but do not necessarily serve the interests of other holders or the trust as a whole. *See Anato Opportunity Fund I, LP v. Wells Fargo Bank, N.A.*, 61 N.Y.S.3d 215, 216 (1st Dep't 2017). Because the PSAs provide broad indemnification rights to multiple parties, not just trustees, this concern exists both when holders seek to bring claims against third parties and when they seek to bring claims against trustees. The No-Action clause ensures that at least a designated minimum percentage of holders agree that an action should be brought before that action causes the trust to incur related expenses.

Since investors began asserting their novel and overbroad claims against trustees in 2012, numerous courts have excused the requirements of the No-Action clauses, citing *Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir. 1992), as their basis for doing so. *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 14-CV-4394 (AJN), 2016 WL 439020, at *3 (S.D.N.Y. Feb. 3, 2016). *Cruden* was a case in which bond holders sued an indenture trustee in a non-RMBS context. 957 F.2d at 964-65. With very little analysis, the *Cruden* court excused compliance with a No-Action clause's demand requirement under the theory that it would be "absurd" to request a trustee sue itself. *Id.* at 968. The *Cruden* opinion does not reveal whether

the indenture at issue contained the same indemnification protections as exist in RMBS PSAs. But, in any event, *Cruden* also did not resolve whether the distinct *non-demand* requirements of No-Action clauses are severable and should apply. *See U.S. Bank*, 165 F. Supp. 3d at 96. *Cruden* therefore does not require this Court to excuse Royal Park's non-compliance with the holder-support requirement.

The holder-support requirement should still apply here because there is nothing "absurd" about requiring a minimum level of certificateholder support to initiate a suit that will expend trust resources. In New York, severability clauses are to be honored. *See Christian v. Christian*, 42 N.Y.2d 63, 73 (1977); *Laura W.W. v. Peter W.W.*, 856 N.Y.S.2d 258, 264 (3d Dep't 2008). The PSAs here contain a broad severability clause that extends to individual "terms" within a single provision. Ex. 8 (Severability Clauses). Thus, to the extent *Cruden* excuses compliance with some aspects of the No-Action clause, this Court still should enforce the holder-support requirement. This would ensure that cases against PSA parties, including trustees, at least enjoy support from the designated percentage set forth in the PSA before such suits can go forward and trigger the PSA's indemnification entitlements.

## IV. Royal Park's Complaint Should Be Dismissed for Lack of Standing.

Royal Park's complaint also should be dismissed because it has not suffered concrete injury, it will not recover damages even if it obtains the relief it is requesting here, and its claims depend upon the resolution of the Litigation. For these reasons, it lacks standing.

To establish the "constitutional minimum of standing," Royal Park must show three things. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, that it "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). Second, the injury has to be fairly traceable to the challenged action of the defendant.

*Id.*  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* (internal quotation marks omitted).  Royal Park, which has the burden of proof to establish its standing, *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744(KPF), 2014 WL 1133567, at *6 (S.D.N.Y. Mar. 21, 2014), cannot make these showings.[9]

### A.    Royal Park Cannot Establish Injury-In-Fact.

Royal Park has not suffered any injury from HSBC receiving indemnification in 2014 because Royal Park's securities were worthless long before then.  Generally, the economic interest represented by an RMBS security is measured by its "principal balance," which indicates the amount of future cash flows the security is entitled to from the trust.  All three securities here had a zero principal balance by January 2013,[10] well before HSBC incurred any expenses in the Litigation (and correspondingly became entitled to indemnification).[11]  Securities that have been wiped out since 2013 could not have been further damaged by action in 2014.

### B.    Royal Park Will Not Benefit From a Favorable Decision In This Case.

Royal Park is unable to show that it will receive any benefit from a favorable decision in this case.  Because the principal balance of Royal Park's securities are written down to zero, it

---

[9] The parties have exchanged evidence relevant to this issue in the underlying Litigation.  Since the Court is permitted to consider materials outside the pleadings when deciding the issue of standing, prior to filing this motion, HSBC requested Royal Park lift its confidentiality designation over certain of those materials.  Royal Park, however, took the position that the Protective Order in the Litigation prevented the use of those materials in this motion and declined to lift its designation.

[10] Publically available remittance reports show that the WFHET 2006-2 and FHLT 2006-C securities had zero principal balance as of November 2012 and the DBALT 2006-AR5 security's balance was reduced to zero in January 2013.  *See* Ex. 9 (2012-13 Remittance Reports).

[11] Although Royal Park may attempt to argue that HSBC caused damage to the "market value" of its securities, that argument is a red herring. The three securities had no market value prior to 2014.

currently is not entitled to receive any distributions from the trusts for its certificates. Thus, even if HSBC were required now to repay the trusts the money that it has properly received in indemnification, Royal Park would recover nothing.

In addition to having no principal balances, Royal Park's certificates are in tranches so subordinate in the waterfall that they would not share in any recovery even if HSBC were to repay indemnification amounts. Any payments received by the trust go first to the senior noteholders, not subordinate noteholders like Royal Park. Remittance reports show that the principal balances of the senior noteholders total over $100 million for each trust. *See* Ex. 10 (2017 Remittance Reports). In other words, Royal Park would have to recover over a hundred million dollars per trust, an impossible result in this case, before it received a penny.

### C.       Nominal Damages Do Not Confer Standing.

Royal Park cannot cure its standing deficiencies by claiming nominal damages. First, Royal Park did not allege nominal damages in its complaint. Second, nominal damages are not sufficient to confer Article III standing. Nominal damages may compensate litigants when there is no economic loss, or when damages are not ascertainable, but there has to be *some* injury to confer standing, even if it is not monetary. *Vazquez v. Salomon Smith Barney Inc.*, No. 01 CIV 2895 JSM, 2002 WL 10493, at *6 (S.D.N.Y. Jan. 4, 2002); *Koren-DiResta Constr. Co. v. N.Y.C. Sch. Constr. Auth.*, 740 N.Y.S.2d 56, 58-59 (2002). In the absence of injury, there is no breach of contract. *Mariah Re Ltd. v. Am. Family Mut. Ins.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014); *Counsel Fin. Servs. v. Melkersen Law, P.C.*, 602 F. Supp. 2d 448, 452 (W.D.N.Y. 2009). A belated claim for nominal damages cannot salvage standing.

### D.       Royal Park's Claims Are Not Ripe.

Finally, Royal Park's claims are not ripe. Constitutional ripeness "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review

because the injury is merely speculative and may never occur." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (internal quotation marks omitted). Prudential ripeness allows a court to determine "that the case will be better decided later" in order to "avoid becoming embroiled in adjudications that may later turn out to be unnecessary." *Id.* (internal quotation marks omitted). Royal Park's claims here fail for both reasons. Royal Park's claims depend on its prevailing in the underlying Litigation *and* on its proving that a "carve-out" to indemnification applies.[12] Thus, its success in this action is contingent on a future and speculative outcome in the Litigation. Because Royal Park cannot show injury or entitlement to recovery until resolution of the Litigation, it lacks standing here under constitutional ripeness doctrine. Moreover, an outcome in the Litigation may render adjudication of Royal Park's claims here unnecessary. In those circumstances, prudential ripeness also cautions against proceeding.

## CONCLUSION

For the foregoing reasons, Royal Park's complaint should be dismissed.

---

[12] Because Royal Park's Litigation complaint advances claims based on so many different theories, and on numerous allegations occurring over more than a decade, *even if* Royal Park were to obtain *some* recovery *and* establish the existence of *some* carve-out in the Litigation, it does not follow that *all* of HSBC's indemnity would be negated. To the extent Royal Park advances and forces the trustee to defend against unmeritorious claims, HSBC still would be entitled to some indemnity.

Dated: December 4, 2017

Respectfully submitted,

By:   /s/  Edward C. Reddington
      George A. Borden
      Kevin M. Hodges (*pro hac vice*)
      Edward C. Reddington (*pro hac vice*)
      Vidya A. Mirmira (*pro hac vice*)
      Matthew B. Underwood (*pro hac vice*)
      WILLIAMS & CONNOLLY LLP
      725 Twelfth Street, N.W.
      Washington, DC 20005
      Telephone: (202) 434-5000
      Facsimile: (202) 434-5029
      gborden@wc.com
      khodges@wc.com
      ereddington@wc.com
      vmirmira@wc.com
      munderwood@wc.com

      *Counsel for HSBC Bank USA, N.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2017, I caused the foregoing Memorandum in Support of Defendant HSBC Bank USA, National Association's Motion to Dismiss to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.


/s/  Edward C. Reddington
Edward C. Reddington