**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, | x : : Case No. 1:17-cv-07684-VEC : : : |
| Plaintiff, | : : |
| -against- | : : |
| HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee, | : : : |
| Defendant. | : : x |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY**
**<u>NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

A.     NCUA's Federal Agency Powers And Its Interests As Intervenor In This Suit................. 3

B.     Royal Park's Suit and NCUA's Proposed Complaint........................................... 5

ARGUMENT ............................................................................................................. 6

I.     NCUA Is Entitled to Intervention As Of Right Under Rule 24(a)(2) ............................... 6

       A.     NCUA's Motion is Timely .......................................................................... 6

       B.     NCUA Has An Interest Relating To The Property Or Transaction At Issue........... 9

       C.     NCUA's Ability to Protect Its Interests May As A Practical Matter Be
              Impaired .......................................................................................... 10

       D.     The Named Parties Do Not Adequately Represent NCUA's Interests................ 11

II.    Alternatively, The Court Should Grant NCUA Permissive Intervention ......................... 13

III.   The Court Should Incorporate NCUA In the Motion To Dismiss Briefing ..................... 16

CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                                              Page

*Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d. Cir. 2001).......................................................8

*CBS Inc. v. Snyder*, 136 F.R.D. 364 (S.D.N.Y. 1991) ................................................................11

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228 (2d Cir. 1991) .........................1, 15

*Chen-Oster v. Goldman, Sachs & Co.*, 2015 WL 4619663 (S.D.N.Y. 2015) ................7, 8, 11, 13

*Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, (2d Cir. 1993)................1, 15

*Dixon v. Heckler*, 589 F. Supp. 1512 (S.D.N.Y. 1984) ..............................................................11

*Dow Jones & Co., Inc. v. U.S. Department of Justice*, 161 F.R.D. 247 (S.D.N.Y. 1995).............11

*Export-Import Bank of the Repub. of China v. Grenada*, 2013 WL 4414875
          (S.D.N.Y. 2013) .............................................................................................................9

*Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261 (2d Cir. 1965) ..............................................1, 15

*Home Ins.Co. v. Liberty Mut.Ins. Co.*, 1990 WL 188925 (S.D.N.Y. 1990) .............................7, 10

*Hooper Assocs. v. AGS Computs., Inc.*, 74 N.Y.2d 487 (1989)..........................................1, 13, 15

*In re Bear Stearns Companies, Inc. Securities, Derivative, and Erisa Litigation*,
          297 F.R.D. 90 (S.D.N.Y. 2013) ..............................................................................9, 12, 13

*In re Oceana Int'l, Inc.*, 49 F.R.D. 329 (S.D.N.Y. 1969) ...........................................................15

*In re Tribune Co. Fraudulent Conveyance Litig.*, 291 F.R.D. 38 (S.D.N.Y. 2013) ......................6

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352 (S.D.N.Y. 1996) ...........11

*Miller v. Silbermann*, 832 F. Supp. 663 (S.D.N.Y. 1993) ...........................................................11

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148
          (2d Cir. 2014).............................................................................................................12

*Natixis Real Estate Capital v. Natixis Real Estate Holdings*, 50 N.Y.S.3d 13
          (1st Dep't 2017) .......................................................................................................2, 15

*NCUA v. Deutsche Bank Nat'l Trust Co.*, No. 1:14-cv-08919-SHS
          (S.D.N.Y. filed Nov. 7, 2014).....................................................................................4

*NCUA v. HSBC Bank US, N.A.*, No. 1:15-cv-02144-LGS-SN
          (S.D.N.Y. filed Mar. 20, 2015).....................................................................................4

*NCUA v. U.S. Bank N.A. & Bank of America, N.A.*, No. 1:14-cv-09928-PAE
(S.D.N.Y. filed Dec. 16, 2014) ...........................................................................4

*NCUA v. Wells Fargo Bank, N.A.*, No. 1:14-cv-10067-KPF-SN
(S.D.N.Y. filed Dec. 22, 2014) ...........................................................................4

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
2010 WL 5222127 (S.D.N.Y. 2010)....................................................6, 7, 8, 9, 10, 12

*Oneida Indian Nation of Wisconsin v. State of New York*, 732 F.2d 261 (2d Cir.1984) ..........8, 10

*Park & Tilford, Inc. v. Schulte*, 160 F.2d 984 (2d Cir. 1947)........................................15

*Peterson v. Islamic Repub. of Iran*, 290 F.R.D. 54 (S.D.N.Y. 2013) .........................................6, 9

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*,
No. 1:17-cv-05916-AJN (S.D.N.Y. filed Aug. 4, 2017)....................................14

*Russell v. Bd. of Plumbing Examiners*, 74 F. Supp. 2d 349 (S.D.N.Y. 1999),
*aff'd* 1 F. App'x 38 (2d Cir. 2001) ...................................................................15

*Tachiona ex. Rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383 (S.D.N.Y. 2002)...........................6

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ......................................11

*United States v. AT&T*, 642 F.2d 1285 (D.C. Cir. 1980).............................................11

*United States v. Hooker Chems & Plastics Corp.*, 749 F.2d 968 (2d Cir.1984) .........................6

*United States Postal Serv. v. Brennan*, 579 F.2d 188 (2d Cir. 1978) ...........................................11

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870
(S.D.N.Y. 1991) ............................................................................................12

## STATUTES, REGULATIONS, AND RULES

Fed. R. Civ. P. 24 ......................................................................................1, 5, 11

Fed. R. Civ. P. 24(a) .........................................................................................13

Fed. R. Civ. P. 24(a)(2) ..........................................................2, 3, 5, 6, 8, 9, 10, 11

Fed. R. Civ. P. 24(b) ......................................................................................3, 13

Fed. R. Civ. P. 24(c) ............................................................................................5

Federal Credit Union Act, 12 U.S.C. § 1751 *et seq* ...........................................3

12 U.S.C. § 1745..........................................................................................3

12 U.S.C. § 1752(a)(a) ...............................................................................3

12 U.S.C. § 1766 .......................................................................................3

12 U.S.C. § 1781 .......................................................................................3

12 U.S.C. § 1782(c) ...................................................................................3

12 U.S.C. § 1783 .......................................................................................3

12 U.S.C. § 1784 .......................................................................................3

12 U.S.C. § 1786(h) ...................................................................................3

12 U.S.C. § 1787 .......................................................................................3

12 U.S.C. § 1790e ......................................................................................3

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 (1989) ........................................12

## OTHER MATERIALS

7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* Civ. (3d ed.)

§ 1904 .......................................................................................................6

§ 1909 .....................................................................................................11

§ 1920 .....................................................................................................15

## INTRODUCTION

The National Credit Union Administration Board, in its capacity as liquidating agent ("NCUA"), respectfully moves pursuant to Federal Rule of Civil Procedure 24 to intervene in this putative class action brought by Royal Park Investments against HSBC Bank USA, N.A.

Royal Park's complaint properly challenges HSBC's unlawful raiding of trust funds that belong to investor beneficiaries in order to fund HSBC's own defense costs in actions brought by those same beneficiaries. The indemnification provisions on which HSBC relies preclude that result, which is squarely at odds with the American Rule that parties to a lawsuit do not pay each other's fees, and with New York's corollary that an indemnity provision will not be read to shift fees "unless the intention to do so is unmistakably clear from the language of the promise." *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989). No such clarity exists here.

Investors purchased certificates in residential mortgage-backed securities ("RMBS") trusts, thus contracting directly with HSBC as trustee. Those certificates, in turn, were made subject to Pooling and Servicing Agreements ("PSAs"), which contain the indemnity clauses at issue. It is well-established that such interlocking agreements as the certificates and the PSAs that they incorporate must be construed together. *See, e.g., Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965) ("New York law … requires that all writings that form part of a single transaction and are designed to effectuate the same purpose be read together, even though they were executed on different dates and were not all between the same parties."); *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 52–53 (2d Cir. 1993) ("Even if the writings are executed at different times… , contracts should be interpreted together if the parties assented to all the promises as a whole ….."); *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 233 (2d Cir. 1991) (construing "promissory notes … executed for the sole purpose of making payments under [a] distributorship agreement" together "as a single contract").

Nothing in the PSA indemnity clauses gave "unmistakably clear" notice to investors that, by purchasing RMBS certificates, they would have to fund HSBC's defense costs if they ever had to sue HSBC for malfeasance and breach of contract. That profound departure from the American Rule, had it been disclosed, would have made the certificates unmarketable, particularly if extended to any judgment, as it would be difficult if not impossible for investors to vindicate their contractual rights against the trustee. Moreover, HSBC's position that *trust funds*, rather than investors, provide the indemnity is erroneous. A trust fund is essentially a bank account, not a legal person, and is owned beneficially by the investors. *See Natixis Real Estate Capital v. Natixis Real Estate Holdings*, 50 N.Y.S.3d 13, 17 (1st Dep't. 2017) ("the [RMBS] trust itself . . . is a legal fiction"). Economically, therefore, investors provide the indemnity, not "trust funds" which are investor property but not a *legal entity* capable of being an indemnitor.

Royal Park's complaint concerns three RMBS trusts — DBALT 2006-AR5, FHLT 2006-C, and WFHET 2006-2. NCUA has a separate pending suit against HSBC, alleging breach of HSBC's trustee duties, which is consolidated with Royal Park's underlying action before Judge Schofield. NCUA's underlying complaint involves one of the same trusts at issue here, FHLT 2006-C. It also includes 14 trusts from the same 3 securitization shelves at issue here, and the indemnification language for those trusts is the same as or similar to the language at issue here.

NCUA meets the standard for intervention as of right under Rule 24(a)(2). *First*, NCUA "claims an interest relating to the property or transaction that is the subject of the action." *Id.* Indeed, NCUA has a direct interest *in* the property at issue — FHLT 2006-C trust funds — which is *more* than Rule 24(a) requires. NCUA further has interests "relating to" 14 additional RMBS securities issued from the DBALT, FHLT, and WFHET securitization shelves. *Id.* *Second*, NCUA "is so situated that disposing of the action may as a practical matter impair or

impede [NCUA's] ability to protect its interest." *Id.*  HSBC's depletion of trust funds jeopardizes bond payments on certificates in which NCUA holds an interest, while providing HSBC a nearly limitless litigation reserve funded by its adversaries, precluding any meaningful settlement talks in the underlying actions.  And, if HSBC's motion to dismiss were successful, then HSBC would submit this Court's decision as authority in any other case brought by NCUA concerning fee-shifting indemnification.  *Third*, "existing parties" do not "adequately represent" NCUA's interests as a federal agency and an absent class member.  *Id*.

NCUA's motion, filed the day after HSBC filed its motion to dismiss attacking NCUA's interest and before any discovery has occurred, is timely and NCUA's intervention will not prejudice the parties.  Denying intervention would prejudice NCUA, depriving a federal agency of participation in proceedings that will directly affect its property interests and potentially set precedent impacting NCUA's interests in one of the trusts and all three of the securitization shelves at issue here.  NCUA is therefore entitled to intervene as of right under Rule 24(a)(2).

In the alternative, NCUA qualifies for permissive intervention under Rule 24(b), as its claim against HSBC shares common questions of law and fact concerning fee-shifting indemnity issues raised in Royal Park's action.  NCUA's participation as a party intervenor will provide the Court with a more thorough and complete analysis of the legal and factual issues presented.

## FACTUAL BACKGROUND

### A.    NCUA's Federal Agency Powers And Its Interests As Intervenor In This Suit

*NCUA as agency regulator.*  NCUA is an independent agency in the Executive Branch. Pursuant to the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.*, NCUA charters and regulates federally insured credit unions in ways analogous to the Federal Deposit Insurance Corporation's chartering and regulation of banks.  NCUA also administers insurance funds that protect deposits

of nearly 107 million credit union account holders and are backed by the Full Faith and Credit of the United States. *Id.* §§ 1752a(a), 1755, 1781, 1782(c), 1783-1784, and 1790e.

*NCUA as liquidating agent.* NCUA also may act as conservator and liquidating agent for failed credit unions; NCUA thus seeks to conserve credit union assets and minimize losses to insurance funds and claimants against a failed credit union. *See id.* §§ 1766, 1786(h), and 1787. Since 2010, NCUA has taken multiple credit unions into liquidation, due in part to steep losses on RMBS certificates they had purchased. NCUA thus oversees a large portfolio of RMBS.

*NGN Trusts.* To offset the liquidated credit unions' losses, and to make the insurance funds whole for amounts they had been required to pay to protect those credit unions' depositors, NCUA re-securitized many of its RMBS into a series of NCUA Guaranteed Notes ("NGN") Trusts. NCUA holds an ongoing interest in the form of NGN "Owner Trust Certificates," entitling NCUA to the NGN Trusts' remaining assets (*i.e.*, the resecuritized RMBS certificates) after all NGN noteholder investors are paid. NCUA also has provided a Guarantee, backed by the Full Faith and Credit of the United States, that all NGN noteholders will receive the full amounts of principal and interest to which they are entitled.

HSBC's unlawful withdrawals of RMBS trust funds will not affect NGN noteholders, whose payments are guaranteed by NCUA, but rather will affect NCUA directly by diminishing the value of its NGN Owner Trust Certificates, whether through diminishment of the value of the RMBS that will be re-conveyed to NCUA, reimbursement of any payments the Guarantor makes to NGN noteholders,, or both. NCUA is therefore harmed in the same or in a similar way by HSBC's unlawful conduct as where NCUA is the direct holder of an RMBS certificate.

*NCUA suits against RMBS trustees.* To protect its interests as direct owner of both RMBS certificates and NGN Owner Trust Certificates, and as Guarantor of payments to NGN

4

noteholders, NCUA in its capacity as liquidating agent has brought multiple suits seeking to recover losses caused by RMBS trustees including HSBC. *See NCUA v. HSBC Bank USA, N.A.*, No. 15-cv-02144-LGS-SN (S.D.N.Y. filed Mar. 20, 2015) ("NCUA underlying complaint" or "action"). "NCUA" hereinafter refers to the agency in its capacity as liquidating agent.

*NCUA's interest in this suit.* NCUA's underlying complaint against HSBC concerns 37 RMBS trusts, including one of the three trusts before this Court. *See* Ex. A, NCUA Proposed Compl. ¶ 15 (FHLT 2006-C). NCUA's underlying complaint also includes 14 other trusts from the same securitization shelves as the three trusts at issue in Royal Park's complaint (DBALT, FHLT, and WFHET), and which have similar indemnification language as the three PSAs to be construed by this Court. *See id.* ¶ 17 (table of shelves, trusts, and indemnification language).

## B.     Royal Park's Suit and NCUA's Proposed Complaint

HSBC has been withdrawing funds from the at-issue trusts — funds that are beneficially owned by, and would otherwise flow to, the plaintiff beneficiaries — to pay for its defense in the underlying litigation. *See* HSBC Br. at 1, Dkt. 31. On October 6, 2017, Royal Park filed this putative class action seeking: (i) a declaration that HSBC is prohibited from thus raiding trust funds beneficially owned by investors; (ii) an injunction; (iii) disgorgement; and (iv) an accounting. RP Compl. at 18-19 (Dkt. 1). Discovery is currently stayed. Order (Dkt. 27).

Pursuant to Rule 24(c), NCUA's proposed Intervenor Complaint is submitted as Exhibit A hereto. NCUA's proposed complaint is limited to the same FHLT 2006-C trust already included in Royal Park's complaint. To avoid any burden to the Court or the parties, and given the current briefing schedule on HSBC's motion to dismiss filed yesterday, NCUA does not seek to add additional claims regarding its 14 additional trusts from the same three shelves at issue in Royal Park's complaint.

5

**ARGUMENT**

**I.     NCUA Is Entitled to Intervention As Of Right Under Rule 24(a)(2)**

Federal Rule of Civil Procedure 24(a)(2) governs "Intervention of Right," and provides:

> On timely motion, the court must permit anyone to intervene who:
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24(a)(2) establishes a "flexible" framework.  *See, e.g.*, *Tachiona ex. Rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002); *see also* 7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc*. Civ. § 1904 (3d ed.) ("Rule 24 . . . is to be given a liberal construction").  The factors should "be read not discretely, but together."  *United States v. Hooker Chems. & Plastics Corp*., 749 F.2d 968, 983 (2d Cir.1984).  Accordingly, a "showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation."  *Id.*  NCUA satisfies all four conditions for intervention of right, particularly in view of its strong interest in the property and claims at issue.

**A.     NCUA's Motion is Timely**

Courts assessing timeliness may consider:  "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to the existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness."  *Peterson v. Islamic Repub. of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013).  All four factors favor timeliness and intervention here.

*Length of time has been short.*  NCUA filed its motion on December 5, 2017, the day after HSBC filed its motion to dismiss that placed NCUA's interests in jeopardy (Dkt. 31), less

6

than two months after Royal Park's October 6 complaint and less than one month after HSBC first indicated in its November 9 letter (Dkt. 19) that it would move to dismiss on grounds that the PSAs allow HSBC to shift fees to its adversaries.  Far longer delays are routinely held acceptable, particularly given the early stage of proceedings where no discovery or merits rulings have occurred.  *See Peterson*, 290 F.R.D. at 57 ("six months"); *In re Tribune Co. Fraudulent Conveyance Litig.*, 291 F.R.D. 38, 41-2 (S.D.N.Y. 2013) (months-long delay); *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, 2010 WL 5222127, at *2 (S.D.N.Y. 2010) (more than two years); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, 1990 WL 188925, at *2 (S.D.N.Y. 1990) ("after this Court has granted partial summary judgment").

     *No prejudice to parties.*  NCUA's motion will not prejudice HSBC or Royal Park, as it is filed immediately after HSBC's motion to dismiss and before any discovery, which is now stayed.  Nor does NCUA seek to add additional trusts to the case.  Intervention will in fact reduce HSBC's litigation burden, and the burden on judicial resources, because the alternative is for NCUA to file its own suit with respect to many more trusts.  *See Chen-Oster v. Goldman, Sachs & Co.*, 2015 WL 4619663, at *9 (S.D.N.Y. 2015) ("[D]efendants have not identified with any specificity a burden that would be imposed upon them as a consequence of intervention that they would not also face when [applicants], if denied intervention, file a new action . . . as they would inevitably do.").  No delay should be necessary to incorporate NCUA into the existing briefing schedule, and any such delay that might occur is not prejudicial at this early stage in the case.  The absence of prejudice is "the most significant criterion in determining timeliness," and where, as here, there is no "significant prejudice to the existing parties, courts usually consider an application for intervention as timely."  *Home Ins. Co.*, 1990 WL 188925, at *2.

*Prejudice to NCUA from denial of intervention.*  A "failure to add [NCUA's] claims will work significant prejudice to" NCUA.  *New Jersey Carpenters*, 2010 WL 5222127, at *3.  If HSBC were to prevail, then it will continue billing the FHLT 2006-C Trust for legal costs associated with the Royal Park action, and NCUA's ability to effectively litigate that issue separately may be constrained by such a decision issued in its absence from the case based on principles of *stare decisis*.  Moreover, a subsequent court ruling in favor of NCUA would produce the inconsistent result of allowing HSBC to use investor trust funds for indemnification in one investor suit, but not in another involving the very same trust, and HSBC would no doubt assert this Court's decision in cases concerning different trusts from the same shelves or containing similar indemnification language.  *See Home Ins. Co.*, 1990 WL 188925, at *5; *Oneida Indian Nation of Wisconsin v. State of New York,* 732 F.2d 261, 265 (2d Cir. 1984) (reversing denial of intervention given "a substantial likelihood that the claims and interests of the proposed intervenors concerning the disputed lands may be adversely affected at least by principles of *stare decisis*").  Even if NCUA were to file a new suit against HSBC, there is no guarantee it would be consolidated with this suit and in any event would take time to develop, so the burden and uncertainty of filing a new action rather than intervening militates in favor of intervention.  *See Chen-Oster*, 2015 WL 4619663, at *10 (allowing intervention because "there is no guarantee that [consolidation] would occur" and "additional resources would be expended by the intervenors as well as by the court to familiarize [a different] judge with the issues").

*No unusual circumstances.*  The only "unusual circumstances" bearing on timeliness cut in favor of intervention.  Royal Park's action is a putative class action that could affect NCUA's interests with respect to FHLT 2006-C, and "intervention is commonly granted to absent class members."  *Chen-Oster*, 2015 WL 4619663, at *4.  Further, the coordinated nature of the

underlying litigation militates in favor of allowing NCUA to participate here to litigate the indemnity issue.

**B.      NCUA Has An Interest Relating To The Property Or Transaction At Issue**

NCUA's "interest in the action," Rule 24(a)(2), is "direct, substantial, and legally protectable." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d. Cir. 2001). Notably, Rule 24(a)(2) does not "require an interest *in* the property or transaction that is the subject of the action," but "requires a movant merely to claim an interest *relating to* the property or transaction that is the subject of the action." *New Jersey Carpenters*, 2010 WL 5222127, at *4.

NCUA's interest in seeing that the assets of FHLT 2006-C are not further depleted is therefore *greater* than what the rule requires. Further, NCUA's interest in 14 additional RMBS trusts from the same three securitization shelves as the trusts at issue in Royal Park's complaint qualifies as an interest "relating to the property or transaction that is the subject of the action." Rule 24(a)(2). *See Export-Import Bank of the Repub. of China v. Grenada*, 2013 WL 4414875, at *5 (S.D.N.Y. 2013) (intervention of right where action would constrain payments made to proposed intervenors); *Peterson*, 290 F.R.D. at 59-60 (intervention of right to collect on previous judgment against funds at issue in suit); *In re Bear Stearns Cos.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013) (intervention of right based on interest in funds from class action settlement).

Judge Baer's reasoning concerning similar RMBS shelves at issue in *New Jersey Carpenters* is instructive. The class plaintiff in that case alleged claims regarding 15 trusts from an HVMLT securitization shelf, but had purchased from and was deemed to have standing for only 2 of those trusts. 2010 WL 5222127, at *1. The court granted intervention as of right to certificate-holders in 6 other HVMLT-series trusts, holding that "the Intervenors have a direct interest in the action because their claims arise out of the same transaction and occurrence,"

9

offerings "made pursuant to offering documents that were common to the offerings in which existing plaintiffs purchased the securities that give rise to their existing claims." *Id.* at *4.

NCUA has the same type of interest, with respect to its DBALT, FHLT, and WFHET certificates, as the *New Jersey Carpenters* intervenors had with respect to their certificates in different HVMLT-series trusts.  As *New Jersey Carpenters* reasoned, investors in different trusts from the same RMBS series "certainly have a direct, substantial and legally protectable interest relating to the transaction that is the subject of" the litigation from the same shelf. *Id.* at *4.

### C.    NCUA's Ability to Protect Its Interests May As A Practical Matter Be Impaired

NCUA "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Rule 24(a)(2).  The impairment need not be "substantial," and "adequate impairment [exists] where any subsequent proceeding could only result in, at best, injunctive relief that would overlap *or conflict* with an existing order." *Home Ins. Co.*, 1990 WL 188925, at *5 (noting that) (emphasis added).

Should HSBC obtain a favorable ruling here, NCUA at best could obtain a conflicting judgment with respect to using trust funds from the FHLT 2006-C trust as indemnification for suits brought by trust beneficiaries.  The prospect of such a conflict is sufficient. *See id.*  In addition, "there is a substantial likelihood that the claims and interests of the proposed intervenors concerning the disputed [funds] may be adversely affected at least by principles of *stare decisis*, arising out of a final judgment to be entered in this case." *Oneida*, 732 F.2d at 265. And if trust funds are drawn to pay for HSBC's defense against Royal Park's action, then a subsequent holding that HSBC cannot do so for its defense of NCUA's underlying action would do nothing to restore the money continuing to flow out of the FHLT 2006-C trust for HSBC's defense of Royal Park's underlying case.  NCUA's interests may therefore be impaired.

Further, while HSBC contends that Royal Park will not benefit from any disgorgement (Dkt. 31 at 23-24), the FHLT 2006-C Class 2-A2 tranche in which NCUA holds an interest has recently been making principal and interest payments (Dkt. 32-10 at 8-12).  Accordingly, HSBC's unlawful removal of FHLT 2006-C trust funds harms NCUA's beneficial interest in those same funds.  *See supra* p. 4-5; Ex. A., NCUA Proposed Compl. ¶¶ 18-19.

### D.    The Named Parties Do Not Adequately Represent NCUA's Interests

Rule 24(a)(2)'s adequate representation requirement "should be treated as minimal" and "is satisfied if the applicant shows that representation of his or her interest *may be* inadequate." *Dow Jones & Co. v. U.S. Dept. of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995) (Sotomayor, J.) (emphasis added) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 540 n.10 (1972)).  Once the movant makes this minimal showing, *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978), the "burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention," *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991).[1]  NCUA meets its minimal requirement in three independently sufficient ways.

*First*, NCUA, as a federal agency, has broader interests than Royal Park does that also are rooted in the public interest.  Whereas NCUA and Royal Park both seek to bar HSBC from seizing trust funds for its litigation defense, courts have recognized that governmental entities and private parties with the same general objectives may not adequately represent each other's interests.  *See Dixon v. Heckler*, 589 F. Supp. 1512, 1516 (S.D.N.Y. 1984) ("[A]lthough the State

---

[1] Rule 24 shifts the burden of persuasion by requiring intervention "*unless* existing parties adequately represent" the moving party's interests.  Fed. R. Civ. P. 24(a)(2) (emphasis added); *see* 7C Wright *et al.*, Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ("the effect of [a 1966 Amendment adding the word "unless"] is to shift the burden of persuasion"); *Miller v. Silbermann*, 832 F. Supp. 663, 672 (S.D.N.Y. 1993) ("weight of the responsibility for demonstrating adequate representation fall[s] on the opposing party"); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 346352, at *2 (S.D.N.Y. 1996) (same); *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (same).

shares a similar objective [it] has some interests in the litigation which are not shared by

plaintiffs, and which therefore are not adequately represented by existing parties.").  NCUA's

interests are part of a comprehensive federal statutory scheme under the Federal Credit Union

Act, as well as the Financial Institutions Reform, Recovery, and Enforcement Act of 1989

("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183, which "addresse[s] NCUA's powers and

responsibilities as conservator or liquidating agent for a failed credit union."  *Nat'l Credit Union*

*Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014) ("FIRREA sought to put

the Federal deposit insurance funds on a sound financial footing, provide funds to deal

expeditiously with failed depository institutions, and *strengthen the enforcement powers of*

*Federal regulators of depository institutions*.") (citing FIRREA § 101, 103 Stat. at 187; FIRREA

§ 1217, 103 Stat. at 530) (emphasis added).

   *Second*, "intervention is commonly granted to absent class members."  *Chen-Oster*, 2015

WL 4619663, at *4.  NCUA and Royal Park's respective interests conceivably might diverge, for

example, with respect to allocation of disgorged funds, because Royal Park is representing a

putative class and will seek to maximize recovery to that class, while NCUA will attempt to

maximize recovery to its own certificate or tranche.  *See, e.g.*, *Bear Stearns*, 297 F.R.D. at 97

(finding inadequate representation of absent class member where "other members of the class

likely would prefer to exclude [proposed intervenor] since that would increase [their] payout");

*Jakubik v. Schmirer*, 2013 WL 3465857, at *2 (S.D.N.Y. 2013) (allowing intervention despite

possibility that existing party would assert a claim because intervenor "is best positioned to

assert it herself through her own counsel;" "has her own interests and perspective;" and existing

party "might refrain from advancing" interests of intervenor "for [its] own reasons")

*Third*, NCUA's interests extend beyond the three trusts at issue in Royal Park's case. Royal Park has no incentive to argue for broader application of its arguments to the shelf level. Indeed, Royal Park would lack standing to assert, for example, that an order requiring HSBC to disgorge funds it has taken from DBALT 2006-AR5 should extend to the surrounding offerings in the series (2006-AR4 and -AR6).   In *New Jersey Carpenters*, where the plaintiff and intervenors likewise sued on different certificates from the same securitization shelf, inadequate representation was assumed without meriting detailed analysis, as it is clear that parties with interests in different certificates from the same shelf, while interested in each other's cases, cannot fully and adequately represent each other's holdings.  *See* 2010 WL 5222127, at *2-4 (analyzing only timeliness and the intervenor's interests).

## II.     Alternatively, The Court Should Grant NCUA Permissive Intervention

Permissive intervention is governed by Rule 24(b), which provides in relevant part:

(1) On timely motion, the court may permit anyone to intervene who:

      (B) has a claim or defense that shares with the main action a common question of law or fact. . . .

(3) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Permissive intervention is proper here.  NCUA's motion is timely.  *See supra* Part I.A; *Bear Stearns*, 297 F.R.D. at 97 (timeliness under Rules 24(a) and (b) judged by same factors). NCUA's claim shares common questions of fact and law with Royal Park's action concerning whether investors, by contracting with HSBC to purchase their certificates subject to the PSAs, had "unmistakably clear" notice that the PSAs indemnification language worked a profound departure from the American Rule against fee-shifting between litigation adversaries.  *Hooper*, 74 N.Y.2d at 492.  Moreover, NCUA has an interest in one of the three specific trusts at issue.

13

Further, courts consider factors that include "the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Chen-Oster*, 2015 WL 4619663, at *5. NCUA's interests are extensive, significant, and will not be adequately represented. *Supra* Parts I.B, I.C, and I.D.

Importantly, NCUA will contribute substantially to development of a full record on which to base this Court's decision on an issue that will affect numerous lawsuits in which HSBC and other RMBS trustees have been raiding investor trust funds for indemnification in suits brought by investors. Royal Park has also filed a similar action seeking to prevent RMBS trustee Deutsche Bank from raiding trust funds to pay for its defense in underlying litigation brought by RMBS investors. *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, Case No. 17-cv-05916-AJN (S.D.N.Y. filed Aug. 4, 2017). In that case, NCUA noted the existence of an overlapping trust and sought to participate as an *amicus curiae*, explaining that it could provide a unique perspective as a government agency and that it would offer unique legal arguments that were not raised by the parties. *NCUA Amicus Brief*, *id.* Dkt. 30. Judge Nathan granted NCUA's motion and allowed NCUA's *amicus* brief to be filed. Order, *id.* Dkt. 39.

NCUA's *amicus* brief is attached hereto to illustrate the contributions NCUA will make toward developing a complete record. *See* Ex. C. NCUA will focus on longstanding common law under which a trust or its trust funds cannot, as a matter of law, do so because a common-law trust is not a juridical entity, cannot enter contracts, and cannot own property. *Id.* at 5-10. Investor trust beneficiaries, which own equitable title to trust funds, are the source of the trustee's sought-after indemnification. *Id.* at 7-9. NCUA will further develop those principles

14

based on longstanding trust law in the context of the *Hooper* line of cases, none of which has yet addressed fee-shifting indemnification in the context of a common-law trust, which is not a legal person but rather a legal fiction. *See id.* at 9-10; *Natixis*, 50 N.Y.S.3d at 17 ("the [RMBS] trust itself . . . is a legal fiction"). Further, NCUA will develop the record on the fact that investor trust beneficiaries enter contracts with an RMBS trustee via certificates which incorporate the PSAs into those contracts, reinforcing the conclusion that certificateholders are first parties to the PSAs' indemnification provisions for purposes of the analysis mandated by New York's highest court in *Hooper*. *See id.* at 5-7; *Gordon*, 358 F.2d at 263 (construing "all writings that form part of a single transaction … together, even though they were executed on different dates and were not all between the same parties"); *Commander Oil*, 991 F.2d at 52–53 ("writings … executed at different times … should be interpreted together if the parties assented to all the promises as a whole"); *Carvel*, 930 F.2d at 233 ("promissory notes" for payments under a "distributorship agreement" construed "as a single contract"); *supra* p. 1.

Development of the record on these points is important, the more so in view of the fact that a recent New York state court ruling failed to consider any of these principles in concluding hastily from the bench that an RMBS trustee could raid trust funds for its defense costs.

Finally, the inequity of HSBC's looting of trust funds for the FHLT 2006-C trust is illustrated by the public record developed in discovery in NCUA and Royal Park's underlying coordinated cases. For example, and as set out in NCUA's proposed complaint, in early 2007 HSBC ignored a notice by Goldman Sachs, the securities underwriter for 14 Fremont trusts including FHLT 2006-C, that each of those 14 trusts contained loans that breached Fremont's representations and warranties and which HSBC was duty-bound as trustee to enforce by requiring Fremont to repurchase any such defective loans. *See* Ex. A ¶¶ 35-40. Despite learning

in the course of responding to Goldman Sachs's notice that nearly half of the 7,806 loans in the FHLT 2006-C trust had exceptions in the mortgage files that warranted repurchase, HSBC did nothing to remedy the issue and thus protect the investor assets under its charge as trustee.  *Id.* Now, after doing nothing to protect the investor trust funds, it wants to raid those same trust funds to defend against litigation by the investors challenging its malfeasance.[2]

## III.   The Court Should Incorporate NCUA In the Motion To Dismiss Briefing

HSBC's motion to dismiss was filed December 4, 2017, Royal Park's opposition is due January 16, 2018, and HSBC's reply is due February 5, 2018.  Order, Dkt. 18.  Subject to the Court's discretion, NCUA proposes that HSBC be allowed to file a motion to dismiss to NCUA's complaint on or before January 2, 2018, limited to addressing any unique matters not included in Royal Park's complaint; and that each side's opening or opposition brief be limited to 10 pages, with HSBC's reply limited to 3 pages on February 5, 2018.  In the alternative, NCUA requests briefing in a manner and timing convenient for the Court.

## CONCLUSION

The Court should grant NCUA intervention as of right, or alternatively by permission.

---

[2] NCUA is entitled to intervention as of right so consideration of whether it should be relegated to *amicus curiae* status is irrelevant.  Even if permissive intervention were required, the Court should grant it to allow NCUA as intervenor "to litigate fully on the merits."  *In re Oceana Int'l, Inc.*, 49 F.R.D. 329, 333-34 (S.D.N.Y. 1969) (citing *Park & Tilford, Inc. v. Schulte*, 160 F.2d 984 (2d Cir. 1947); *see* 7C Wright *et al.*, Fed. Prac. & Proc. Civ. § 1920 (3d ed.).  *Cf. Russell v. Bd. of Plumbing Examiners*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999) ("Participation as *amicus curiae*, as opposed to becoming an intervenor, is appropriate when the party cares only about the legal principles of the case, and has no personal, legally protectable interest in the outcome of the litigation.  Here, the *amicus* probably has such an interest, and could have sought intervention, but chose to appear as *amicus*."), *aff'd* 1 F. App'x 38 (2d Cir. 2001).

Dated:  December 5, 2017

John A. Libra
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, Illinois 60601
Tel:  (312) 641-9750
Fax:  (312) 641-9751
gzelcs@koreintillery.com
jlibra@koreintillery.com

Steven S. Fitzgerald
Ryan A. Kane
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Tel:  (212) 382-3300
Fax:  (212) 382-0050
sfitzgerald@wmd-law.com
rkane@wmd-law.com

Respectfully submitted,

/s/ *Scott K. Attaway*
David C. Frederick (*pro hac vice* forthcoming)
Scott K. Attaway
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel:  (202) 326-7900
Fax:  (202) 326-7999
dfrederick@kellogghansen.com
sattaway@kellogghansen.com

*Counsel for the National Credit Union*
*Administration Board, as Liquidating Agent*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2017, a copy of the foregoing was served on all

counsel of record via ECF.


<u>/s/ *Scott K. Attaway*_____</u>
Scott K. Attaway