UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
ROYAL PARK INVESTMENTS SA/NV,      :   Civil Action No. 17-cv-07684-VEC
Individually and on Behalf of All Others   :
Similarly Situated,                :   <u>CLASS ACTION</u>
                                   :
                   Plaintiff,      :   ROYAL PARK INVESTMENTS SA/NV'S
                                   :   OPPOSITION TO HSBC BANK USA,
        vs.                        :   NATIONAL ASSOCIATION'S MOTION TO
                                   :   DISMISS
HSBC BANK USA, NATIONAL            :
ASSOCIATION, as Trustee,           :
                                   :
                   Defendant.      :
                                   :
———————————————————— x

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................2

III. ARGUMENT .......................................................................................................3

    A. RPI Suffered an Injury-in-Fact and Has Standing ..................................3

        1. HSBC's "Written-Down" Argument Is a Red Herring, as RPI Continues to Receive Distributions ............................................4

        2. Nominal Damages Are Sufficient to Confer Standing ...............5

    B. Regardless of the Outcome of the Litigation, HSBC Is Not Entitled to Indemnification for RPI's Claims ...........................................5

        1. The Purpose of Each Trust Was to Benefit Certificateholders ...................5

        2. The PSAs Do Not Permit Indemnification for Certificateholder Claims .....................................................7

            a. The Absence of an Unmistakably Clear Intent to Indemnify Claims by Certificateholders Is Dispositive ...................................8

            b. HSBC's Construction of the Indemnification Clauses Is Belied by Other Clauses of the Covered Trusts...........................11

        3. RPI Is Funding Its Adversary's Defense in the Litigation.......................12

    C. HSBC Bears the Burden of Establishing the Right to Indemnification, Which Cannot Be Shown Until Conditions Precedent Are Met...........................15

    D. Unlike HSBC's Indemnity Claim, RPI's Claim Is Ripe........................16

    E. The PSAs Do Not Provide for Advancement of Legal Fees .................17

    F. Two of the Covered Trusts Fail to Provide for Attorney's Fees and Therefore Do Not Indemnify Such Expenses .........................................20

    G. RPI Has Sufficiently Pled the Non-Contractual Causes of Action......................22

        1. The Economic Loss Rule Does Not Bar RPI's Breach of Trust Claims, Which Are Not Duplicative.........................................22

1351227_1

**Page**

2.  Unjust Enrichment and Conversion Are Pled in the Alternative Should HSBC's Conduct Fall Outside the Contracts ................................23

3.  RPI and the Class Are Entitled to an Accounting......................................23

H.  Courts Have Rejected HSBC's "No Action Clause" Arguments .........................24

IV.  CONCLUSION................................................................................................25

1351227_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*150 Broadway N.Y. Assocs., L.P. v. Bodner,*
   14 A.D.3d 1 (2004) ................................................................................................6

*905 5th Assoc., Inc. v. Weintraub,*
   927 N.Y.S.2d 29 (App. Div. 2011) .......................................................................15

*A. Cappione, Inc. v Cappione,*
   119 A.D.3d 1121 (2014) .....................................................................................6, 12

*ACE Sec. Corp. Home Equity Loan Tr. Series 2007-WM1 v.*
   *DB Structured Prods., Inc.,*
   2014 N.Y. Misc. LEXIS 4427 (Sept. 25, 2014)...............................................20, 21

*Aleman v. RFR/SF State St., LP,*
   2011 N.Y. Misc. LEXIS 4227 (Aug. 29, 2011) ....................................................15

*Blackrock Allocation Target Shares: Series S Portfolio v.*
   *Wells Fargo Bank Nat'l Ass'n,*
   247 F. Supp. 3d 377 (S.D.N.Y. 2017)...............................................................22, 25

*Blackrock Core Bond Portfolio v. U.S. Bank, Nat'l Ass'n,*
   165 F. Supp. 3d 80 (S.D.N.Y. 2016).....................................................................25

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
   778 F. Supp. 2d 375 (S.D.N.Y. 2011)............................................................8, 11, 24

*Borriello v. Loconte,*
   2014 N.Y. Misc. LEXIS 729 (Feb. 24, 2014) .......................................................18

*Bottcher v. W. 44th St. Hotel LLC,*
   2013 N.Y. Misc. LEXIS 4206 (Aug. 5, 2013) ......................................................15

*Breed, Abbott & Morgan v. Hulko,*
   531 N.Y.S.2d 240 (App. Div. 1988) ......................................................................21

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
   98 F.3d 13 (2d Cir. 1996) .................................................................................8, 10

*Carter v. HealthPort Techs., LLC,*
   822 F.3d 47 (2d Cir. 2016).....................................................................................5

*Colon v. 78-14 Roosevelt LLC,*
   2014 N.Y. Misc. LEXIS 5276 (Sept. 17, 2014).....................................................15

**Page**

*Commerzbank AG v. U.S. Bank N.A.*,
  2017 U.S. Dist. LEXIS 159069 (S.D.N.Y. Sept. 27, 2017)....................................................24

*Cruden v. Bank of N.Y.*,
  957 F.2d 961 (2d Cir. 1992)....................................................................................5, 25

*Cuellar v. N.Y.C.*,
  32 N.Y.S.3d 292 (App. Div. 2016)....................................................................................19

*DiGirolamo v. ABM Janitorial Servs., Inc.*,
  2011 N.Y. Misc. LEXIS 21 (Jan. 3, 2011) ...........................................................................15

*Estate of Nasser v. Port Auth. of N.Y. & N.J.*,
  546 N.Y.S.2d 626 (App. Div. 1989)............................................................................15, 16

*Ficus Invs., Inc. v. Private Capital Mgmt., LLC*,
  872 N.Y.S.2d 93 (App. Div. 2009)....................................................................................18

*FSP, Inc. v. Societe Generale*,
  2003 U.S. Dist. LEXIS 493 (S.D.N.Y. Jan. 14, 2003),
  *aff'd*, 350 F.3d 27 (2d Cir. Nov. 12, 2003) ...............................................................15, 17

*Globus v. Law Research Serv., Inc.*,
  418 F.2d 1276 (2d Cir. 1969)....................................................................................13

*Golden Pac. Bancorp v. FDIC*,
  273 F.3d 509 (2d Cir. 2001)....................................................................................23

*Goshawk Dedicated Ltd. v. Bank of N.Y.*,
  2010 U.S. Dist. LEXIS 25498 (S.D.N.Y. Mar. 15, 2010) ......................................9, 13, 14, 21

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
  298 F.R.D. 116 (S.D.N.Y. 2014) ....................................................................................10, 14

*Hooper Assocs. v. AGS Computs.*,
  74 N.Y.2d 487 (1989) ....................................................................................7, 8, 10, 21

*Hosein v. CDL W.45th St., LLC*,
  2015 N.Y. Misc. LEXIS 4812 (Dec. 3, 2015) .......................................................................15

*In re Bridge Constr. Servs. of Fla., Inc.*,
  185 F. Supp. 3d 459 (S.D.N.Y. 2016)....................................................................................15

- iv -

**Page**

*Int'l Fid. Ins. Co. v. Cty. of Rockland*,
  98 F. Supp. 2d 400 (S.D.N.Y. 2000) ..................................................................................20

*Kaloyeros v. Fort Schuyler Mgmt. Corp.*,
  49 N.Y.S.3d 867 (Sup. Ct. 2017) ......................................................................................18

*Katz v. Donna Karan Co., LLC*,
  872 F.3d 114 (2d Cir. 2017) .................................................................................................4

*Lahoud v. Document Techs. LLC*,
  2017 U.S. Dist. LEXIS 188162 (S.D.N.Y. Nov. 14, 2017) .................................................6

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) .........................................................................................11, 12

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
  1994 U.S. Dist. LEXIS 2549 (S.D.N.Y. Mar. 4, 1994) ......................................................5

*Loctite VSI Inc. v. Chemfab N.Y. Inc.*,
  701 N.Y.S.2d 723 (App. Div. 2000) ..................................................................................12

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*,
  913 A.2d 572 (Del. Ch. 2006) ...........................................................................................18

*Maldonado v. DiBre*,
  140 A.D.3d 1501 (2016) ...............................................................................................5, 12

*N.Y. Budget Inn LLC v. Averbuch*,
  2017 N.Y. Misc. LEXIS 2346 (June 13, 2017) .................................................................18

*NBA v. Nat'l Basketball Players Ass'n*,
  2004 U.S. Dist. LEXIS 26244 (S.D.N.Y. Dec. 30, 2004) .................................................20

*Nippon Express U.S.A. (Ill.), Inc. v. M/V Chang Jiang Bridge*,
  2007 U.S. Dist. LEXIS 92032 (S.D.N.Y. Dec. 13, 2007) .................................................20

*Noe v. Friedberg*,
  2009 N.Y. Misc. LEXIS 3810 (Feb. 26, 2009) ..................................................................18

*Olympus Sec., LLC v. United Fiber & Data, LLC*,
  2016 U.S. Dist. LEXIS 142679 (S.D.N.Y. Oct. 14, 2016) ................................................17

*Oscar Gruss & Son, Inc. v. Hollander*,
  337 F.3d 186 (2d Cir. 2003) .................................................................................................7

- v -

**Page**

*Quadrant Structured Prods. Co. Ltd. v. Vertin*,
    23 N.Y.3d 549 (2014) ........................................................................................21

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2016 U.S. Dist. LEXIS 12982 (S.D.N.Y. Feb. 3, 2016) .......................................13

*Rozsa v. May Davis Grp., Inc.*,
    152 F. Supp. 2d 526 (S.D.N.Y. 2001) ...............................................................8, 23

*Schlossberg v. Schwartz*,
    2014 N.Y. Misc. LEXIS 2188 (May 14, 2014) .....................................................17

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
    959 F.2d 425 (2d Cir. 1992) ................................................................................20

*Sequa Corp. v. Gelmin*,
    851 F. Supp. 106 (S.D.N.Y. 1994) ........................................................8, 9, 11, 13

*Sommer v. Federal Signal Corp.*,
    583 N.Y.S.2d 550 (3d Dep't 1992) .......................................................................22

*Sparta Commercial Servs. v. DZ Bank, AG*,
    680 F. App'x 17 (2d Cir. 2017) .......................................................................7, 10

*Spokeo, Inc. v. Robins*,
    __ U.S. __, 136 S. Ct. 1540 (2016) .........................................................................3

*Springer v. U.S. Bank Nat'l Ass'n*,
    2015 U.S. Dist. LEXIS 171734 (S.D.N.Y. Dec. 23, 2015) ...................................13

*Tech-Sonic, Inc. v. Sonics & Materials, Inc.*,
    2015 U.S. Dist. LEXIS 103688 (D. Conn. Aug. 7, 2015) .......................................5

*VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n*,
    2016 U.S. Dist. LEXIS 93605 (D.N.J. July 19, 2016) ...........................................16

*White v. Farrell*,
    20 N.Y.3d 487 (2013) .............................................................................................4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8(a) ...............................................................................................................23
    Rule 12(b)(1) ...........................................................................................................4

1351227_1

Plaintiff Royal Park Investments SA/NV ("plaintiff" or "RPI") submits this opposition to Defendant's Motion to Dismiss the Complaint (ECF Nos. 30-32) ("MTD").[1]

## I. INTRODUCTION

The issue before the Court is not whether the Governing Agreements provide HSBC with indemnification under certain circumstances (they do), but whether HSBC is properly using trust assets to defend itself in litigation brought by Certificateholders. Guided by well-established tenets of contract construction and controlling New York law, the simple answer is that HSBC's use of trust funds is neither "indemnification," nor proper under these circumstances.

First, HSBC falsely asserts that RPI does not have standing because a written-down trust cannot be damaged. RPI continues to receive payments on one of the Covered Trusts, as HSBC is well aware. New York law also provides nominal damages for breach of contract actions, which is sufficient to confer standing. RPI's standing is beyond dispute.

Second, HSBC is not entitled to indemnification for the Litigation regardless of its outcome. HSBC's twisted interpretation of the indemnity clauses ignores critical language in each trust unequivocally stating that the trust funds are for the Certificateholder's exclusive use and benefit. Disregarding controlling law requiring indemnification provisions against the indemnitor to be unmistakably clear (none of them here are), HSBC incorrectly suggests that the indemnification provisions should offer blanket coverage, which would render meaningless other indemnification

---

[1]   Defendant is HSBC Bank USA, National Association ("HSBC" or "defendant"). All MTD references are to the Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint (ECF No. 31). All "¶__" references are to Plaintiff's Complaint for Breach of Contract, Unjust Enrichment, Conversion, Breach of Trust, Equitable Accounting, and for Declaratory and Injunctive Relief (ECF No. 1) (the "Complaint"). Capitalized terms not otherwise defined here have the same meaning as in the Complaint. Emphasis is added and citations are omitted unless otherwise stated.

provisions in those same documents, as well as each PSA's mandate that no provision shall be construed to relieve HSBC from liability for its negligence or misconduct.

Third, HSBC has not met its burden to establish that it is entitled to indemnification.  Nor can it, as indemnification under the PSAs requires satisfaction of conditions precedent that are unresolved in the Litigation.

Fourth, under New York law, RPI's breach of contract claims ripened immediately upon HSBC's alleged breach.  In contrast, HSBC's claims for indemnification are not ripe.

Fifth, HSBC ignores the difference between an advancement, which is subject to reimbursement, and indemnity, which may be available after final disposition of an action.  The funding of HSBC's litigation costs violates the PSAs, which do not provide for advancements.

Sixth, even after the Litigation is concluded, no indemnity for attorneys' fees is available for the two Covered Trusts that do not expressly include those fees under the covered expenses.

Seventh, RPI has stated a claim as to its non-contractual causes of action.  The economic loss rule does not bar claims arising from HSBC's extra-contractual duties of due care and to avoid conflicts of interest.  Also, unjust enrichment and conversion are pled in the alternative should HSBC's conduct fall outside its contractual duties.  And an accounting is appropriate given HSBC's breach of its fiduciary duty of loyalty.

Eighth, HSBC's arguments regarding the no-action clause have been considered and rejected in one of the cases that it relies upon.  HSBC's arguments to the contrary are meritless.

## II.    BACKGROUND

The following facts are beyond dispute.  Though similar in many regards, each PSA has some differences.  ECF Nos. 1-1 through 1-3; ECF No. 28 at 7:6-9 (Mr. Reddington: "They're always different.").  Each indemnification provision relied on by HSBC lists conditions that would

render HSBC ineligible for indemnification, such as gross negligence or willful misfeasance.  ¶25; DBALT 2006-AR5 PSA ("DBALT"), §9.5; FHLT 2006-C PSA ("FHLT"), §8.05; WFHET 2006-2 PSA ("WFHET"), §8.05.  Despite their differences, each PSA mandates that the assets of the Trust Fund are held by or on behalf of the Trustee "in trust for the *exclusive use and benefit of all present and future Certificateholders*."  DBALT, §2.2; FHLT, §2.02; WFHET, §2.02.  The PSAs also state: "No provision of this Agreement shall be construed to relieve the Trustee . . . from liability for its own negligent action, its own negligent failure to act or its own misconduct."  DBALT, §9.1; *see also* WFHET, §8.01 (same); FHLT, §8.01 (substituting "willful misconduct" for "misconduct").

HSBC has been using trust funds to pay for its ongoing legal fees and expenses in the Litigation, in which it is adverse to RPI and in which RPI has alleged that HSBC has engaged in gross negligence and/or willful misconduct.  ¶¶2, 27.  Those allegations remain unresolved, and whether a disqualifying "carve out" from the indemnification provisions exists cannot be shown until resolution of the Litigation.  MTD at 25.  As of now, HSBC has not established that it is entitled to indemnification.  MTD at 1 ("Royal Park now seeks to *preempt* HSBC's entitlement to indemnification.").

## III.   ARGUMENT

### A.   RPI Suffered an Injury-in-Fact and Has Standing

To establish standing, a "plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016).  HSBC's arguments that trusts "wiped out since 2013 could not have been further damaged by action in 2014," and that RPI's securities had a "zero" balance are both incorrect and irrelevant.  MTD at 23 n.10; ECF No. 32-9.

1.  **HSBC's "Written-Down" Argument Is a Red Herring, as RPI Continues to Receive Distributions**

Despite that RPI's securities may have been written-down for accounting purposes, RPI is not only entitled to payments from the Covered Trusts, but has been receiving payments. For example, attached as Exhibit A to the Declaration of Christopher M. Wood in Support of this Motion, are remittance reports for DBALT 2006-AR5, from October 2014 through December 2017 showing that the IA3 Class held by RPI continued to receive distributions ***every single month*** during the Litigation.[2]  Wood Decl., Ex. A; ¶7.  HSBC's assertion that trusts "wiped out since 2013 could not have been further damaged by action in 2014" is therefore demonstrably false.  *See* MTD at 23. The funds HSBC diverted from trust assets into its Litigation coffers reduced the assets available for RPI's distributions.  A favorable decision in this action will redress RPI's injuries by allowing it to recoup its improperly diverted distributions.

HSBC wrongly contends that the "waterfall" payment system precludes RPI's recovery unless RPI recovers over $100 million per trust.  First, RPI has received and continues to receive some distributions.  *See* Wood Decl., Ex. A.  Second, HSBC represented, "New York law requires damages for breach of contract to be determined ***as of the time of breach***."  Litigation ECF No. 378 at 32 (citing *White v. Farrell*, 20 N.Y.3d 487, 499 (2013)).  HSBC's suggestion that any recoverable damages in this action would go over the waterfall as it now exists, rather than the waterfall at the time HSBC raided the trusts is baseless.  MTD at 23-24.  In fact, in the Litigation, HSBC has taken the exact opposite position.  *See* Litigation ECF Nos. 378 at 31-34; 379-1 at ¶¶16, 43.

---

[2]   In opposing a fact-based Rule 12(b)(1) motion where a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).  HSBC agrees that remittance reports may be considered in a motion to dismiss for purposes of standing, but, oddly, chose to present to the Court remittance reports only from 2012 and 2013 rather than any time during the pendency of the Litigation.  MTD at 23 n.10.

## 2.     Nominal Damages Are Sufficient to Confer Standing

Ignoring the Complaint's allegations that RPI suffered damages (which the Court must take as true for purposes of a motion to dismiss), HSBC argues that "nominal damages are not sufficient to confer Article III standing."  MTD at 24.  HSBC is wrong.  *See Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, 2015 U.S. Dist. LEXIS 103688, at *16 (D. Conn. Aug. 7, 2015) ("Article III standing does not disappear merely because a plaintiff's damages are limited to nominal damages"); *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 1994 U.S. Dist. LEXIS 2549, at *13-*14 (S.D.N.Y. Mar. 4, 1994) ("New York law clearly provides that, 'since nominal damages are always available in breach of contract actions, all of the elements necessary to maintain a lawsuit and obtain relief in court [are] present at the time of the alleged breach.'"); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).  RPI has standing, even if it was only entitled to nominal damages.

## B.     Regardless of the Outcome of the Litigation, HSBC Is Not Entitled to Indemnification for RPI's Claims

The PSAs must be construed holistically to give effect to the parties' expressed intention and to avoid inconsistencies.  *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992).  Governing principles of contract interpretation make clear that HSBC is not entitled to indemnification for RPI's claims.

## 1.     The Purpose of Each Trust Was to Benefit Certificateholders

Though the indemnity provisions of each of the Covered Trusts vary to some degree and must be considered individually, each Covered Trust shares some key language: the assets of the Trust Fund are held by or on behalf of the Trustee "in trust for the ***exclusive use and benefit of all present and future Certificateholders***."  DBALT, §2.2; FHLT, §2.02; WFHET, §2.02.

"It is axiomatic that a 'contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself.'"  *Maldonado v. DiBre*,

140 A.D.3d 1501, 1506 (2016).  "In so doing, '[t]he contract must be read as a whole to determine

its purpose and intent, and it should be interpreted in a way [that] reconciles all its provisions, if

possible.'  To that end, 'the goal should be a practical construction of the language used so that the

reasonable expectations of the parties are realized,' and 'the contract must be interpreted so as to

give effect to, not nullify, its general or primary purpose.'"  *A. Cappione, Inc. v Cappione*, 119

A.D.3d 1121, 1122-23 (2014).  "It is a cardinal rule of contract construction that a court should

'avoid an interpretation that would leave contractual clauses meaningless.'"  *150 Broadway N.Y.*

*Assocs., L.P. v. Bodner*, 14 A.D.3d 1, 6 (2004).  "Whenever possible, a contract must be construed to

harmonize its provisions and avoid rendering any language superfluous."  *Lahoud v. Document*

*Techs. LLC*, 2017 U.S. Dist. LEXIS 188162, at *13 (S.D.N.Y. Nov. 14, 2017).

  When taken as a whole, none of the PSAs support HSBC's suggestion that the

indemnification provision should be construed to allow use of trust assets – which HSBC holds "in

trust for the exclusive use and benefit of all present and future Certificateholders" – to fund HSBC's

defense in the Litigation brought by Certificateholders.   HSBC's strained and self-serving

construction of the PSAs far exceeds the realm of more logical constructions – *e.g.*, that HSBC, as

Trustee, may be indemnified for activities that are necessary to achieve a benefit for the

Certificateholders, such as if it was sued by a homeowner in a repurchase action, or had to sue to

foreclose on a house where a mortgage loan was in default.  *See, e.g.*, DBALT, §2.8 (trust purpose is

"to engage in those activities that are necessary, suitable or convenient to [make payments on the

Certificates] or are incidental thereto or connected therewith" and "to engage in such other activities

as may be required in connection with conservation of the Trust Fund and the making of

- 6 -

distributions to the Certificateholders"); *see also* Litigation ECF No. 254 at 7-8 (noting HSBC's reimbursement of legal fees incurred to guide its future performance as Trustee).[3]

While limited indemnification is permissible under the PSAs, that indemnification cannot be construed to eviscerate the PSA's purpose and intent that the trust assets are "for the exclusive use and benefit of all present and future Certificateholders."  HSBC's use of trust assets to fund its defense in the Litigation is not for the benefit of Certificateholders and is impermissible.

### 2. The PSAs Do Not Permit Indemnification for Certificateholder Claims

The plain language of the PSAs does not allow indemnification for claims, liability or expenses relating to HSBC's defense in the Litigation.  ¶¶24-28.  In New York, where "a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."  *Hooper Assocs. v. AGS Computs.*, 74 N.Y.2d 487, 491 (1989).  Ignoring *Hooper* and New York's default rule that adversaries pay their own legal expenses, HSBC wrongly contends that the PSAs provide blanket indemnification by the Covered Trusts to cover "any losses, liabilities or expenses."[4]  MTD at 6-11.

---

[3]   HSBC characterizes this order as an example of a "broad right to indemnification."  MTD at 9. However, Judge Netburn was not addressing the scope of an indemnity clause, but was merely noting that HSBC previously sought reimbursement of legal fees pursuant to the indemnification provided by the governing agreements.  Litigation ECF No. 254 at 7-8.

[4]   "Under the general rule in New York, attorneys' fees . . . may not be awarded . . . unless authorized by agreement between the parties, statute, or court rule."  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003).  "This policy 'provides freer and more equal access to the courts . . . [and] promotes democratic and libertarian principles.'"  *Id*.  These policy considerations weigh heavily against HSBC's urging here because its position would require the Certificateholders to pay all HSBC's legal fees and ***its judgment***.  The Court should not countenance such an absurd reading as it punishes the Certificateholders, who did not negotiate the PSAs, for seeking recourse for HSBC's misconduct.  *See Sparta Commercial Servs. v. DZ Bank, AG*, 680 F. App'x 17, 21 (2d Cir. 2017) ("[I]t would be perverse for a contract to include an indemnification provision that would so strongly disincentivize a potentially wronged party from bringing suit; . . . a

- 7 -

HSBC's construction of the indemnity clauses rests on out-of-context discussion of isolated phrases in the PSAs, along with readily-distinguishable case law, and should be rejected.

### a. The Absence of an Unmistakably Clear Intent to Indemnify Claims by Certificateholders Is Dispositive

The PSAs do not explicitly and unequivocally provide HSBC the right to be indemnified for claims by Certificateholders against HSBC. Due to the default rule that adversaries fund their own defenses, "New York law construes indemnity clauses ***not*** to cover claims by the indemnitee against the indemnitor unless the coverage language indicates an 'unmistakably clear' intent to include such claims" (*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 412 (S.D.N.Y. 2011)), and a clear "identification of parties who may assert those claims." *Sequa Corp. v. Gelmin*, 851 F. Supp. 106, 110 (S.D.N.Y. 1994). Moreover, an indemnification provision must be "exclusively or unequivocally referable to claims between the parties" to cover lawsuits between parties to an agreement. *Hooper*, 74 N.Y.2d at 492. Even seemingly broad language in an indemnification provision such as "'any and all claims'" is not an "unmistakably clear statement." *Hooper*, 74 N.Y.2d at 490 n.1, 492; *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996); *BNP Paribas*, 778 F. Supp. 2d at 417. "If the claims covered [by an indemnity agreement] refer 'exclusively' or 'unequivocally' to claims between the parties, a Court ***may*** interpret an indemnification agreement to include such claims. If not, then a court ***must*** find the agreement to be lacking evidence of the required intent." *Sequa*, 851 F. Supp. at 110-11.

Here, the indemnification provisions relied on by HSBC do not specifically mention indemnification of claims between Certificateholders and the Trustee, and no indemnification can be inferred. *See* DBALT, §9.5; FHLT, §8.05; WFHET, §8.05. The fact that these indemnification

---

broad reading of the clauses would mean that [plaintiff] would have to indemnify [defendant] even if [plaintiff's] claims of breach here had been found to be meritorious.").

clauses **do not mention** claims by Certificateholders against the Trustee is proof positive that that the PSAs are not "unequivocal" on this issue. The economic reality of the asserted indemnity mandates the same result. Specifically, because the trust assets – which HSBC holds "in trust for the **exclusive use and benefit of all present and future Certificateholders**"[5] – are being diverted to pay for HSBC's legal expenses in the Litigation, the "unmistakably clear" rule applies to prohibit indemnification even though RPI is a non-signatory to the PSAs. *Sequa*, 851 F. Supp. at 111 (finding no "unmistakably clear" intent to require indemnification by a third party to an indemnification agreement when the third party's subsidiary was the indemnitor, because the indemnification sought would be economically identical to a first party lawsuit). And because the Certificateholders are not "strangers" to the PSAs, any terms requiring them to indemnify HSBC **must be** unequivocal. *See Goshawk Dedicated Ltd. v. Bank of N.Y.*, 2010 U.S. Dist. LEXIS 25498, at *27-*29 (S.D.N.Y. Mar. 15, 2010) (refusing to deem a non-signatory to an agreement as a third party under *Sequa* because it was not a "stranger[] to the agreements").

In support of its incorrect construction of the indemnity clauses, HSBC claims it need not "expend or risk its own funds." *See* MTD at 1, 3, 6. The clause from which that excerpt was taken refers to reimbursement of funds expended "in the performance of any of its duties" that are required when acting as Trustee. DBALT, §9.2(xii); FHLT, §8.02(a)(viii); WFHET, §8.01(iv). In contrast, this action and the Litigation both allege that HSBC **failed to perform its duties**, which renders inapplicable the clause cited by HSBC. *See, e.g.*, ¶¶9-11, 17, 26-27. Moreover, that clause does not address permissive actions, such as defending a lawsuit, which are not "duties." *See* DBALT, §9.1 ("Any permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty."); FHLT, §8.02 (x) ("Any permissive right of the Trustee enumerated herein shall not be

---

[5]    DBALT, §2.2; FHLT, §2.02; WFHET, §2.02.

construed as a duty."); WFHET, §8.02(viii) ("the right of the Trustee . . . to perform any discretionary act enumerated in this Agreement shall not be construed as a duty").  As such, the phrase relied upon by HSBC does not show an unmistakably clear intent to indemnify HSBC.

This result is consistent with the reasoning in *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116 (S.D.N.Y. 2014), upon which HSBC also relies.  *Id.* at 134 (dismissing a claim for indemnification when a servicer sued an originator "[b]ecause the Purchase Agreement is not 'unmistakably clear' that the indemnification provision covers claims between the contracting parties"); MTD at 11.  In *Homeward*, the court rejected a claim for indemnification because language in other indemnification provisions – like DBALT, §12.3, FHLT, §10.08 and WFHET, §11.03 here – was absent from the indemnification at issue.  298 F.R.D. at 134.[6]

Next, HSBC repeatedly refers to the word "any" in the indemnification clauses in apparent hopes that such repetition will save the day.  It does not.  Numerous courts have rejected HSBC's argument that the inclusion of the word "any" in an indemnity agreement results in the type of blanket indemnification advocated by HSBC.  *See Bridgestone/Firestone*, 98 F.3d at 21 (an indemnification provision for "'any and all claims'" is not "an unmistakably clear statement" that counsel fees were intended); *Hooper*, 74 N.Y.2d at 490 n.1, 492 (indemnification of "any and all claims" does not support "an inference that defendant promised to indemnify plaintiff for counsel fees"); *Sparta*, 680 F. App'x at 21 (refusing an interpretation of an indemnification provision that would otherwise render subclauses "unnecessary if the 'any acts or omissions' language in fact

---

[6]    The PSAs here obviously contemplate that specific deal parties are to indemnify claims by Certificateholders because there are specific sections of the PSAs for third party claims as to the Servicer and Master Servicer.  *See* DBALT, §§3.1, 3.5, 11.3(b); FHLT, §§3A.01, 6.03, 6.05, 8.05(c), 11.03(b), 11.03(d); WFHET, §3.24(a).  The point is, however, the express provision discussing Certificateholder suits omits any mention of indemnification of the Trustee by the Certificateholders or Trust Funds when the Certificateholders sue the Trustee.  DBALT, §12.08; FHLT, §10.08; WFHET, §11.03.

covered ***any*** acts or omissions"); *BNP Paribas*, 778 F. Supp. 2d at 417 (a reference to "all losses" is insufficient to infer an intention to indemnify first-party losses); *Sequa*, 851 F. Supp. at 110-11 (refusing to interpret an indemnity agreement purporting to cover "any and all" claims "of any kind and nature" to include first-party claims).

Finally, HSBC's proposed construction of the indemnification clauses is belied by near-identical language in each PSA that set forth an unequivocal rule of construction: "No provision of this Agreement shall be construed to relieve the Trustee . . . from liability for its own negligent action, its own negligent failure to act or its own misconduct." DBALT, §9.1; *see also* WFHET, §8.01 (same); FHLT, §8.01 (substituting "willful misconduct" for "misconduct"). This provision establishes as proof positive that HSBC's proposed blanket construction of the indemnification clauses to include "any" claim of action cannot be correct.

In sum, the PSAs do not explicitly and unequivocally provide HSBC the right to be indemnified for claims by Certificateholders against HSBC. If the parties to the PSAs had wished to indemnify HSBC for Certificateholders' actions, they easily could have done so. They did not.

### b.    HSBC's Construction of the Indemnification Clauses Is Belied by Other Clauses of the Covered Trusts

HSBC's myopic arguments focusing on certain indemnification clauses ignore numerous other indemnification clauses appearing in the PSAs, which on their face undermine HSBC's proposed construction. A court should read the contract as a whole "'to safeguard against adopting an interpretation that would render any individual provision superfluous.'" *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010).

HSBC's contention that it should be indemnified by the Covered Trusts for "any" claim is at odds with other indemnification provisions in the PSAs. For example, each PSA contains an entirely ***separate*** provision (omitted from HSBC's arguments for a blanket interpretation) that actually refers

- 11 -

to claims by Certificateholders, which also does not contain any language suggesting that the Trustee is indemnified for such claims. *See* DBALT, §12.3 (limiting indemnity for the "costs, expenses and liabilities to be incurred therein or thereby" a lawsuit ***brought by*** HSBC); FHLT, §10.08 (same); WFHET, §11.03 (same). Indeed, indemnity is only provided when HSBC is directed "to institute any such action" against other parties, such as a repurchase claim against a loan originator. *Id*. The PSAs contain numerous indemnifications provisions, and the specificity provided elsewhere in the PSAs as to the indemnification responsibilities of deal parties would be rendered meaningless if HSBC is permitted to simply bill the Covered Trusts for every legal expense irrespective of those other specific provisions.[7] *See* DBALT, §§3.1, 3.5, 11.3(b); FHLT, §§2.03(g), 3A.01, 6.03, 6.05, 8.05(c), 11.03(b), 11.03(c), 11.03(d); WFHET, §§3.24(a), 5.02(d), 8.05 (indemnification by the Securities Administrator); *infra* III(B)(2)(b); *Loctite VSI Inc. v. Chemfab N.Y. Inc.*, 701 N.Y.S.2d 723, 725 (App. Div. 2000) ("courts should adopt an interpretation of a contract which gives meaning to every provision of the contract, with no provision left without force and effect").

### 3. RPI Is Funding Its Adversary's Defense in the Litigation

HSBC is quick to argue that RPI is not involved in any indemnification, asserting that Certificateholders "are not indemnitors under the PSAs. Instead, the indemnity conferred upon the trustee is provided ***by the trust***." MTD at 12 (emphasis in original). HSBC is incorrect.

A "'contract must be interpreted so as to give effect to, not nullify, its general or primary purpose.'" *Cappione*, 119 A.D.3d at 1121-23. Even when a party is not a signatory to an agreement, if that party is not a stranger to an agreement, courts have refused to consider that entity

---

[7] The interrelated PSA provisions, read as a whole, establish that there was never any intent, let alone unmistakably clear intent, between the contracting parties that HSBC be indemnified by the Certificateholders or the Covered Trusts here, even under a less demanding "four corners" rule of contract interpretation. *See Maldono*, 140 A.D.3d at 1506.

as a third party for purposes of an indemnification agreement.  *Goshawk*, 2010 U.S. Dist. LEXIS 25498, at \*27-\*29; *accord Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1289 (2d Cir. 1969) (affirming trial court's decision to set aside jury's verdict granting indemnification, noting that: "Although in form the underwriter is reimbursed by the issuer, the recovery ultimately comes out of the pockets of the issuer's stockholders.  Many of these stockholders may be the very purchasers to whom the underwriter should have been initially liable.").

Here, the purpose of the Covered Trusts is to benefit the Certificateholders.  The assets of the Trust Fund are held by or on behalf of the Trustee "in trust for the ***exclusive use and benefit of all present and future Certificateholders***."  DBALT, §2.2; FHLT, §2.02; WFHET, §2.02.  Indeed, "under New York law, a trust cannot sue or be sued, and suits must be brought by or against the trustee."  *Springer v. U.S. Bank Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 171734, at \*4 n.1 (S.D.N.Y. Dec. 23, 2015).  HSBC agrees.  Litigation ECF No. 27 at 44 n.58.  Under comparable circumstances as the present action, courts in this District have rejected the suggestion that an RMBS trust be treated as distinct from the interests of the Certificateholders.  *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 U.S. Dist. LEXIS 12982, at \*31 (S.D.N.Y. Feb. 3, 2016) ("investors, not the Trusts, suffered the alleged harm and would receive the benefit of recovery").  This relationship is a level of financial entanglement even more direct than parent-subsidiary relationship.  *Cf. Sequa*, 851 F. Supp. at 111 (while the parent and subsidiary are separate entities, the Covered Trusts are pools of assets of which the Certificateholders are beneficial owners).  The fact that Certificateholders' distributions are subject to a so-called "waterfall" does not alter the fundamental nature of the ownership of the Trust Fund and who is ultimately bearing the cost of HSBC's defense.  ¶¶18-19, 23.  Before taking any trust funds for its own use, HSBC must first demonstrate it is entitled to those funds via a contractual provision, not simply on account of its access to the Trusts'

- 13 -

assets.  As stated above, HSBC cannot make that showing and its unauthorized actions once again evinces how HSBC only acts in its own best interests, to the detriment of the Certificateholders.

The authority relied upon by HSBC is inapposite.  First, as discussed *supra*, in *Homeward,* the Court rejected a claim for indemnification because language in another indemnification provision – like DBALT, §12.3, FHLT, §10.08 and WFHET, §11.03 here – was absent from the provision at issue.  *Homeward*, 298 F.R.D. at 134.  Second, the transcript of a hearing in which Justice Ramos perfunctorily granted a motion to dismiss – which was not accompanied by a written order and which is being appealed – is not persuasive and did not address key issues that exist here, including: (1) whether the Trust Funds' assets are for the exclusive use and benefit of the Certificateholders; (2) who bears the burden of establishing the right to indemnification; (3) the difference between "advancements" and "indemnity"; and (4) whether any contractual prohibitions existed preventing a construction that relieves the Trustee from liability for its negligence.[8]

In sum, the Certificateholders' financial relationship with the Covered Trusts was acknowledged in the PSAs at the time those contracts were entered, and thus they were never strangers to the PSAs.  *See also Goshawk*, 2010 U.S. Dist. LEXIS 25498, at *27-*28.  As the PSAs do not authorize the Trustee to receive advancement or indemnification from the Covered Trusts when sued by the Certificateholders, HSBC continues to improperly act in its own self-interest by improperly diverting Trust assets for its own use in the Litigation.

---

[8]   Judge Ramos's decision was also based on his understanding that the complaint lacked allegations that the trustee's activities fell within the carveouts of the indemnity provision.  ECF No. 32-4 at 18:3-7.  The plaintiffs vigorously disagreed with Judge Ramos's understanding of the complaint and his legal conclusions.  *Id*. at 18-22.  In any event, here RPI has alleged that HSBC has engaged in willful misconduct and gross negligence.  Putting aside Judge Ramos's other errors, the factual circumstances he relied on do not exist in the current dispute.

- 14 -

**C.     HSBC Bears the Burden of Establishing the Right to Indemnification, Which Cannot Be Shown Until Conditions Precedent Are Met**

The entity seeking contractual indemnity bears the burden of proof of establishing it is entitled to indemnification.  *Hosein v. CDL W.45th St., LLC*, 2015 N.Y. Misc. LEXIS 4812, at *3 (Dec. 3, 2015); *Aleman v. RFR/SF State St., LP*, 2011 N.Y. Misc. LEXIS 4227, at *10 (Aug. 29, 2011).  "Under New York law, '[t]he right to contractual indemnification depends upon the specific language of the contract. In the absence of a legal duty to indemnify, a contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.'"  *In re Bridge Constr. Servs. of Fla., Inc.*, 185 F. Supp. 3d 459, 470 (S.D.N.Y. 2016).

HSBC tacitly concedes that it is not yet entitled to indemnification, asserting "Royal Park now seeks to ***preempt*** HSBC's entitlement to indemnification."  MTD at 1.  New York law does not permit indemnification where there is a question whether a party ultimately will be entitled to indemnity.  *Bottcher v. W. 44th St. Hotel LLC*, 2013 N.Y. Misc. LEXIS 4206, at *20 (Aug. 5, 2013) ("Where the party seeking contractual indemnification is free from fault, a conditional judgment that it is entitled to indemnity is appropriate; however, where there are factual questions as to whether the indemnitee was negligent . . . such a finding is premature."); *Colon v. 78-14 Roosevelt LLC*, 2014 N.Y. Misc. LEXIS 5276, at *6 (Sept. 17, 2014); *DiGirolamo v. ABM Janitorial Servs., Inc.*, 2011 N.Y. Misc. LEXIS 21, at *16 (Jan. 3, 2011); *905 5th Assoc., Inc. v. Weintraub*, 927 N.Y.S.2d 29, 31 (App. Div. 2011); *FSP, Inc. v. Societe Generale*, 2003 U.S. Dist. LEXIS 493, at *13 (S.D.N.Y. Jan. 14, 2003), *aff'd*, 350 F.3d 27 (2d Cir. Nov. 12, 2003).  The case law relied on by HSBC is inapposite.  MTD at 13-14.  In *Nasser*, an indemnity clause included a provision excluding liability incurred due to negligence, which the court noted "applies to any ***liability, not claims***," based on negligence.  *Estate of Nasser v. Port Auth. of N.Y. & N.J.*, 546 N.Y.S.2d 626, 627 (App. Div. 1989).  Accordingly, indemnification was permitted by the court ***after*** a jury trial determined that the party

seeking indemnity had no liability. *Id*. *VNB* is an out of Circuit case not binding on this Court that resolved none of the merits in the underlying action. *VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n*, 2016 U.S. Dist. LEXIS 93605 (D.N.J. July 19, 2016). Rather, the *VNB* court merely rejected a motion for preliminary injunction on the grounds that irreparable harm had not been shown. *Id*.

Each Covered Trust expressly excludes indemnification under certain circumstances, such as those involving HSBC's negligence, bad faith, or willful misfeasance. DBALT, §9.5; FHLT, §8.05; WFHET, §8.05. Many of these circumstances are directly at issue in the Litigation, and whether they exist remains as unresolved questions of fact. *See, e.g.*, ¶27; MTD at 6 (no final determination in the Litigation regarding whether HSBC "engaged in certain conduct – principally willful misfeasance, bad faith or gross negligence").[9] Faced with its inability to establish eligibility for indemnification in light of the unresolved conditions precedent, HSBC attempts to turn the law on its head by baldly asserting it should be indemnified now and that RPI has the burden of "negat[ing] the trustee's indemnity." MTD at 14-15.[10] Before it can use Covered Trust assets for the Litigation, HSBC must establish its entitlement to indemnity. HSBC has not and cannot make that showing.

### D. Unlike HSBC's Indemnity Claim, RPI's Claim Is Ripe

In determining ripeness, a "Court considers whether the issues raised by the parties are 'fit for review,' and weighs the potential hardship to the parties if the Court delays resolution of the

---

[9] HSBC's statement that there is "no negligence count" in the Litigation (MTD at 16) misses the point. As alleged in the Complaint, HSBC has been improperly using the Covered Trust funds for legal fees and costs incurred in defending against allegations of negligence (and bad faith and willful misconduct) in the Litigation because the PSAs prohibit the use of trust funds as advancements or indemnification for such purposes. *See* ¶¶17, 25-27, 30, 32.

[10] HSBC attempts to shore up this assertion by relying on a transcript from another action. MTD at 14 (citing ECF No. 32-4). But, unlike here wherein RPI has alleged that HSBC has engaged in willful misconduct and gross negligence, the Court in that other action did not find any appropriate allegations that the trustee's activities fell within the carve-outs of the applicable indemnity provision. ECF No. 32-4 at 18:3-7.

dispute." *Olympus Sec., LLC v. United Fiber & Data, LLC*, 2016 U.S. Dist. LEXIS 142679, at *4 (S.D.N.Y. Oct. 14, 2016).  A "contract claim ripens 'immediately upon the breach, even where damages remain uncertain.'" *Id.* at *5.  In contrast, a party seeking indemnification must generally wait until the underlying dispute is resolved.  *FSP*, 2003 U.S. Dist. LEXIS 493, at *13.

RPI's action is ripe.  RPI alleges that HSBC has diverted trust assets for its personal benefit (under the guise of an "indemnification") despite that indemnification is not authorized by the PSAs and any potential indemnification is speculative until the issues in the Litigation are resolved.  HSBC appears to concur that the conditions precedent for indemnification cannot be established yet, as they are "contingent on a future and speculative outcome in the Litigation" (though it wrongly places the burden of establishing the right to indemnification on RPI).  MTD at 25.  The breach of contract allegations thus satisfy the first prong.  *Olympus*, 2016 U.S. Dist. LEXIS 142679, at *5.  HSBC does not argue that it would incur hardship if the Court delays resolution of this action.  Thus, the second prong is satisfied: a postponement of judicial decision-making would only delay recovery for the RPI if it is so entitled or a finding of no liability for HSBC.  *See id.*  This action, unlike HSBC's indemnity claim, is ripe for resolution without any determination of the Litigation issues.

### E.     The PSAs Do Not Provide for Advancement of Legal Fees

Even if the PSAs expressly stated that HSBC could be indemnified by the trust funds for actions by the Certificateholders (they do not), any such indemnification would be premature until conclusion of the Litigation.

There is a fundamental difference between an ***advancement***, which allows a defendant to pay legal expenses with funds that may have to be reimbursed depending on the outcome of litigation, and ***indemnification***, which may pay for legal costs after a final disposition of an action if all required conditions are met.  *Schlossberg v. Schwartz*, 2014 N.Y. Misc. LEXIS 2188, at *9 (May 14,

- 17 -

2014) ("[T]he right to retain (or, rather, to avoid repaying) monies advanced for defense costs, is dependent upon whether the person receiving such advancement is ultimately found to be entitled to indemnification"); *Kaloyeros v. Fort Schuyler Mgmt. Corp.*, 49 N.Y.S.3d 867, 871 (Sup. Ct. 2017) ("The purpose of advancement is 'to allow directors [and officers] to defend themselves' by ensuring that they can access funds to pay for legal fees during the pendency of the lawsuit." "If advancement is ordered, the advanced funds must be repaid if it ultimately is determined that the recipient is not entitled to indemnification."); *Noe v. Friedberg*, 2009 N.Y. Misc. LEXIS 3810, at *13 (Feb. 26, 2009) ("advancement implies that if the underlying conduct is ultimately judged to be not entitled to indemnification, the advanced party must repay"); *Ficus Invs., Inc. v. Private Capital Mgmt., LLC*, 872 N.Y.S.2d 93, 99 (App. Div. 2009); *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 587 (Del. Ch. 2006).

Under New York law, "***indemnity does not imply the advancement of legal fees***." *N.Y. Budget Inn LLC v. Averbuch*, 2017 N.Y. Misc. LEXIS 2346, at *16-*17 (June 13, 2017) (denying a request for advancement pursuant to an indemnification clause that had an exclusion for "fraud, willful misconduct or bad faith in connection with acts for which indemnification is sought" holding that the clause "provides that the company will ***indemnify*** eligible persons, not advance them their legal fees") (emphasis in original); *see also Borriello v. Loconte*, 2014 N.Y. Misc. LEXIS 729, at *18 (Feb. 24, 2014) ("The Operating Agreement does not provide for advancement of legal fees, but only for indemnification provided that the indemnitee is not found to be in breach of any duties to Caterina.").

HSBC acknowledges the possibility that it may have to repay the trust funds depending on the outcome of the Litigation. MTD at 24 (arguing that RPI "would not share in any recovery even if HSBC were to ***repay indemnification amounts***"); ECF No. 28 at 3 (if HSBC was not entitled to

indemnity it would have to pay back the legal fees to the trust).  Accordingly, HSBC is taking **advancements** from the trust funds in hopes that it will later be eligible for indemnification.

In a footnote, HSBC denies it is taking advancements, stating "[u]nder New York law the duty to indemnify is triggered when claims are presented."  MTD at 13 n.6 (citing *Cuellar v. N.Y.C.*, 32 N.Y.S.3d 292, 294 (App. Div. 2016)).  *Cuellar*, however, did not address advancements.[11] Rather, that case involved the unsurprising result that an agreement to indemnify that was not conditioned on any factual findings is triggered by the filing of an appropriate claim.  *Cuellar*, 32 N.Y.S.3d at 294 (noting that "the plain and unambiguous terms of the contract did not condition [the third-party defendant's] obligation to indemnify [the defendant/third-party plaintiff] for attorneys' fees and costs on a finding of fault").  Here, in contrast, each Covered Trust expressly conditions indemnification on findings regarding certain circumstances, such as those involving HSBC's negligence, bad faith, or willful misfeasance.  *See, e.g.*, DBALT, §9.5; FHLT, §8.05; WFHET, §8.05.  Accordingly, while any monies expended on legal fees in *Cueller* were not subject to repayment, here (assuming *arguendo* HSBC is entitled to indemnification in an action brought by Certificateholders, which it is not) the assets HSBC siphoned from each Covered Trust to fund its defense in the Litigation are subject to repayment in the event the conditions permitting indemnification are not satisfied.  Therefore, the assets diverted by HSBC are advancements, not indemnification.

Finally, the PSAs use "advance" separately and distinctly from "indemnification."  *See* DBALT (definition of "Advance"), §4.4; FHLT (definition of "Advance"), §4.01; WFHET (definition of "Advance"), §4.07.  It is a basic tenet of contract interpretation that when drafters use

---

[11]   *Cuellar* did, however, reference the burden of proof, which was established by the party seeking indemnification.  32 N.Y.S.3d at 294.

1351227_1

two different words, they (i) intend each word to have a different meaning and (ii) demonstrate that they have the ability to include each word separately where desired in the contract. *Nippon Express U.S.A. (Ill.), Inc. v. M/V Chang Jiang Bridge*, 2007 U.S. Dist. LEXIS 92032, at *17-*18 (S.D.N.Y. Dec. 13, 2007). Here, each PSA's use of an "advance" separate and apart from "indemnification" demonstrates that these phrases are to be considered distinctly. If the drafting parties intended to allow advancements for HSBC, they could have easily done so. They did not.

The funding of HSBC's litigation war chest is not a permissible advancement under the terms of the PSAs.

### F.     Two of the Covered Trusts Fail to Provide for Attorney's Fees and Therefore Do Not Indemnify Such Expenses

"In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). "Sophisticated lawyers, such as those drafting standard forms . . . , must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meaning." *Int'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000); *see also NBA v. Nat'l Basketball Players Ass'n*, 2004 U.S. Dist. LEXIS 26244, at *26-*27 (S.D.N.Y. Dec. 30, 2004). In particular, absent language expressly including attorney's fees, there is no unmistakably clear intent to include such expenses. *ACE Sec. Corp. Home Equity Loan Tr. Series 2007-WM1 v. DB Structured Prods., Inc.*, 2014 N.Y. Misc. LEXIS 4427, at *4 (Sept. 25, 2014) (holding that when the indemnification provision "does not expressly include attorneys' fees among the covered expenses" "the parties' intent to indemnify plaintiff for its attorney's fees in litigating this action is not unmistakably clear from the terms of the parties' agreements").

- 20 -

Assuming *arguendo*, that HSBC was entitled to indemnity from Certificateholder claims (it is not) and after the conclusion of the Litigation it established that it did not engage in disqualifying conduct, HSBC would nevertheless remain ineligible for indemnification of attorney's fees for two of the three Covered Trusts.  Here, HSBC concedes that only one PSA expressly includes "attorney's fees."  MTD at 8.  HSBC broadly interprets *Breed, Abbott & Morgan v. Hulko*, 531 N.Y.S.2d 240 (App. Div. 1988), for the premise that use of the word "any" allows construction of indemnification clauses to encompass attorney fees.  *Id*.  But *Breed* was decided "on the narrow ground that the intent of the parties was manifest," and, unlike here, no third-party claims were contemplated. *Hooper*, 74 N.Y.2d at 493; *Goshawk*, 2010 U.S. Dist. LEXIS 25498, at *24 (in *Breed*, "there was no potential for third-party claims at the time that the agreement was drafted").  HSBC's overly broad interpretation of *Breed* has been soundly rejected under the guidance of *Hooper*.  *See ACE Sec.*, 2014 N.Y. Misc. LEXIS 4427, at *3-*4 (despite inclusion of the word "any" in indemnification provision, intent to indemnify for attorney's fees not unmistakably clear absent express language including attorney's fees among the covered expenses).

Pursuant to the maxim *expressio unius est exclusio alterius*, HSBC expressed a clear intent to disclaim any right to attorney's fees by omitting that language from the indemnification clauses of two of the three PSAs.  *See* FHLT, §8.05(a); WFHET, §8.05; *Quadrant Structured Prods. Co. Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (2014) ("Even where there is ambiguity, if parties to a contract omit terms – particularly, terms that are readily found in other, similar contracts – the inescapable conclusion is that the parties intended the omission . . . [t]he maxim *expressio unius est exclusio alterius*, as used in the interpretation of contracts, supports precisely this conclusion"); *see also* MTD at 3 (conceding that the indemnification provisions "differ in some respects").  HSBC's intent to disclaim the right to attorney's fees is underscored by WFHET, which included attorney's fees in

regard to the Trustee's indemnified expenses *incurred by the Custodian* arising out of the Custodial Agreement, but omitted attorney's fees in regard to recoverable expenses *incurred by the Trustee* "in connection with any legal action relating to this Agreement or the Certificates." WFHET, §8.05. Accordingly, by omitting the provision for "attorney's fees," no indemnification of HSBC's attorney's fees would ever be permissible for the FHLT 2006-C and WFHET 2006-2 trusts, regardless of the outcome of the Litigation.

### G.    RPI Has Sufficiently Pled the Non-Contractual Causes of Action

#### 1.    The Economic Loss Rule Does Not Bar RPI's Breach of Trust Claims, Which Are Not Duplicative

HSBC argues that RPI's non-contractual claims are duplicative and any damages flowing therefrom are barred by the economic loss rule. MTD at 17-20. It is settled New York law that even RMBS trustees like HSBC have independent, extra-contractual duties that can give rise to tort liability. The economic loss rule does not bar damages flowing from breaches of those duties.

When considering RMBS cases, "courts in this District have recognized that [a trustee's] duty of due care is extra-contractual and, as such, not duplicative of a plaintiff's contract claims." *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank Nat'l Ass'n*, 247 F. Supp. 3d 377, 396 (S.D.N.Y. 2017). A trustee's duties to avoid conflicts of interest and to act with due care are extra-contractual and whose breach may subject the trustee to tort liability. Litigation ECF No. 48 at 9-10. Specific to HSBC's extra-contractual duties, Judge Scheindlin held:

> Plaintiffs' remaining tort claims are not duplicative as they arise out of a separate, extra-contractual duty. *See Sommer v. Federal Signal Corp.*, 583 N.Y.S.2d 550, 551 (3d Dep't 1992). HSBC had an independent duty to perform its nondiscretionary ministerial duties with due care and to avoid conflicts of interest. *See Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 191. It also had a post-Event of Default fiduciary duty. *See id.* It is irrelevant that plaintiffs claim that while violating these duties, HSBC was *also* breaching the contracts.

- 22 -

*Id.* at 38 n.127 (emphasis in original); *see also id.* at 36 (permitting RPI's breach of trust/fiduciary duty tort claims).

RPI here has again pleaded that HSBC breached it duty of trust by using trust assets to fund its defense, despite not being permitted to receive advancement, reimbursement or indemnification. ¶3, *see also* ¶¶58-65. Because these claims arise from HSBC's breach of its duty of trust, the Complaint properly sets forth tort claims and it "is irrelevant that plaintiffs claim that while violating these duties, HSBC was also breaching the contracts." Litigation ECF No. 48 at 38 n.127.

## 2. Unjust Enrichment and Conversion Are Pled in the Alternative Should HSBC's Conduct Fall Outside the Contracts

RPI's unjust enrichment and conversion claims were brought alternatively pursuant to Fed. R. Civ. P. 8(a) in the event the Court finds that HSBCs' wrongful conduct falls outside the scope of the Governing Agreements. If the Governing Agreements do not apply, HSBC has been unjustly enriched at the expense of RPI and the class. Equity and good conscience require HSBC to reimburse the trusts for monies it wrongfully took – and continues to misappropriate. *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001). Conversion is also appropriate if HSBC's conduct is found extra-contractual. As trust beneficiaries, RPI and the class had superior rights to the trust funds when they were used for an unauthorized purpose by HSBC. The funds taken by HSBC are specific and identifiable, and HSBC had no legal right to use trust assets to pay its lawyers in this case. *Rozsa v. May Davis Grp., Inc.*, 152 F. Supp. 2d 526, 534 (S.D.N.Y. 2001).

## 3. RPI and the Class Are Entitled to an Accounting

HSBC's sole argument to dismiss the Accounting claim is that there is no plausible allegations of fiduciary duty or a confidential relationship. MTD at 19. HSBC is wrong.

After an event of default, an indenture trustee owes the certificateholders a fiduciary duty of loyalty, which "exist[s] separate and apart from the post-EOD duties memorialized in the PSAs

. . . ." *Commerzbank AG v. U.S. Bank N.A.*, 2017 U.S. Dist. LEXIS 159069, at \*27-\*28 (S.D.N.Y. Sept. 27, 2017) (denying motion to dismiss breach of fiduciary duty claims); *see also BNP Paribas*, 778 F. Supp. 2d at 401.  This fiduciary duty can be compromised by an alleged conflict of interest. *Commerzbank*, 2017 U.S. Dist. LEXIS 159069, at \*27-\*28.

Judge Scheindlin already determined that "plaintiffs have sufficiently alleged an Event of Default under the PSAs and SSAs" in the Litigation.  Litigation ECF No. 48 at 29.  The current action also refers to the events of default of the Litigation and adds allegations of HSBC's improper funding of its defense of alleged post-event-of-default misconduct in the Litigation using trust funds, in a blatant conflict of interest.  *See, e.g.*, ¶¶2, 11, 67-69.  Therefore, not only has RPI provided detailed allegations showing that HSBC owed RPI a fiduciary duty of loyalty, but it also provided detailed allegations showing how HSBC breached its fiduciary duties through its self-serving diversion of trust funds in order to defend itself in the Litigation.

### H.    Courts Have Rejected HSBC's "No Action Clause" Arguments

HSBC's MTD regurgitates the same arguments that it unsuccessfully raised in the Litigation, namely that RPI cannot maintain an action against HSBC unless it first complied with the PSAs' No-Action Clauses.  *Compare* MTD at 20-22 ("Royal Park's complaint should be dismissed for the additional reason that it fails to allege compliance with the PSAs' No-Action clauses") *with* Litigation ECF No. 27 at 26 ("Plaintiffs cannot maintain such claims when they have not alleged satisfaction of the conditions precedent of the No-Action Clauses").  HSBC fails to inform the Court that Judge Scheindlin already found that the precise No-Action Clauses in the PSAs at issue in this action did not prevent an action brought by RPI against HSBC.  Litigation ECF No. 48 at 31.

HSBC's argument that just a portion of a No-Action clause could be enforced in order to prevent an action against a trustee has been carefully considered and then rejected in one of the very

opinions it cites in the MTD. *See Blackrock Core Bond Portfolio v. U.S. Bank, Nat'l Ass'n*, 165 F. Supp. 3d 80, 91-99 (S.D.N.Y. 2016).[12]  The *Blackrock* court considered and rejected the notion that the 25% requirement could be freestanding. *Id*. at 96 (finding that *Cruden* had "implicitly resolved the '25%' requirement against defendants").  The *Blackrock Core* court also rejected the argument that a severability clause could be employed to allow a sub-section of the no-action clause to survive if other portions are unenforceable. *Id*. at 97-99.  Putting to rest the types of arguments raised by HSBC, the *Blackrock Core* court stated: "In *Cruden*, the Second Circuit eliminated one of the legs of a stool; the entire clause was thereby rendered unenforceable." *Id*. at 98.

HSBC's arguments fail for the same reasons discussed in *Blackrock Core*.  Like the no-action clause in *Blackrock Core*, the sub-parts of the No-Action Clauses here stand or fall together. *Id.* at 97-98; ECF No. 32-7.  On the issue of the holder-support requirement, *Cruden* is dispositive that no-actions clauses such as those in this action are not enforceable in actions against the trustee. *Blackrock Core*, 165 F. Supp. 3d at 96.

## IV.   CONCLUSION

HSBC's motion to dismiss should be denied in its entirety.

DATED:  January 16, 2018                              ROBBINS GELLER RUDMAN
                                                                     & DOWD LLP
                                                          CHRISTOPHER M. WOOD


                                                                    s/ Christopher M. Wood
                                                          CHRISTOPHER M. WOOD

---

[12]   HSBC cites *Blackrock Core* for the premise that *Cruden* "did not resolve whether the distinct non-demand requirements of No-Action clauses are severable and should apply" (MTD at 22), but fails to mention that *Blackrock Core* then addressed those issues and rejected the type of arguments HSBC now makes. Specifically as to HSBC's "designated percentage" argument, it also fails to inform the Court that *Blackrock Core* found "*Cruden* is therefore on point and binding on this Court with regard to that portion of the no-action clause." *Blackrock Core*, 165 F. Supp. 3d at 96.

- 25 -

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Attorneys for Plaintiff

- 26 -

1351227_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 16, 2018.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
    & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)

E-mail: cwood@rgrdlaw.com

1351227_1

# Mailing Information for a Case 1:17-cv-07684-VEC Royal Park Investments SA/NV v. HSBC Bank USA, National Association

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Scott K. Attaway**
  sattaway@kellogghansen.com,ecf-3d3eb9e0ddf6@ecf.pacerpro.com,eholmvik@kellogghansen.com,jhois@kellogghansen.com

- **George Anthony Borden**
  gborden@wc.com

- **Kevin Michael Hodges**
  khodges@wc.com

- **John Anton Libra**
  jlibra@koreintillery.com,sgreen@koreintillery.com,gkaminsky@koreintillery.com

- **Vidya Atre Mirmira**
  vmirmira@wc.com

- **Edward C. Reddington**
  ereddington@wc.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lauren Heather Uhlig**
  luhlig@wc.com

- **Matthew Boyd Underwood**
  munderwood@wc.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

- **Regis C. Worley , Jr**
  rworley@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)