**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee,<br><br>     Defendant. | Civil Action No. 1:17-cv-07684-VAC<br><br><u>CLASS ACTION</u><br><br>**REPLY IN SUPPORT OF DEFENDANT HSBC BANK USA, NATIONAL ASSOCIATION'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

I.    Introduction. ................................................................................................................1

II.   HSBC Is Entitled to Indemnification Under the Plain Language of the Contracts. ............1

      A.   HSBC is contractually entitled to indemnification against certificateholder claims. ...................................................................................................................1

           1.   Royal Park is not a party to the PSAs or the indemnitee. ............................2

           2.   The language and purpose of the PSAs demonstrate a clear intent to indemnify the trustee for claims by certificateholders. ............................3

      B.   Royal Park's claims are not ripe because they rely on the outcome of the still-pending Litigation. .................................................................................4

      C.   HSBC's indemnification is not an advancement. .......................................................5

      D.   HSBC's indemnification includes attorneys' fees under New York law. ................7

III.  Royal Park's Non-Contract Claims Also Should Be Dismissed. .........................................8

IV.   The No-Action Clauses Bar this Suit. ....................................................................9

V.    Royal Park Has Not Demonstrated It Has Standing. ............................................9

VI.   Conclusion ................................................................................................................10

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80
    (S.D.N.Y. 2016)......................................................................................................8

*Cruden v. Bank of N.Y.*, 957 F.2d 961 (2d Cir. 1992)........................................................9

*Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL
    2643307 (S.D.N.Y. June 25, 2010)........................................................................9

*Royal Park Investments SA/NV v. HSBC Bank USA N.A.*, No. 14-cv-8175-LGS-
    SN, Dkt. No. 254 (S.D.N.Y. Jan. 26, 2017)...........................................................1

*Ret. Bd. of the Policeman's Annuity and Benefit Fund of the City of Chi. v. Bank
    of N.Y. Mellon*, No. 11-cv-5459-WHP, Dkt. 203 (S.D.N.Y. Aug. 26, 2016) ............5

## **STATE CASES**

*17 Vista Fee Assocs. v. Teachers Ins. & Annity Ass'n of Am.*, 693 N.Y.S.2d 554
    (App. Div. 1999).....................................................................................................8

*ACE Sec. Corp. Home Equity Loan Tr. Series 2007-WM1 v. DB Structured
    Prods., Inc.*, 2014 WL 5243511 (N.Y. Sup. Ct. Sept. 25, 2014)..............................7

*Breed, Abbott & Morgan v. Hulko*, 531 N.Y.S. 2d 240 (App. Div. 1988) ........................7

*Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989) ...............................2, 3

*PIMCO Absolute Return Strategy 3d Offshore Fund Ltd. v. Wells Fargo Bank,
    Nat'l Ass'n*, No. 654743/17 (N.Y. Sup. Ct. Nov. 13, 2017) .......................................1

*W. & S. Life Ins. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392856 (Oh.
    C. P. Aug 4, 2017) ...................................................................................................5

I.   **Introduction**

As indenture trustee, HSBC accepted limited duties in exchange for nominal compensation.  Crucial to this bargain was the provision of broad indemnification.  Royal Park ignores the plain language of this broad indemnification and seeks to rewrite the agreements.  But Royal Park is not even a party to those agreements, and its claims should be dismissed.

II.   **HSBC Is Entitled to Indemnification Under the Plain Language of the Contracts.**

As HSBC explained in its Memorandum of Law in Support of Defendant's Motion to Dismiss, Dkt. No. 31 ("Motion" or "Mot."), the Pooling and Servicing Agreements ("PSAs") entitle HSBC to indemnity for any losses, liabilities or expenses incurred in connection with or relating to the performance of its duties as indenture trustee.  Mot. at 6–11.  This right to indemnification was recognized by the court where the underlying litigation is pending, *Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*, No. 14-cv-8175-LGS-SN ("*Litigation*"), Dkt. No. 254 (S.D.N.Y. Jan. 26, 2017) at 8, and a recent New York state court likewise held that an indenture trustee has the right to indemnification in these circumstances under substantially identical contract provisions, *see* Dkt. No. 32-4 (*PIMCO Absolute Return Strategy 3d Offshore Fund Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, No. 654743/17 (N.Y. Sup. Ct. Nov. 13, 2017)).

A.   **HSBC is contractually entitled to indemnification against certificateholder claims.**

The plain language of the PSAs indemnifies HSBC for *expenses* related to *any* claim brought against it in its capacity as trustee absent a finding of gross negligence (in the case of DBALT 2006-AR5 and WFHET 2006-2) or negligence (in the case of FHLT 2006-C).  Mot. at 6–9.  Royal Park does not dispute (nor could it) that no court has made such a finding here.[1]

---

[1] To the contrary, HSBC consistently has maintained that Royal Park's claims lack merit, and in the underlying Litigation, Royal Park's novel claims have faced significant obstacles with the court denying not only class certification, but also a request by plaintiffs to prove their claims

1

Instead, Royal Park argues that mere allegations negate the broad protections of the indemnification provisions. Were that the case, the broad indemnification provisions would provide little protection against self-serving and unproven claims by adverse litigants. For the reasons here and in the Motion, Royal Park's arguments are incorrect.

        1.     *Royal Park is not a party to the PSAs or the indemnitee.*

As a threshold matter, Royal Park's opposition is predicated on the argument that an indemnification obligation between parties to a contract must be "strictly construed." *See* Opposition to Motion to Dismiss ("Opp'n" or "Opposition"), Dkt. No. 52 at 7; *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989). Absent the application of this principle, Royal Park has no claim. As HSBC explained in its Motion—and Royal Park largely ignored in its Opposition—*Hooper* does not apply to this case because Royal Park is not a party to the PSAs. *See* Mot. at 11–12. A New York state court recently relied upon this distinction when dismissing similar claims brought by different certificateholders against another trustee. Dkt. No. 32-4 at 14:18–19, 19:19–25 (noting that *Hooper* "doesn't help" certificateholders in actions against an indenture trustee because certificateholders are "third-party beneficiaries [to the PSAs]").[2] Royal Park's complaint concedes that it is not a party to the contract, referring instead to its claims only as "functionally similar to a first-party lawsuit."[3] Compl. ¶ 24.

---

using sampling. *See Litigation*, Dkt. No. 457 (Feb. 23, 2018). Royal Park's assertions both here and in the underlying Litigation are overbroad and far from being proven.

[2] Royal Park argues that *PIMCO* is factually distinct, but it is not. The claims dismissed by Justice Ramos are indistinguishable from Royal Park's claims here, as are the relevant PSA terms. *See* Dkt. No. 32-4 at 18:25–19:2.

[3] The cases cited by Royal Park in its Opposition do not assist it. *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.* has nothing to do with indemnification; the court there was deciding whether certificateholders could bring derivative claims. No. 14-cv-4394 (AJN), 2016 WL 439020, at *10 (S.D.N.Y. Feb. 5, 2016). In *Globus v. Law Research Service, Inc.*, the court invalidated an indemnification provision under the 1933 Securities Act, a statute not at issue here. 418 F.2d 1276, 1288–89 (2d Cir. 1969). The court in *Goshawk Dedicated Ltd. v. Bank of*

2

Royal Park argues that certificateholders are not "strangers" to the PSAs, but this observation does not save its claims. Under the terms of the PSAs, holders are not entitled to all funds flowing into the trust. Instead, under the terms of the PSAs, certificateholders are entitled to certain revenue streams only *after* trust expenses, including indemnification. Thus, the funds used to indemnify HSBC do not belong to certificateholders and are not paid by holders.

> 2. *The language and purpose of the PSAs demonstrate a clear intent to indemnify the trustee for claims by certificateholders.*

Even if this court were to disagree with the *PIMCO* court and hold that claims by certificateholders against RMBS trustees are first-party claims subject to *Hooper*, Royal Park's claims still would not survive. Under *Hooper*, an indemnity clause may apply to disputes between contracting parties if the intent to indemnify "can be clearly implied from the language and purpose of the entire agreement and surrounding facts and circumstances." *Hooper*, 74 N.Y.2d at 491–92. That intent is manifest here. The plain language of the PSAs indemnifies HSBC for any losses, liabilities or expenses incurred in connection with or arising from its duties as indenture trustee, and in each case also makes reference to attorneys' fees or costs of counsel. This broad language encompasses the claims in the Litigation, which concern HSBC's actions as trustee. A comprehensive indemnity also is consistent with the overall purpose and structure of the PSAs, which provide the indenture trustee with broad financial protections in recognition of its limited duties and nominal fees. Mot. at 3.

Royal Park's arguments ignore key components of the PSAs. For example, Royal Park fails to address the carve-out in the indemnity for certain negligence or gross negligence by HSBC. As the *PIMCO* court recognized, the only reason to have such a carve-out is if the

---

*New York* dealt with an entirely different contractual relationship involving life insurance. No. 06-cv-13758, 2010 WL 1029547, at *1–3, 8 (S.D.N.Y. March 15, 2010).

3

indemnity provision covered suits against HSBC by holders.  Dkt. No. 32-4 at 15:3–6 ("[W]ho is most likely to be suing the trustee for breaches of its performance under the trust agreement?  The certificate holders.").  Moreover, because the trustee's right to indemnity survives the termination of the agreements, the indemnity cannot be limited to situations where the trustee is pursuing litigation or taking other action on behalf of certificateholders.

In a further effort to obscure this broad indemnification, Royal Park repeatedly invokes a provision that trust funds are "for the exclusive use and benefit of all present and future Certificateholders."  But, the PSAs expressly provide that certain deal parties—including the trustee—are to be paid *prior to* any distribution to certificateholders.  *See, e.g.*, DBALT 2006-AR5 PSA § 3.24 (ix) (authorizing the indenture trustee to be paid from the distribution account); FHLT 2006-C PSA § 1.01(defining "Available Funds" for distribution to *exclude* amounts owed to servicer, master servicer, depositor, trust administrator, and trustee); WFHET 2006-2 PSA (same).  The language cited by Royal Park is *pro forma*—all trusts are formed to hold legal title to property for the ultimate benefit of trust beneficiaries, and instruments of trust often contain language making this clear.  But this phrase, which is not found in the section of the contracts setting forth the trustee's right to indemnity, does not negate specific rights set forth elsewhere in the contracts.

> **B.    Royal Park's claims are not ripe because they rely on the outcome of the still-pending Litigation.**

Royal Park's Opposition does not meaningfully address HSBC's position that the doctrines of constitutional and prudential ripeness counsel against proceeding with this claim until the Litigation is complete.  Mot. at 24–25.  Because Royal Park's claims depend upon a finding of negligence in that case, this separately filed complaint is an improper attempt to jump the line and flip the burden of proof.  Faced with the prospect of failure to prove HSBC's fault in

4

the Litigation, Royal Park argues that in this case HSBC bears the burden of proving an *absence* of negligence. That argument fails on the merits because the carve-out in the indemnity pertains to liability "caused by" or "resulting from" negligent action; there is no carve-out for *allegations* of negligence. Mot. at 13–17. Royal Park's cases are all inapposite for the same reason—they all involve claims by indemnitees moving for summary judgment or declaratory judgment against third parties. In those cases, the burden is the reverse of what it is here.

In addition to being premature, Royal Park's claims here create the risk of inconsistent determinations of factual and legal issues common to both cases. Such issues should be resolved in the court where the underlying Litigation is pending, particularly since Royal Park's claims are both novel and overbroad. Notably, the only analogous case against an RMBS trustee to proceed to trial resulted in a complete victory for the defendant. *W. & S. Life Ins. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392856 (Oh. C. P. Aug 4, 2017). Similarly, another putative class action brought against an indenture trustee recently was dismissed with prejudice with plaintiffs taking nothing. *Ret. Bd. of the Policeman's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, No. 11-cv-5459-WHP, Dkt. 203 (S.D.N.Y. Aug. 26, 2016). In these circumstances, this Court should not decide in the first instance or in advance whether the carve-outs to indemnity apply.[4]

### C.  HSBC's indemnification is not an advancement.

Royal Park argues that HSBC's indemnification is an "advancement" of expenses that is "premature until the conclusion of the litigation." Opp'n at 17. This argument is a red herring.[5]

---

[4] At a minimum, this Court should stay this proceeding until the conclusion of the Litigation.

[5] Plaintiffs' argument that the term "Advance" and "Indemnification" are defined differently by the PSAs is at best misleading. The defined term "Advance" has nothing to do with the duties of the Trustee or indemnification generally. Instead, as used in the PSAs, the term "Advance"

The indemnity under the PSAs expressly includes indemnification not just for ultimate losses or liabilities, but also for *expenses incurred* defending against such claims.  Although each indemnity differs slightly, they all share two common traits: (1) they entitle HSBC to litigation expenses including attorneys' fees and/or counsel costs, and (2) they entitle HSBC to reimbursement when the expenses are incurred.  Specifically, DBALT 2006-AR5 PSA's indemnification provisions reference "expenses . . . for any pending or threatened claim or legal action," *id.* at § 9.5, that are to be reimbursed directly to the trustee from the distribution account, *id.* at § 3.24 (ix).  FHLT 2006-C PSA's indemnification provisions include "expenses . . . not . . . in the ordinary course of its performance . . . including the reasonable compensation and the expenses and disbursements of its agents and counsel expenses," *id.* at § 8.05, that are paid prior to any distribution to holders, *id.* at § 3.11(x).  And, WFHET 2006-2 PSA's indemnification provisions include "expenses, disbursements and advances incurred or made by the Trustee . . . including the reasonable compensation . . . of its counsel," that are paid prior to any distribution, *id.* at §§ 3.04(b)(i) & 3.05.  Here, HSBC is being indemnified for expenses that it already has incurred—it is not being indemnified for future, *i.e.*, advanced, expenses.[6]  This arrangement is consistent with the text and structure of the PSAs.  HSBC agreed to accept limited compensation in exchange for provisions that expressly state that HSBC need not "expend or risk its own funds," and shall not be personally "liable [for] any action taken, suffered or omitted . . . in good

---

relates to circumstances in which servicers cover payments owed by mortgage borrowers. DBALT 2005-AR5 PSA § 4.4; FHLT 2006-C PSA § 4.01; WFHET PSA 2006-2 § 4.07.

[6] Plaintiff's response to HSBC's citation to *Cuellar* is equally unconvincing.  Just as in *Cuellar*, the relevant indemnification provisions here do not condition indemnity on a judgment in which there is a finding of no fault.  32 N.Y.S.3d 292, 294–95 (App. Div. 2016) (collecting cases).  To the contrary, the relevant indemnification provisions here are applicable unless Royal Park "allege[s] *and prove[s]* that [the trustee's] activities fall within the purview of the carveout." Dkt. No. 32-4 at 18:2–5 (emphasis added).

6

faith." DBALT 2006-AR5 §§ 9.1(iii) & 9.2(a)(xiii); FHLT 2006-C §§ 8.02(a)(iv) & (viii); WFHET 2006-2 §§ 8.01 & 8.01(iii).

### D. HSBC's indemnification includes attorneys' fees under New York law.

Under New York law, broad indemnification provisions, like the ones here that provide for the reimbursement of "any loss, liability, or expense," include attorneys' fees as a matter of law. *See Breed, Abbott & Morgan v. Hulko*, 531 N.Y.S. 2d 240, 242 (App. Div. 1988) ("[T]here is a long, uninterrupted line of decisions which have interpreted broadly worded indemnification clauses as embracing the right to reimbursement for counsel fees."). Unlike the provisions at issue in the cases cited by Plaintiffs, the clauses here provide the trustee with indemnification for any expenses. The use of the term *any* to modify *expenses* signals a clear intent to provide broad indemnification, including litigation expenses. Additionally, the PSAs here include not only this broad language of "any expenses", but also specific language that reference "reasonable attorney's fees" (DBALT 2006-AR5), "expense[s] [outside the ordinary course]. . . including the reasonable compensation and the expenses and disbursements of its agents and *counsel*" (FHLT 2006-C), and "the reasonable *compensation and the expenses and disbursements of its counsel*" (WFHET 2006-2). Accordingly, Royal Park simply is wrong that anything in the PSAs expresses "a clear intent to disclaim any right to attorney's fees."[7]

---

[7] Royal Park's reliance on *ACE Sec. Corp. Home Equity Loan Tr. Series 2007-WM1 v. DB Structured Prods., Inc.*, 2014 WL 5243511 (N.Y. Sup. Ct. Sept. 25, 2014) is misplaced. That case, which dealt with fees incurred by the trustee enforcing obligations of sellers, did not include similarly broad language demonstrating the intended inclusion of attorneys' fees. *See* Part 3.A, *supra*. The same cannot be said of Royal Park's contention that *Breed* does not apply. Just as in *Breed,* the intention of the parties for a broad indemnity is clear here where the contracts at issue use the term "expenses."

7

### III. Royal Park's Non-Contract Claims Also Should Be Dismissed.

HSBC has moved to dismiss the non-contract claims because they (1) fail to state a claim, (2) are duplicative, and (3) are barred by the economic loss rule. Mot. at 17–20. Royal Park's arguments fail to rebut these grounds. First, Royal Park argues that alleged breaches of "extra-contractual duties" save the non-contract claims under the economic loss rule. Opp'n at 22. This is inaccurate. Under the economic loss rule, a plaintiff must allege a *distinct harm* to avoid dismissal of duplicative tort claims. *See, e.g.*, *17 Vista Fee Assocs. v. Teachers Ins. & Annity Ass'n of Am.*, 693 N.Y.S.2d 554, 559 (App. Div. 1999). The source of the alleged duty is irrelevant. *See, e.g.*, *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 106 (S.D.N.Y. 2016).

Second, Royal Park argues that its non-contract claims are not duplicative because an indenture trustee has the extra-contractual duty "to avoid conflicts of interest and to act with due care." Opp'n at 22. To withstand a motion to dismiss, however, Royal Park must do more than identify potential duties; Royal Park must allege how HSBC breached such duties. The Complaint fails to do so.

Third, Royal Park maintains that it brought its unjust enrichment and conversion claims in the alternative in the event the PSAs "do not apply." Opp'n at 23. But these claims were not pled in the alternative. *See* Compl. ¶¶ 48–55. Additionally, the PSAs here undisputedly apply, and Royal Park provides no explanation for how they could not.

Fourth, Royal Park argues that it is entitled to an accounting because "[a]fter an event of default, an indenture trustee owes the certificateholders a fiduciary duty." Opp'n at 23. While this legal assertion is incorrect, this argument fails on its face. Royal Park has not pled the existence of an "event of default" in its Complaint here. And, in any event, the existence of an

event of default does not alter the indemnification provisions. Without an adjudication on the merits, Royal Park is not entitled to an accounting.

## IV.     The No-Action Clauses Bar this Suit.

This Court should not excuse Royal Park's failure to comply with the No-Action clauses, and in particular the requirement that certificateholders possessing at least 25% of the voting rights consent before initiating litigation (the "holder-support requirement"). As explained in HSBC's motion, that requirement serves to prevent precisely this type of suit. Even meritless claims (like those here) can be expensive to defend against and can deplete trust assets. *Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir. 1992), does not address whether Royal Park may avoid the holder-support requirement. *See U.S. Bank*, 165 F. Supp. 3d at 96.[8] That requirement is severable from the larger No-Action clauses and should apply where, as here, it can still achieve its purpose. *See* Mot. at 20–22.

## V.     Royal Park Has Not Demonstrated It Has Standing.

Royal Park has not met its burden of establishing standing. Its reliance on nominal damages is misplaced, and it fails to show that it could recover anything even if it prevails.

Royal Park's opposition does not even address its failure to plead nominal damages in its complaint. It is well-settled in this district that when a plaintiff pleads actual (rather than nominal) damages, that party may not later "use their motions submissions to amend their pleadings." *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL

---

[8] While the *U.S. Bank* court correctly determined that No-Action clauses are subject to severability analysis, *see* 165 F. Supp. 3d at 96, HSBC respectfully submits that it erred in concluding that the distinct requirements in the No-Action clauses rise and fall together. For the reasons set forth above and in HSBC's motion, *see* Mot. at 20–22, the holder-support requirement is functionally distinct from the other requirements. It should be severed and enforced.

2643307, at *11 (S.D.N.Y. June 25, 2010). Even setting aside the pleading failure, nominal damages are available when damages are uncertain or unascertainable, but they do not save a complaint when there has been no injury whatsoever, as in this case. *See* Mot. at 24.

Royal Park's attempt to show that it is receiving distributions on one of the three trusts at issue does not establish standing. As Royal Park concedes, any recovery in this case would have to go through the trust waterfall.[9] Certificateholders in tranches senior to Royal Park would receive everything they are entitled to before Royal Park could recover anything. Royal Park has not adequately alleged or established that Royal Park would receive any distribution in the event of a recovery.

## VI. Conclusion

For the foregoing reasons, Royal Park's claims should be dismissed.

---

[9] Royal Park makes two misstatements in its opposition that require correction. First, Royal Park suggests that HSBC argued recoveries would go through the waterfall as it now exists, rather than as it existed at the time of the alleged breach. Opp'n at 4. Although this argument is immaterial to this motion, HSBC actually never made this argument. Second, Royal Park wrongly stated that HSBC "oddly, chose to present to the Court remittance reports only from 2012 and 2013 rather than any time during the pendency of the litigation." In fact, HSBC, which does not prepare or transmit the remittance reports, also submitted remittance reports from 2017. Dkt. No. 32-10.

Dated: May 9, 2018   Respectfully submitted,

By:   /s/ Edward C. Reddington
     George A. Borden
     Kevin M. Hodges (*pro hac vice*)
     Edward C. Reddington (*pro hac vice*)
     Vidya A. Mirmira (*pro hac vice*)
     Matthew B. Underwood (*pro hac vice*)
     WILLIAMS & CONNOLLY LLP
     725 Twelfth Street, N.W.
     Washington, DC 20005
     Telephone: (202) 434-5000
     Facsimile: (202) 434-5029
     gborden@wc.com
     khodges@wc.com
     ereddington@wc.com
     vmirmira@wc.com
     munderwood@wc.com

     *Counsel for HSBC Bank USA, N.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2018, I caused the foregoing Reply in Support of Defendant HSBC Bank USA, National Association's Motion to Dismiss to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

/s/  Edward C. Reddington
Edward C. Reddington