USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/2/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROYAL PARK INVESTMENTS SA/NV, :
Individually and on Behalf of All Others :
Similarly Situated, :
         Plaintiff, :  17-CV-7684 (VEC)
           :
           :  ORDER AND OPINION
    -against- :
           :
HSBC BANK USA, NATIONAL :
ASSOCIATION, as Trustee, :
         Defendant. :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

On December 5, 2017, the National Credit Union Administration Board ("NCUA" or "Intervenor") moved to intervene in a lawsuit brought by Plaintiff Royal Park Investments ("Royal Park") against Defendant HSBC Bank USA, National Association ("HSBC" or "Defendant") regarding HSBC's use of trust funds to indemnify itself in related litigation. HSBC opposes the intervention. For the reasons discussed below, NCUA's motion to intervene is DENIED.

## I.  BACKGROUND

This case is part of the next round of litigation between entities that lost money when the Residential Mortgage-Backed Securities ("RMBS") market collapsed and a few banks that appear to represent the last available deep pockets that may have some conceivable liability for those investment losses. In an earlier round of litigation, which is still ongoing, unhappy holders of RMBS certificates are suing financial institutions that serve as trustees for RMBS trusts. *See, e.g.*, *Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*, 14-CV-8175 (LGS)(SN);

*Blackrock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*, 14-CV-9371(KPF)(SN); *Phoenix Light v. Bank of New York Mellon*, 14-CV-10104 (VEC). Broadly speaking, those cases (hereafter collectively referred to as "Trustee Liability Cases") seek to hold the trustees responsible for failing to detect or to act on information that may have indicated there were problems with the residential mortgages that underlay the RMBS. *See, e.g.*, Complaint [Dkt. 1] ¶¶ 10–14 (citations omitted). As is relevant to this matter, Trustee Liability Cases have been brought against HSBC by Royal Park, NCUA, and several other plaintiffs in actions that are now coordinated in front of Judge Schofield and Magistrate Judge Netburn. *See, e.g.*, *Royal Park v. HSBC* [Dkt. 473] (ordering stay in six coordinated actions against HSBC, including those brought by Royal Park and NCUA[1]). In Trustee Liability Cases, including the cases against HSBC, trustees have taken the position that they are entitled to be indemnified for their defense costs from the trust funds for which they serve as trustees. *See, e.g.*, Complaint ¶ 15.

Apparently now concerned that litigation costs may deplete funds that would otherwise be used to make payments to holders of RMBS certificates and vexed that the availability of indemnification of defense costs eradicates what might otherwise motivate the trustees to settle, some of the plaintiffs from Trustee Liability Cases have brought a new round of cases designed to prevent the trustees from using trust funds to indemnify themselves for defense costs. On October 6, 2017, Royal Park brought this case to challenge HSBC's use of trust funds to pay its litigation costs in *Royal Park v. HSBC*. *See* Complaint. Royal Park's Complaint focuses on withdrawals from three of the trusts that are at issue in *Royal Park v. HSBC*: DBALT 2006-AR5, FHLT 2006-C, WFHET 2006-2. *Id*. ¶ 1. On December 4, 2017, Defendant moved to dismiss

---

[1] Royal Park's underlying litigation against HSBC is *Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n*, No. 1:14-CV-08175 (LGS)(SN), while NCUA's is *Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat'l Ass'n*, No. 15-CV-2144 (LGS)(SN).

the Complaint. *See* Motion to Dismiss [Dkt. 30]. The next day, December 5, 2017, NCUA moved to intervene in this action pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, pursuant to Rule 24(b). *See generally* Motion to Intervene [Dkt. 35]; Memorandum in Support of Motion to Intervene by National Credit Union Administration Board as Liquidating Agent ("Int. Mem.") [Dkt. 36].

NCUA is an independent federal agency that, *inter alia*, may act as conservator and liquidating agent for failed credit unions.[2] Int. Mem. at 4 (citations omitted). NCUA has taken multiple credit unions into liquidation since 2010, and, through those liquidations, it now "oversees a large portfolio of RMBS." *Id*.

NCUA contends that Defendant's use of RMBS trust funds to indemnify itself for litigation costs will harm NCUA even though NCUA does not itself own any of the RMBS certificates that are held by the trusts at issue. Int. Mem. at 4. Instead, in its role as a liquidator of credit unions, it "resecuritized" many RMBS into NCUA Guaranteed Notes ("NGN") that were issued by trusts established for this purpose ("NGN Trusts"). *Id*. NCUA holds residual interests in the form of Owner Trust Certificates ("OTCs"). *Id*. The OTCs entitle NCUA to any assets remaining in the NGN Trusts after all NGN Noteholders have been paid.[3] *Id*. NCUA's theory of harm is that HSBC's use of trust funds to indemnify itself will diminish the value of the OTCs, and, therefore, NCUA will be harmed "in the same or similar way by HSBC's unlawful

---

[2] NCUA has various functions, including chartering and regulating federal credit unions, and acting as a conservator and liquidating agent when credit unions fail. *See* 12 U.S.C. § 1751 *et seq*. This case involves only its function as a liquidating agent.

[3] After NCUA took failed credit unions into conservatorship, it created a program to stabilize funding for the credit union system. As part of that program, NCUA transferred distressed RMBS that had been owned by the failed credit unions to the NGN Trusts in exchange for OTCs. The NGN Trusts issued notes that were backed by cash flows from the RMBS certificates and guaranteed by NCUA; the NGN Trusts then conveyed the RMBS certificates to a separate Indenture Trustee. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-9928 (KBF), 2016 WL 796850, at *2–5 (S.D.N.Y. Feb. 25, 2016), *aff'd*, No. 17-756-cv (2d Cir. Aug. 2, 2018).

conduct as where NCUA is the direct holder of an RMBS certificate." *Id*. NCUA's complaint in its Trustee Liability Case against HSBC involves 37 RMBS trusts, one of which is among the three trusts at issue in this case, and fourteen of which come from "the same securitization shelves as the three trusts at issue . . . and which have similar indemnification language as the three [Pooling and Service Agreements] to be construed by this Court." *Id*. at 5 (citations omitted). Nonetheless, NCUA's Proposed Complaint [Dkt. 37-1] is limited to the one overlapping trust already included in Royal Park's Complaint—FHLT 2006-C[4]—and does not raise additional claims regarding other trusts from the same shelves. *Id*.

## II. DISCUSSION

### a. NCUA is Not Entitled to Intervention as of Right

Pursuant to Federal Rule of Civil Procedure 24(a)(2), a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To intervene either as of right or with permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. . . . Failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (citations, alteration, and internal quotation marks omitted). "While accepting as true the non-conclusory allegations of the motion courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-*

---

[4] The FHLT 2006-C certificate in which NCUA alleges it has an interest was resecuritized in the NGN 2010-R2 (Series II-A) Trust after the original owner of the certificate was liquidated. *See* Proposed Complaint ¶ 18.

*Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

NCUA argues that the Court should grant its motion to intervene as of right. *See* Int. Mem. at 6–13. NCUA asserts that its motion is timely, that it has a sufficient interest in Royal Park's action, that its ability to protect its interest would be impaired if it cannot intervene, and that Royal Park does not adequately represent NCUA's interest. *Id.*; Reply Memorandum in Support of Motion to Intervene by National Credit Union Administration Board as Liquidating Agent ("Reply") [Dkt. 51] at 2–10. Defendant asserts that NCUA does not satisfy any of the required factors. *See* Memorandum in Opposition to Motion to Intervene by National Credit Union Administration Board as Liquidating Agent ("Opp.") [Dkt. 48] at 8–24. The Court analyzes each factor below.

### i. NCUA's Motion is Timely

Whether a motion is timely "defies precise definition [but] is not confined strictly to chronology." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)) (internal quotation marks omitted). The determination is flexible and "entrusted to the [Court's] sound discretion." *Id.* (citing *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986)) (internal quotation marks omitted). A court considers "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Id.* (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006)) (internal quotation marks omitted).

NCUA asserts that its motion is timely because it filed its motion the day after Defendant filed its motion to dismiss and less than two months after the Complaint was filed. Int. Mem. at

5

6–7; Reply at 2–3.  NCUA also argues that there is no prejudice to the parties because discovery has been stayed, and because NCUA does not seek to add any additional trusts to the case.  Int. Mem. at 7; Reply at 3.  Denial of intervention, NCUA argues, will prejudice its interests because a decision from this Court could affect any separate case NCUA might bring and could produce inconsistent rulings as to whether HSBC can use trust funds from the FHLT 2006-C trust to pay for its defense in the underlying litigation.  Int. Mem. at 8; Reply at 4.  Lastly, NCUA claims that there are no unusual circumstances bearing on timeliness that disfavor intervention.  Int. Mem. at 8–9; Reply at 4.

Defendant argues that NCUA knew about its alleged interest in this case well before it sought to intervene and intended to delay the case by waiting to move to intervene until after Royal Park's motion to dismiss was filed.  Opp. at 19–22.  The delay prejudices HSBC because intervention would postpone resolution of the parties' dispute to allow NCUA to make arguments that Royal Park is well-suited to make itself.  *Id*. at 23.  HSBC claims that NCUA would not suffer any prejudice if this Court denies its motion because it can file a separate action to protect its purported interest, and that no unusual circumstances favor intervention.  *Id*. at 23–24.

The Court finds that, in all, NCUA's motion is timely.  While its motion did not immediately follow the Complaint's filing, NCUA did move within two months of the case's commencement.[5]  Were the Court to grant Intervenor's motion, it would likely strike the current briefing on Defendant's motion to dismiss, and order the plaintiffs to file a single consolidated amended complaint.  Doing so would generate some amount of prejudice to HSBC, which would

---

[5] The two-month delay is not explained, and the Court has to question NCUA's decision to move to intervene after there was a motion to dismiss pending.  While not dispositive for the reasons stated above, better practice, given the facts of this case, would have been for NCUA to have filed its motion to intervene sooner after the Complaint was filed and, in all events, before Defendant moved to dismiss.

have to again move to dismiss the complaint. But there could also be prejudice to NCUA in denying intervention, as denial could potentially lead to inconsistent rulings as to HSBC's ability to fund its litigation defense from the FHLT 2006-C trust, and the trust funds could thereby be depleted to NCUA's detriment. And lastly, the Court does not find any notable unusual circumstances that militate for or against intervention. On balance, the Court finds NCUA's motion to be timely.

### ii. *NCUA Does Not Have a Sufficient Interest in the Action to Intervene*

"[F]or an interest to be 'cognizable' under Rule 24, it must be direct, substantial, and legally protectable [such that an] interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians, Inc. v. Delmonte,* 602 F.3d 469, 473 (2d Cir. 2010); *Brennan v. N.Y.C. Bd. of Educ.,* 260 F.3d 123, 129 (2d Cir. 2001)) (internal quotation marks omitted).

NCUA points to its interest in the OTCs as they relate to the FHLT 2006-C trust, as well as its OTCs in other trusts from the same securitization shelves. Int. Mem. at 9. According to Intervenor, its right to the re-conveyance of the RMBS certificates, "although a future event, is not subject to reasonable doubt." Reply at 5. Any withdrawals from the FHLT 2006-C trust, NCUA argues, will affect the value of OTCs because "less money flows into the NGN Trust, paying off the NGN noteholders will take longer, and fewer residual assets will remain for the holder of the [OTCs]." *Id*. NCUA claims that its interest in the RMBS certificates, although through the OTCs, is not contingent or removed from the certificates themselves. *Id*. at 5–7.

In response, HSBC contends that NCUA does not have an interest in this action because, *inter alia*, it does not own any certificates in FHLT 2006-C. Opp. at 8–13. HSBC argues that NCUA transferred all of its rights in the underlying FHLT 2006-C certificates to the NGN Trust,

which then transferred those same rights to an Indenture Trustee. NCUA is, therefore, several steps away from any interest in the FHLT 2006-C certificates, and its role as Guarantor of the NGN 2010-R2 (Series II-A) Trust does not give it any rights in the underlying RMBS certificates, particularly because NCUA is proposing to intervene as a liquidating agent. *Id*. at 8–11. Furthermore, OTCs in trusts from the same securitization shelves do not constitute a sufficient interest for the same reason—any rights NCUA once had were transferred to their respective NGN Trusts. In any event, HSBC argues, NCUA does not seek to add those other 14 trusts to this action, rendering them irrelevant, particularly because those trusts are governed by different contracts. *Id*. at 12–13.

Whether NCUA has a sufficient interest to support its request to intervene is related to the question of whether, by virtue of its ownership in OTCs, it has standing to bring claims against the trustees of the RMBS trusts, a question that has been considered by multiple judges in this District and was recently decided by the Second Circuit.[6] In *National Credit Union Admin. Board v. U.S. Bank National Ass'n*, Judge Forrest held that NCUA lacked direct and derivative standing to sue because NCUA had transferred all of its ownership interests and rights in the RMBS to the NGN Trusts, which then transferred those interests to the Indenture Trustee. 2016 WL 796850, at *8–10. More specifically, NCUA "conveyed in toto all interest that [it] had or had ever had in the Underlying [RMBS,]" and "the contractual agreements together effected a complete transfer of all rights including <u>explicitly</u> the right to sue. Thus, while a beneficial interest in the payment stream was retained, the right to bring claims was expressly transferred away." *Id*. at *8, 10. Additionally, the court found that NCUA's role as Guarantor "does not

---

[6] *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 17-756-cv (2d Cir. Aug. 2, 2018).

impart ownership rights to NCUA." *Id*. at *4. Other judges in this District have both agreed and disagreed with Judge Forrest's approach.[7]

Judge Forrest's ruling was subsequently affirmed by the Second Circuit. The Circuit held that NCUA, as liquidating agent, "lacks derivative standing to bring claims on behalf of the NGN Trusts for the simple reason that the NGN Trusts themselves do not have claims to bring. To the contrary, the NGN Trusts conveyed the RMBS Trust certificates—and any claims based on those certificates—in their entirety to the Indenture Trustee, [The Bank of New York Mellon]." *U.S. Bank*, slip op. at 23. The Circuit also ruled that NCUA—as liquidating agent or guarantor—and the NGN Trusts lacked standing to bring claims on behalf of the indenture trustee because the indenture agreements did not permit them to institute judicial proceedings. *Id*. at 25–29.

Just as NCUA lacks standing to sue RMBS trustees because it transferred its complete stake in the RMBS and has no claims to bring, for the purposes of intervention, NCUA's interest is not direct, is "remote from the subject matter of the proceeding," and is "contingent upon the occurrence of a sequence of events before it becomes colorable . . . ." *Floyd*, 770 F.3d at 1060 (citations omitted). NCUA is only "entitl[ed] to the NGN Trusts' remaining assets (*i.e.*, the resecuritized RMBS) after all NGN investors are paid and Guaranty payments are reimbursed."

---

[7]  Prior to Judge Forrest's decision in *NCUA v. U.S. Bank Nat'l Ass'n*, Judge Scheindlin held that NCUA might be able to assert a derivative claim on behalf of the NGN Trusts, but she focused primarily on the demand requirement and did not analyze the relevant conveyances. *National Credit Union Admin. Board. v. HSBC Bank USA, National Ass'n*, 117 F. Supp. 3d 392, 399–400 (S.D.N.Y. 2015). Judge Scheindlin did not discuss the relevant indenture agreement at all and may have acted under the misapprehension that the NGN Trusts held RMBS certificates. *See id*. at 398 ("The now-liquidated credit unions no longer own the securities that are held by the NGN trusts . . . ."), 399 ("[T]he claims here are based on the underlying securities held by the NGN Trusts . . . .").

In *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, National Ass'n*, Judge Failla considered Judge Forrest's and Judge Scheindlin's opinions and agreed with Judge Forrest. 247 F. Supp. 3d 377, 410–16 (S.D.N.Y. 2017). Judge Failla held that NCUA "lacks standing to bring a derivative claim . . . on behalf of the NGN Trusts because the NGN Trusts lack standing to bring a claim against Defendant, having transferred all rights to such claim to [the Indenture Trustee] through the Indenture Agreement." *Id*. at 415.

9

Proposed Complaint ¶ 11. Accordingly, NCUA's OTCs do not constitute a sufficiently-direct interest to support its intervention (nor do its OTCs that have residual interests in the other 14 trusts, whose relevance to the instant matter is even more attenuated).[8] Additionally, NCUA's role as Guarantor provides it no relevant interest, as NCUA is seeking to intervene as a liquidating agent,[9] and its role as Guarantor provides it no ownership interest in any RMBS certificates. In all, NCUA's motion to intervene fails because NCUA lacks a sufficient interest in the action.[10]

### iii. *If NCUA Had A Sufficient Interest, It Might Be Impaired By a Disposition of This Action*

Although the Court finds that NCUA does not have a sufficient interest to warrant intervention, it proceeds with the analysis of the remaining factors for the purposes of providing full consideration of all four required factors.

To demonstrate impairment, "the proposed intervenor must show that his interest may be impaired by the disposition of the action, . . . which can be satisfied by asserting that as a practical matter, an adverse decision may compromise the party's claims . . . ." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) (citations, alteration, and internal quotation marks omitted).

---

[8]     NCUA emphasizes that it need only have an interest *relating to* the property that is the subject of the action, rather than an interest *in* the property itself. *See* Int. Mem. at 9; Reply at 6. The Court finds that even if NCUA's interest in the form of OTCs *relate to* the property in Royal Park's action, that interest is still too remote and contingent to support intervention.

[9]     *See, e.g.*, Int. Mem. at 1, 5, 17; Proposed Complaint at 1, ¶ 13; Reply at iv, 10, 11.

[10]    NCUA also seeks leave to amend to intervene through a Separate Trustee if the Court were to find NCUA lacked a sufficient interest in the matter. Reply at 7 n.4. A court has broad discretion when considering a request to amend, but it "should generally be denied in instances of futility . . . ." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008), and citing *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)). NCUA's request to amend is denied as futile because, at a minimum, any interest NCUA might have, whether itself or through a "Separate Trustee," is adequately represented by Royal Park. *See infra*.

NCUA asserts that precluding intervention here may affect its interests through *stare decisis*, and, at best, it could generate conflicting rulings as to how HSBC may fund the various Trustee Liability Cases in which it is a defendant. Int. Mem. at 10–11; Reply at 7–8. HSBC responds, *inter alia*, that the impairment needs to be caused by NCUA's absence, and that this Court's ruling would only be persuasive authority to another district judge. Opp. at 13–15.

The Court finds that, if NCUA did have a sufficient interest in this action, that interest might be impaired by a disposition of this action. It is true that this Court's ultimate determination will only be persuasive authority as to other district court judges who may face the same issue. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation and internal quotation marks omitted). The Court appreciates, however, that were NCUA to prevail in a hypothetical separate case aimed at preventing HSBC from using funds from the FHLT 2006-C trust to indemnify itself from NCUA's Trustee Liability Case, and were HSBC to prevail in the instant matter and obtain a ruling that permits it to continue to use FHLT 2006-C trust funds to indemnify itself for its defense costs in Royal Park's Trustee Liability Case, HSBC might deplete the trust funds by defending against Royal Park's Trustee Liability Case, effectively eliminating any benefit to NCUA from its hypothetical successful lawsuit.

### iv. *Even if NCUA Has an Interest, It is Adequately Represented*

"While there is generally a presumption of adequacy in intervention cases, evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption." *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, No. 17-cv-1266, 2018 WL 739454, at *6 (S.D.N.Y. Feb. 7, 2018) (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001)). "[T]he burden to demonstrate inadequacy of representation is

generally . . . minimal, [but the Second Circuit has] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective . . . ." *Butler*, 250 F.3d at 179 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). Inadequacy is not shown merely by demonstrating that the putative intervenor and the existing party have different motives to litigate. *Wash. Elec.*, 922 F.2d at 98 (citing *Nat. Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 61–62 (2d Cir. 1987)).

NCUA advances three arguments for why Royal Park's representation is inadequate. *See* Int. Mem. at 11–13; Reply at 8–10. First, it asserts that "NCUA, as a federal agency, has broader interests than Royal Park does that also are rooted in public interest," which Royal Park cannot represent. Int. Mem. at 11–12. Second, NCUA argues that, although it may ultimately become a member of Royal Park's class,[11] absent class members are routinely permitted to intervene, and its interests will diverge from Royal Park's because Royal Park will seek to maximize recovery to the class, but NCUA would attempt to maximize recovery for itself. *Id*. at 12. Third, NCUA claims that its interests extend beyond the three trusts on which Royal Park is suing such that "Royal Park has no incentive to argue for broader application of its arguments to the shelf level." *Id*. at 13.

HSBC counters that NCUA's interest as a federal agency is irrelevant because NCUA seeks to intervene as a liquidating agent, not as a federal regulatory agency. Opp. at 16–17. It

---

[11] The Court makes no determination as to whether NCUA's interests would support its membership in the putative class or whether a class action is likely to be certified in this case. The Court notes, however, that Judge Failla recently refused to certify a class in one of the Trustee Liability Cases brought by Royal Park. *See Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, No. 14-CV-9764(KPF)(SN), 2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018).

12

contends that class members are presumed to be adequately represented by the class representative, and that, in any event, Royal Park and NCUA have the same objective, rendering intervention inappropriate. *Id*. at 17–18. Lastly, HSBC asserts that the other trusts in which NCUA may have an interest are irrelevant to this matter. *Id*. at 18–19.

The Court agrees with HSBC. It is clear that Royal Park and NCUA share the same objectives in that both want to prevent HSBC from indemnifying itself with funds from the trust, and both want to recover funds that have allegedly been improperly withdrawn. *See* Complaint ¶¶ 40–73; Proposed Complaint ¶¶ 66–78. That NCUA would prefer to maximize its own recovery is of no moment.[12] NCUA's existence as a federal agency is irrelevant because NCUA seeks to intervene not as a federal regulator but as a liquidating agent and owner of the OTCs.[13] In those capacities, NCUA is no different than any private party that might also seek to intervene in Royal Park's case on the grounds of a purported interest in the underlying RMBS. Third, the fact that NCUA alleges interests in other similar trusts is likewise irrelevant because NCUA has explicitly stated that it does not seek to add those other trusts to this case, and it is only pursuing recovery as to FHLT 2006-C. Royal Park is perfectly capable of representing any interest NCUA might have with regard to HSBC's use of funds from FHLT 2006-C, as it similarly seeks to enjoin the indemnification and to recover allegedly improperly-withdrawn funds.

Accordingly, because NCUA does not satisfy all four factors required for intervention as of right, its motion to intervene is denied.

---

[12] Even if it were relevant, this lawsuit, with or without NCUA as a participant, will not determine how funds, if any, that are ordered returned to the trust will be distributed. That determination would be governed by the various agreements that govern the trust.

[13] *See supra* note [9].

### b. NCUA is Not Entitled to Permissive Intervention

Pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), a court "[o]n timely motion . . . may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Second Circuit has made clear that the four factors discussed as to intervention of right are also necessary for permissive intervention. *See, e.g.*, *Waterkeeper All., Inc. v. Salt*, 714 F. App'x 77, 78 (2d Cir. 2018) ("Before a court will grant a motion to intervene *under Rule 24(a) or (b)*, the proposed intervenor must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'") (quoting *Floyd*, 770 F.3d at 1057) (emphasis added). "Permissive intervention is wholly discretionary with the trial court." *Eddystone*, 2018 WL 739454, at *9 (quoting *U.S. Postal Serv.*, 579 F.2d at 191) (internal quotation marks omitted).

NCUA seeks, in the alternative, to intervene permissively, arguing that its intervention is timely, that it will contribute to the development of a full record (pointing to an amicus brief it filed in another case), and that HSBC's "looting of trust funds" is inequitable. Int. Mem. at 13–16; Reply at 10. HSBC opposes permissive intervention for reasons similar to its opposition to intervention as of right. Opp. at 24–25. Further, it argues that "[t]he Court and the parties do not need [NCUA's] assistance in addressing purely legal questions" and that NCUA's presence in the case would be duplicative. *Id*.

The Court does not find that NCUA's proposed assistance with developing the record[14] changes the Court's calculus as laid out in its analysis of intervention as of right.[15] The Court denies permissive intervention because NCUA lacks a sufficient interest in this case and because any interest it might have will adequately be represented by Royal Park.

### III. CONCLUSION

For the reasons discussed above, NCUA's motion to intervene is denied.[16]

**SO ORDERED.**

Date: **August 2, 2018**　　　　　　　　　　　　　　　__*Valerie Caproni*__
　　　　**New York, New York**　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

---

[14] The Court does not rule at this time whether NCUA may file an *amicus* brief here as it did in *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, Case No. 17-CV-05916-AJN (S.D.N.Y. filed Aug. 4, 2017).

[15] The Court recognizes that some judges in this District have emphasized that the "principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," *Olin Corp. v. Lamorak Ins. Co.*, No. 84 CIV. 1968 (JSR), 2018 WL 1626519, at *1 (S.D.N.Y. Apr. 2, 2018) (citation and internal quotation marks omitted), although that formulation is absent in more recent Second Circuit opinions discussing intervention. But even affording that consideration additional weight does not change this Court's decision to deny permissive intervention.

[16] Because the motion to intervene is denied, the Court does not reach Defendant's request to strike NCUA's allegedly excessive pages. *See* Opp. at 25.